# EXHIBIT A

# ADDITIONAL SECURITY AGREEMENT

This ADDITIONAL SECURITY AGREEMENT is made this 14th day of September 2004, by and between NMSBPCSLDHB, a California Limited Partnership, by and through its general partner, Robert M. Granum II ("NMSBPCSLDHB", "Assignor") and Washington Mutual Bank, F.A. ("WAMU", "Assignee") (collectively, "parties"), with reference to the following facts:

A.  WHEREAS, NMSBPCSLDHB is the owner of that certain real property commonly known as 400 Race Street, San Jose, California ("Property").

B.  WHEREAS, Integrated Telecom Express, Inc. was a tenant of NMSBPCSLDHB and leased the Property for a term of 10 years pursuant to that certain lease dated September 21, 2000 ("Lease"), a copy of which is attached hereto as Exhibit A.

C.  WHEREAS, WAMU provided NMSBPCSLDHB with a loan in the amount of $9,000,000.00 in connection with the purchase of the Property pursuant to that certain Promissory Note dated June 5, 2001 ("Loan"), a copy of which is attached hereto as Exhibit B.

D.  WHEREAS, WAMU substantially relied upon certain factors in agreeing to make the Loan, including but not limited to: 1) Integrated

Telecom Express, Inc.'s commitment to the Lease; 2) the rental payments and other fees that would be generated as a result of the Lease; 3) Integrated Telecom Express, Inc.'s prior receipt of $150 million in public funding as a result of the sale of securities through an Initial Public Offering; and 4) WAMU's belief that Integrated Telecom Express, Inc. was, at the time WAMU made the Loan, about to become a profitable company.

E. WHEREAS, Integrated Telecom Express, Inc. sought federal bankruptcy protection in a petition dated October 8, 2002, and received such protection by order of the United States Bankruptcy Court for the District of Delaware on October 31, 2002.

F. WHEREAS, there has been ongoing litigation between Integrated Telecom Express, Inc. and NMSBPCSLDHB.

G. WHEREAS, NMSBPCSLDHB's motion to dismiss Integrated Telecom Express, Inc.'s bankruptcy was denied at the United States Bankruptcy Court and United States District Court levels.

H. WHEREAS, most recently, NMSBPCSLDHB prevailed before a panel of the United States Court of Appeals for the Third Circuit in its motion to dismiss the bankruptcy.

I.  WHEREAS, Integrated Telecom Express, Inc. has indicated that it intends to appeal the ruling of the United States Court of Appeals for the Third Circuit or request an <u>en banc</u> review of the ruling before the entire the United States Court of Appeals for the Third Circuit.

J.  WHEREAS, NMSBPCSLDHB's ultimate award for the Lease is between $2.3 million and $25 million, exclusive of recovery of legal fees, interest, deposits by NMSBPCSLDHB, recovery of costs associated with the retenanting of the building due to Integrated Telecom Express, Inc.'s breach of the Lease, and punitive awards (collectively, "Award"). The Award shall not include the $2,200,000 (approximately) Letter of Credit, the proceeds of which WAMU has previously sought and received from the issuing bank.

NOW THEREFORE, in consideration of the mutual covenants of the parties herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.  Subject to all of the conditions and provisions stated herein, Assignor hereby transfers and assigns to Assignee to hold on Assignor's behalf and in Assignor's name and hereby pledges to Lender to grant to Lender a security interest in additional

security for repayment of the Loan all or any part of the Award made to Assignor, whether a) awarded to Assignor in any action initiated in state or federal court arising from Assignor's claims against Integrated Telecom Express, Inc. for breach of the Lease (or related claims), or b) paid to Assignor as a result of a settlement of Assignor's claims against Integrated Telecom Express, Inc. either before or after the initiation of such litigation in state or federal court.

2. Upon receipt of all or any part of the Award, Assignee will place a portion of the funds received into Assignee's certificates of deposit, to be held in the name of NMSBPCSLDHB, in amounts and for terms as mutually agreed upon by Assignee and Assignor. Since Assignee is unable to make monthly withdrawals from certificates of deposit accounts, an amount sufficient to cover the monthly draw requirements of this agreement, will be withdrawn from the certificate of deposit accounts and placed into Assignee's best available passbook account from time to time. Assignee shall not unreasonably withhold its consent as to amounts and terms for the respective certificates of deposit. In the event that there is no mutual

agreement, then the decision as to the term and the amount shall be made by Assignee in its sole and absolute discretion. In addition, the rates offered to Assignor shall be the equivalent of the best rates offered to Assignee's best customers. Furthermore, the rates shall be predicated upon the amount of the certificates of deposit and their respective terms.

i. Such accrued interest is to be disbursed to Assignor annually on February 1 of each year, beginning on February 1, 2005.

ii. In addition to the disbursement of the accrued interest as described above, Assignee shall disburse monthly the sum of whatever portion of the Proceeds have been transferred and assigned by Assignor to Assignee up to that date, divided by the number of months remaining on the original Integrated Telecom Express, Inc. Lease. For example, if the Award is $7,200,000 and there are 72 months remaining up to and including February 28, 2011 (the date of the expiration of the Lease), the payment by WAMU to NMSBPCSLDHB would be $100,000 per month. Such disbursement shall be made on the first of each month beginning on the first of the month following 1) either a negotiated final settlement agreement

between NMSBPCSLDHB and Integrated Telecom Express, Inc. or the award by a court of competent and final jurisdiction of the ultimate Award determined by such a court, <u>and</u> 2) the receipt by WAMU of such Award.

3) If Assignor defaults on (i) any payment due under the Loan or (ii) under any material covenant to be performed by Assignor under the deed of trust or any of the documents that evidence or secure the Loan ("Loan Documents"), or any term or provision of this Agreement, Assignee in its sole and absolute discretion, may (i) apply the funds in the account or any portion of such funds to payment of the obligations secured hereby (provided, however, that such application of funds shall not cure or be deemed to cure any default); (ii) apply the funds in the Account to reimburse Assignee for any losses or expenses (including, without limitation, legal fees) suffered or incurred by Lender as a result of such default, and (iii) apply the funds in the Account in connection with exercising and exercise of all rights and remedies available to Assignee at Law or in Equity or under this Additional Security Agreement or any of the Loan Documents. Nothing in this Additional Security Agreement shall obligate Assignee to apply all or any portion of the funds in the Account on

account of any default by Assignor or to repayment of the indebtedness of the Loan.

Assignor further agrees, and expressly acknowledges the reliance of Assignee hereon, that any and all applications of the funds in the Account to or upon any of the obligations secured hereby shall be, and shall be irrevocably deemed to be, a realization upon and foreclosure of the security interests and liens granted Assignee in such funds and shall not be, or deemed to be, the exercise of a right of set-off. Neither the execution and delivery of this Additional Security Agreement, the transfer by Assignor of any funds from the Account, whether in accordance with a request therefor by Assignor or otherwise, nor the application by Assignee of any funds in the Account to or upon the obligations secured hereby shall be or be deemed to be a violation of the "security-first" doctrine embodied in California Code of Civil Procedure section 726, nor effect a reinstatement of Assignor's obligations pursuant to California Civil Code sections 2924c or 2924d, it being expressly and irrevocably acknowledged and agreed by Assignor that the funds in the Account, the Account, and any and all sums deposited in and/or transferred from the Account pursuant to this Agreement constitute collateral security securing Assignor's obligations under the Loan Documents.

4) Assignor agrees to indemnify and hold Assignee and its agents, directors, officers, employees, attorneys, successors, and assigns (collectively, "Indemnified Parties") harmless from all liability and damage of any kind incurred by the Indemnified Parties" (including any attorney's fees of the Indemnified Parties incurred defending any claim), in connection with any of the parties' performance under the terms of this Additional Security Agreement.

GOVERNING LAW. This Additional Security Agreement is made and entered into in the State of California and shall be interpreted, construed, and enforced in accordance with the laws of the State of California.

BINDING EFFECT. This Additional Security Agreement shall apply to, bind, and inure to the benefit of Assignor and Assignee, and their respective heirs, legal representatives, successors, and assigns.

COUNTERPARTS. This Additional Security Agreement may be executed in one or more counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

ATTORNEY'S FEES. In the event that a dispute arises between the parties over the terms, interpretation, or enforcement of this ADDITIONAL SECURITY AGREEMENT, whether such dispute is initiated through a judicial action or any alternative form of dispute resolution, and whether such dispute is

resolved through judgment, settlement, or otherwise, the prevailing party shall be entitled to reasonable attorney's fees and costs and shall be deemed to have accrued upon the commencement of such action or alternative form of dispute resolution.

IN WITNESS WHEREOF, this Additional Security Agreement has been executed as of the date first written above.

**ASSIGNOR**

_____
NMSBPCSLDHB, a California
Limited Partnership, by and
through Robert M. Granum II

**ASSIGNEE**

_____
Washington Mutual Bank, F.A.,
by and through *MARK ST. PIERRE*
its *VICE PRESIDENT*