Exhibit A

1 | PETER S. HECKER (No. 66159)
ANNA S. McLEAN (No. 142233)
2 | CASEY K. SMITH (No. 241882)
HELLER EHRMAN LLP
3 | 333 Bush Street
San Francisco, California 94104-2878
4 | Telephone (415) 772-6000

5 | Attorneys for Plaintiff
WASHINGTON MUTUAL BANK
6

**ORIGINAL
FILED**

JAN 16 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

**MHP**

9

10
11 | WASHINGTON MUTUAL BANK,

Plaintiff,
12 | v.

**C 07    0280**

**COMPLAINT FOR
DECLARATORY RELIEF**

13 | NMSBPCSLDHB, a California limited
14 | partnership; the Granum Family Trust, as
General Partner of NMSBPCSLDHB; and
15 | Robert M. Granum, II, as trustee of the Granum
Family Trust,
16

Defendants.
17

18 |     WASHINGTON MUTUAL BANK ("Washington Mutual" or "plaintiff") alleges as

19 | follows:

20 | ### JURISDICTION AND VENUE

21 |     1.    Original jurisdiction of this matter is based upon 28 U.S.C. section

22 | 1332 and is premised upon diversity of citizenship. The amount in controversy, exclusive

23 | of interest and costs, exceeds the sum or value of $75,000.

24 |     2.    Venue in this district is proper under 28 U.S.C. section 1391(a)(1) and

25 | (c); all defendants reside in California, at least one defendant resides in this judicial

26 | district, and all defendants are subject to personal jurisdiction in this judicial district.

27

28

COMPLAINT FOR DECLARATORY RELIEF /DECLARATORY JUDGMENT

1    3.    This is a civil action for declaratory relief. As is more fully set forth

2  below, plaintiff requests that the Court declare and adjudge the rights and duties of the

3  parties under a contractual agreement entered into between plaintiff and defendants.

4  ### THE PARTIES

5    4.    Plaintiff Washington Mutual is a federal association duly organized

6  under 12 U.S.C.S § 1464, has its home office in Henderson, Nevada, and is for diversity

7  purposes a citizen of Nevada.

8    5.    Defendant NMSBPCSLDHB is a California limited partnership with

9  its principal place of business in Saratoga, California.

10    6.    Defendant the Granum Family Trust is the general partner of

11  Defendant NMSBPCSLDHB, and is located in California.

12    7.    Defendant Robert M. Granum, II is the trustee of the Granum Family

13  Trust, and is otherwise authorized to transact business on behalf of the Granum Family

14  Trust as general partner for NMSBPCSLDHB. Robert M. Granum, II is an individual and

15  resident of California.

16  ### FACTUAL BACKGROUND AND NATURE OF THE ACTION

17    8.    Plaintiff brings this action to determine its rights and obligations

18  under the Additional Security Agreement ("ASA") (attached hereto as Exhibit A and

19  incorporated by reference herein), which was entered into between Washington Mutual

20  and defendant NMSBPCSLDHB (by and through defendant Robert M. Granum, II) as of

21  September 14, 2004.

22    9.    In June 2001, defendant Robert M. Granum, II, as trustee of the

23  Granum Family Trust, the general partner of defendant NMSBPCSLDHB, executed a

24  promissory note ("Promissory Note") for a $9 million loan from Washington Mutual. The

25  Promissory Note was secured by, among other things, a deed of trust to property in San

26  Jose, California (the "Property") and an Assignment of Leases and Rents for the Property.

27  At the time the parties executed the Promissory Note, Integrated Telecom Express, Inc.

28  ("ITEX") held a 10-year lease to the Property.

1         10.   In October 2002, ITEX sought and received federal bankruptcy

2    protection; litigation then ensued between ITEX and NMSBPCSLDHB concerning

3    amounts due under the existing lease (the "ITEX Litigation").

4         11.   In September 2004, while the ITEX Litigation was still pending,

5    Washington Mutual and NMSBPCSLDHB entered into the ASA. Paragraph 1 of the ASA

6    provides that "all or any part of" any award arising out of the ITEX Litigation would be

7    assigned to Washington Mutual as additional security for the original $9 million loan.

8    Paragraph 2 of the ASA establishes certain requirements about how any award arising out

9    of the ITEX Litigation is to be invested and distributed by Washington Mutual to

10   defendants, including that the funds are to be held in certificates of deposit and

11   Washington Mutual's best available passbook account.

12        12.   In August 2005, Washington Mutual was wired approximately $25

13   million, the final award granted to NMSBPCSLDHB in the ITEX Litigation (the

14   "Award"). Washington Mutual initially deposited the funds into certain passbook

15   accounts, and opened a dialogue with NMSBPCSLDHB, by and through Robert M.

16   Granum, II and his agents, about the term and amount of certificates of deposit and/or

17   passbook accounts in which the funds were to be invested, per its understanding of the

18   terms of the ASA.

19        13.   NMSBPCSLDHB, by and through Robert M. Granum, II and his

20   agents, has refused to agree to any of the proposals advanced by Washington Mutual as to

21   the term and amount of such investments, and has refused to amend the ASA to permit

22   other types of investments.

23        14.   A dispute has now arisen concerning the terms of the ASA;

24   specifically, plaintiff contends that the ASA mandates that the award be placed in only two

25   types of accounts: certificates of deposit and passbook accounts. Defendants

26   NMSBPCSLDHB and Robert M. Granum, II claim the ASA allows other investments.

27   Therefore, plaintiff seeks declaratory relief defining its rights and obligations under the

28   ASA.

COMPLAINT FOR DECLARATORY RELIEF /DECLARATORY JUDGMENT

1                    ## CLAIM FOR DECLARATORY RELIEF

2              15.    Plaintiff repeats and realleges paragraphs 1 through 14 of this

3   Complaint and incorporates the same by reference as if fully set forth herein.

4              16.    An actual controversy has arisen and now exists between plaintiff and

5   defendants concerning plaintiff's investment and distribution of the ITEX Litigation

6   Award under the ASA.  This controversy is of sufficient immediacy to justify the issuance

7   of a declaratory judgment.

8              17.    The issuance of declaratory relief by this Court will terminate some or

9   all of the existing controversy between the parties.

10             18.    Plaintiff contends that it is contractually obligated under the ASA to

11  hold the disputed funds in only two types of accounts:  certificates of deposit and passbook

12  accounts. Defendants NMSBPCSLDHB and Robert M. Granum, II claim the ASA allows

13  for other investments and have insisted that the funds be invested in types of investments

14  other than certificates of deposit and passbook accounts.

15             19.    A judicial declaration as to plaintiff's investment obligations under

16  the ASA is necessary and proper at this time and under the present circumstances.

17             20.    Plaintiff desires a judicial determination of its rights and duties, and

18  defendants' rights and duties, under the ASA.

19             21.    Under the terms of the ASA, plaintiff is entitled to recover its

20  reasonable costs and attorneys' fees, as awarded by the Court.

21                        ## PRAYER FOR RELIEF

22             WHEREFORE, plaintiff respectfully prays for judgment against defendants,

23  as follows:

24

25             1.    For an order declaring that plaintiff Washington Mutual has no duty to

26  invest any part of the Award in accounts other than certificates of deposit and passbook

27  accounts, per the terms of the ASA.

28

-4-
COMPLAINT FOR DECLARATORY RELIEF / DECLARATORY JUDGMENT

1          2.      For all reasonable costs and attorneys' fees incurred by plaintiff and

2   as allowed by law, and per the terms of the ASA; and

3          3.      For such other relief as the Court deems just and proper.

4

5   DATED:  January 16, 2007

6                              HELLER EHRMAN LLP

7

8                    By

9                              ANNA S. McLEAN

10                        Attorneys for Plaintiff
                         WASHINGTON MUTUAL BANK
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY RELIEF /DECLARATORY JUDGMENT

`

## ADDITIONAL SECURITY AGREEMENT

This ADDITIONAL SECURITY AGREEMENT is made this 14th day of
September 2004, by and between NMSBPCSLDHB, a California Limited Partnership,
by and through its general partner, Robert M. Granum II ("NMSBPCSLDHB",
"Assignor") and Washington Mutual Bank, F.A. ("WAMU", "Assignee") (collectively,
"parties"), with reference to the following facts:

    A.    WHEREAS, NMSBPCSLDHB is the owner of that certain real
property commonly known as 400 Race Street, San Jose, California
("Property").

    B.    WHEREAS, Integrated Telecom Express, Inc. was a tenant of
NMSBPCSLDHB and leased the Property for a term of 10 years
pursuant to that certain lease dated September 21, 2000 ("Lease"), a copy
of which is attached hereto as Exhibit A.

    C.    WHEREAS, WAMU provided NMSBPCSLDHB with a loan in the
amount of $9,000,000.00 in connection with the purchase of the
Property pursuant to that certain Promissory Note dated June 5, 2001
("Loan"), a copy of which is attached hereto as Exhibit B.

    D.    WHEREAS, WAMU substantially relied upon certain factors in
agreeing to make the Loan, including but not limited to: 1) Integrated

Telecom Express, Inc.'s commitment to the Lease; 2) the rental payments and other fees that would be generated as a result of the Lease; 3) Integrated Telecom Express, Inc.'s prior receipt of $150 million in public funding as a result of the sale of securities through an Initial Public Offering; and 4) WAMU's belief that Integrated Telecom Express, Inc. was, at the time WAMU made the Loan, about to become a profitable company.

E.    WHEREAS, Integrated Telecom Express, Inc. sought federal bankruptcy protection in a petition dated October 8, 2002, and received such protection by order of the United States Bankruptcy Court for the District of Delaware on October 31, 2002.

F.    WHEREAS, there has been ongoing litigation between Integrated Telecom Express, Inc. and NMSBPCSLDHB.

G.    WHEREAS, NMSBPCSLDHB's motion to dismiss Integrated Telecom Express, Inc.'s bankruptcy was denied at the United States Bankruptcy Court and United States District Court levels.

H.    WHEREAS, most recently, NMSBPCSLDHB prevailed before a panel of the United States Court of Appeals for the Third Circuit in its motion to dismiss the bankruptcy.

I.  WHEREAS, Integrated Telecom Express, Inc. has indicated that it
    intends to appeal the ruling of the United States Court of Appeals for
    the Third Circuit or request an <u>en banc</u> review of the ruling before the
    entire the United States Court of Appeals for the Third Circuit.

J.  WHEREAS, NMSBPCSLDHB's ultimate award for the Lease is
    between $2.3 million and $25 million, exclusive of recovery of legal fees,
    interest, deposits by NMSBPCSLDHB, recovery of costs associated with
    the retenanting of the building due to Integrated Telecom Express, Inc.'s
    breach of the Lease, and punitive awards (collectively, "Award"). The
    Award shall not include the $2,200,000 (approximately) Letter of
    Credit, the proceeds of which WAMU has previously sought and
    received from the issuing bank.

    NOW THEREFORE, in consideration of the mutual covenants of the
parties herein, and for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the parties agree as follows:

1.  Subject to all of the conditions and provisions stated herein,
    Assignor hereby transfers and assigns to Assignee to hold on
    Assignor's behalf and in Assignor's name and hereby pledges to
    Lender to grant to Lender a security interest in additional

security for repayment of the Loan all or any part of the Award

made to Assignor, whether a) awarded to Assignor in any action

initiated in state or federal court arising from Assignor's claims

against Integrated Telecom Express, Inc. for breach of the Lease

(or related claims), or b) paid to Assignor as a result of a

settlement of Assignor's claims against Integrated Telecom

Express, Inc. either before or after the initiation of such litigation

in state or federal court.

2.     Upon receipt of all or any part of the Award, Assignee will place

a portion of the funds received into Assignee's certificates of

deposit, to be held in the name of NMSBPCSLDHB, in amounts

and for terms as mutually agreed upon by Assignee and

Assignor.  Since Assignee is unable to make monthly

withdrawals from certificates of deposit accounts, an amount

sufficient to cover the monthly draw requirements of this

agreement, will be withdrawn from the certificate of deposit

accounts and placed into Assignee's best available passbook

account from time to time. Assignee shall not unreasonably

withhold its consent as to amounts and terms for the respective

certificates of deposit.  In the event that there is no mutual

agreement, then the decision as to the term and the amount shall

be made by Assignee in its sole and absolute discretion. In

addition, the rates offered to Assignor shall be the equivalent of

the best rates offered to Assignee's best customers. Furthermore,

the rates shall be predicated upon the amount of the certificates

of deposit and their respective terms.

i.  Such accrued interest is to be disbursed to Assignor annually

on February 1 of each year, beginning on February 1, 2005.

ii. In addition to the disbursement of the accrued interest as

described above, Assignee shall disburse monthly the sum of

whatever portion of the Proceeds have been transferred and

assigned by Assignor to Assignee up to that date, divided by

the number of months remaining on the original Integrated

Telecom Express, Inc. Lease. For example, if the Award is

$7,200,000 and there are 72 months remaining up to and

including February 28, 2011 (the date of the expiration of the

Lease), the payment by WAMU to NMSBPCSLDHB would

be $100,000 per month. Such disbursement shall be made on

the first of each month beginning on the first of the month

following 1) either a negotiated final settlement agreement

between NMSBPCSLDHB and Integrated Telecom Express,

Inc. or the award by a court of competent and final

jurisdiction of the ultimate Award determined by such a

court, and 2) the receipt by WAMU of such Award.

3) If Assignor defaults on (i) any payment due under the Loan or (ii) under

any material covenant to be performed by Assignor under the deed of trust

or any of the documents that evidence or secure the Loan ("Loan

Documents"), or any term or provision of this Agreement, Assignee in its

sole and absolute discretion, may (i) apply the funds in the account or any

portion of such funds to payment of the obligations secured hereby

(provided, however, that such application of funds shall not cure or be

deemed to cure any default); (ii) apply the funds in the Account to

reimburse Assignee for any losses or expenses (including, without

limitation, legal fees) suffered or incurred by Lender as a result of such

default, and (iii) apply the funds in the Account in connection with

exercising and exercise of all rights and remedies available to Assignee at

Law or in Equity or under this Additional Security Agreement or any of

the Loan Documents.  Nothing in this Additional Security Agreement shall

obligate Assignee to apply all or any portion of the funds in the Account on

account of any default by Assignor or to repayment of the indebtedness of the Loan.

Assignor further agrees, and expressly acknowledges the reliance of Assignee hereon, that any and all applications of the funds in the Account to or upon any of the obligations secured hereby shall be, and shall be irrevocably deemed to be, a realization upon and foreclosure of the security interests and liens granted Assignee in such funds and shall not be, or deemed to be, the exercise of a right of set-off. Neither the execution and delivery of this Additional Security Agreement, the transfer by Assignor of any funds from the Account, whether in accordance with a request therefor by Assignor or otherwise, nor the application by Assignee of any funds in the Account to or upon the obligations secured hereby shall be or be deemed to be a violation of the "security-first" doctrine embodied in California Code of Civil Procedure section 726, nor effect a reinstatement of Assignor's obligations pursuant to California Civil Code sections 2924c or 2924d, it being expressly and irrevocably acknowledged and agreed by Assignor that the funds in the Account, the Account, and any and all sums deposited in and/or transferred from the Account pursuant to this Agreement constitute collateral security securing Assignor's obligations under the Loan Documents.

4) Assignor agrees to indemnify and hold Assignee and its agents, directors, officers, employees, attorneys, successors, and assigns (collectively, "Indemnified Parties") harmless from all liability and damage of any kind incurred by the Indemnified Parties" (including any attorney's fees of the Indemnified Parties incurred defending any claim), in connection with any of the parties' performance under the terms of this Additional Security Agreement.

GOVERNING LAW.          This Additional Security Agreement is made and entered into in the State of California and shall be interpreted, construed, and enforced in accordance with the laws of the State of California.

BINDING EFFECT.          This Additional Security Agreement shall apply to, bind, and inure to the benefit of Assignor and Assignee, and their respective heirs, legal representatives, successors, and assigns.

COUNTERPARTS.          This Additional Security Agreement may be executed in one or more counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

ATTORNEY'S FEES.          In the event that a dispute arises between the parties over the terms, interpretation, or enforcement of this ADDITIONAL SECURITY AGREEMENT, whether such dispute is initiated through a judicial action or any alternative form of dispute resolution, and whether such dispute is

resolved through judgment, settlement, or otherwise, the prevailing party shall be

entitled to reasonable attorney's fees and costs and shall be deemed to have accrued

upon the commencement of such action or alternative form of dispute resolution.


IN WITNESS WHEREOF, this Additional Security Agreement has been executed as of the date first written above.

**ASSIGNOR**

NMSBPCSLDHB, a California
Limited Partnership, by and
through Robert M. Granum II


**ASSIGNEE**


Washington Mutual Bank, F.A.,
by and through *MARK ST. PIERRE*
its _____*VICE PRESIDENT*_____

Exhibit B

FILED BY FAX

1  Jeffrey Huron, State Bar No. 136585
   jhuron@huronlaw.com
2  HURON LAW GROUP
   1875 Century Park East, Suite 1000
3  Los Angeles, California 90067
   Telephone: 310.284.3400
4  Facsimile: 310.772.0037

5  Attorneys for NMSBPCSLDHB

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF SANTA CLARA

10                                          107CV098459

11  NMSBPCSLDHB. a California limited      CASE NO.
    partnership.
12                                         COMPLAINT FOR:
              Plaintiff.                    (1) NEGLIGENT
13                                          MISREPRESENTATION;
       v.                                   (2) BREACH OF CONTRACT;
14                                          (3) BREACH OF IMPLIED COVENANT:
    WASHINGTON MUTUAL BANK, a federal       (4) CONVERSION; AND
15  savings association; MARK ST. PIERRE, an (5) UNJUST ENRICHMENT
    individual: and DOES 1 THROUGH 10.
16
              Defendants.
17

18

19      Plaintiff NMSBPCSLDHB ("Plaintiff") alleges as follows:

20      1.      Plaintiff is a California limited partnership organized and existing under the laws of

21  the State of California. with its principal place of business in Santa Clara County. California.

22  Robert M. Granum ("Granum") is the trustee of the Granum Family Trust – Plaintiff's general

23  partner.

24      2.      Defendant Washington Mutual Bank is a federal savings association organized and

25  existing under the laws of the United States of America doing business in Santa Clara County,

26  California.

27      3.      Upon information and belief, defendant Mark St. Pierre ("St. Pierre") is a

28  California resident living in Santa Clara County, California.  St. Pierre is now, and at all times

─────────────────────────────────────

COMPLAINT

1  relevant to this action was. a Vice President of Washington Mutual. In performing each of the acts

2  set forth herein, St. Pierre was acting within the scope and course of his agency with Washington

3  Mutual.

4      4.    Plaintiff is ignorant of the true names of the defendants sued herein as Does 1

5  through 10, inclusive. and therefore sues such defendants by such fictitious names. Plaintiff will

6  amend this complaint when it has the true names and capacities of the Doe defendants. Plaintiff is

7  informed and believes and on that basis alleges that each of the fictitiously named defendants was

8  the agent. employee or co-conspirator of one or more of the named defendants. aided and assisted

9  the named defendants in doing the wrongful acts alleged herein, ratified said acts and/or

10 perpetrated such wrongful acts themselves, and that Plaintiff's damages as alleged herein were

11 proximately caused by such defendants.

12     5.    Plaintiff is informed and believes and on that basis alleges that at all times material

13 hereto. each of the defendants were the agents or employees of the other defendants. acting within

14 the course and scope of such agency or employment, and aided or assisted one or more of the

15 other defendants in completing the wrongful acts alleged herein. Accordingly. each of the

16 defendants is jointly and severally liable for the damages alleged herein.

17     6.    Washington Mutual is responsible for the actions, policies, and practices of its

18 agents and employees. At all relevant times. Washington Mutual was and continues to be

19 responsible for assuring that the actions of its agents and employees comply with California law.

20     7.    Each of the defendants knew of, approved, endorsed or otherwise ratified the

21 wrongful acts of each of the other named defendants.

22     8.    The Court has jurisdiction of the subject matter of Plaintiff's causes of actions

23 pursuant to Article VI, Section 10 of the California Constitution.

24     9.    Venue in this Court is proper because defendants do business and reside in the

25 County of Santa Clara and their wrongful and unlawful conduct occurred in this judicial district.

26 ///

27 ///

28

-2-
COMPLAINT

## FACTS COMMON TO ALL ALLEGATIONS

1

2    10.    In or about June 2001, Washington Mutual loaned Plaintiff the sum of $9 million

3    evidenced by a written promissory note (the "Loan") and secured by a deed of trust on that certain

4    real property located at 400 Race Street, San Jose, California (the "Property").

5    11.    At the time of the Loan, Integrated Telecom Express, Inc. (the "Tenant") leased the

6    Property from Plaintiff pursuant to a long-term written lease.

7    12.    In or about October 2002, the Tenant filed for bankruptcy in an effort to discharge

8    its approximately $26 million of lease obligations to Plaintiff. At the time of the bankruptcy,

9    Tenant had $105 million in cash.

10    13.    Plaintiff successfully contested the Tenant's bankruptcy filing and ability to

11    discharge its lease obligations. See NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc.

12    (In re Integrated Telecom Express, Inc. 384 F.3d 108 (3rd Cir. 2004).

13    14.    In or about August or September 2004, Granum and St. Pierre discussed Plaintiff

14    assigning its recovery against the Tenant to Washington Mutual as additional security for the

15    Loan. The exact amount of Plaintiff's recovery against the Tenant was unknown at that time but

16    ranged anywhere from $2.3 million to $25 million.

17    15.    During the foregoing discussions, St. Pierre, individually and on behalf of

18    Washington Mutual, orally assured, promised and represented to Granum that only a portion of the

19    funds recovered from Tenant would held in Washington Mutual's deposit accounts and the

20    remaining portion would be placed in other investments.

21    16.    In reliance upon St. Pierre's assurances, promises and representations, Plaintiff

22    agreed to sign that certain Additional Security Agreement (the "Agreement") in or about mid-

23    November 2004. A true and correct copy of the Agreement is attached hereto and incorporated

24    herein by this reference as Exhibit 1.

25    17.    Consistent with St. Pierre's promise, the Agreement states: "Upon receipt of all or

26    any part of the Award, [Washington Mutual] will place **a portion of the funds received** into

27    [Washington Mutual's] certificates of deposit, to be held in [Plaintiff's name], in amounts and *for*

28    terms as mutually agreed upon by [Washington Mutual] and [Plaintiff] [emphasis added].

Huron law group

1    18.    In or about August 2005, the Tenant wire transferred $25 million – the amount

2    awarded to Plaintiff – to Washington Mutual.

3    19.    Because the amount received by Washington Mutual greatly exceeded the amount

4    of the Loan for $9 million, in or about September 2005, St. Pierre referred Granum to Washington

5    Mutual Financial Services. Inc. ("WMFS"), a related but separate entity, for the purpose of

6    collaboratively agreeing upon investments into which a portion of the funds would be invested.

7    20.    Granum and WMFS discussed and thereafter agreed upon certain investments for a

8    portion of the funds.  Granum did everything he was asked to do in order for WMFS to make the

9    agreed upon investments. including completing and signing various documents.

10    21.    WMFS then informed Granum that Washington Mutual would not transfer the

11    funds needed to make the agreed upon investments.

12    22.    In spite of his representations. and despite referring Granum to WMFS, in or about

13    late September 2005. St. Pierre told Granum that the Agreement required that the entire $25

14    million remain in Washington Mutual deposit accounts and that none of it could be invested

15    elsewhere.

16    23.    Since its receipt of the $25 million in August 2005, Washington Mutual has

17    controlled the entire sum, even though the outstanding balance on the Loan is approximately $8.4

18    and Washington Mutual is also the beneficiary of a first deed of trust encumbering the Property.

19    24.    Washington Mutual directly benefits from forcing Plaintiff to keep all of the $25

20    million in its deposit accounts because. among other things, the money is considered part of its

21    assets for regulatory and lending purposes.

22    25.    Washington Mutual has no interest or claim to any portion of the $25 million in

23    excess of the Loan balance of approximately $8.4 million, and thus holds such monies as a trustee

24    for Plaintiff's benefit.

25    <u>FIRST CAUSE OF ACTION</u>

26    (Negligent Misrepresentation Against St. Pierre

27    And Does 1 through 10)

28    26.    Plaintiff incorporates the allegations of paragraph 1 through 25, above, as though

-4-
COMPLAINT

1 | set forth in full herein.

2 | 27. St. Pierre made the assurances, promises and representations alleged in paragraph
3 | 15 above negligently with no reasonable basis for believing that Washington Mutual would agree
4 | to permit any of the $25 million to be invested anywhere other than its own deposit accounts.

5 | 28. St. Pierre's assurances, promises, and representations were important because
6 | Plaintiff's potential recovery greatly exceeded its indebtedness to Washington Mutual.

7 | 29. St. Pierre made such representations with the intent to induce Plaintiff to enter into
8 | the Agreement.

9 | 30. At all times material hereto. Plaintiff believed St. Pierre's representations. Plaintiff
10 | justifiably relied on St. Pierre's representations as alleged herein by entering into the Agreement.

11 | 31. If Plaintiff had known of the falsity of St. Pierre's representations. and lack of
12 | reasonable belief as to the truth of those representations. Plaintiff would not have entered into the
13 | Agreement.

14 | 32. As a proximate result of defendants' fraud and deceit. Plaintiff has suffered
15 | damages in an amount to be proven at trial in excess of $5 million.

16 | SECOND CAUSE OF ACTION

17 | (Breach of Contract Against Washington Mutual and Does 1 through 10)

18 | 33. Plaintiff incorporates the allegations of paragraphs 1 through 25, above. as though
19 | set forth in full herein.

20 | 34. In or about November 2004, Plaintiff entered into the Agreement. By the terms of
21 | the Agreement. Washington Mutual agreed to place only "a portion" of Plaintiff's award in its
22 | deposit accounts.

23 | 35. Washington Mutual has breached the Agreement by exclusively controlling the
24 | entire amount of Plaintiff's award and placing the "entire" amount of Plaintiff's award in its deposit
25 | accounts.

26 | 36. Plaintiff has done all things that have been required to by done by it under the
27 | Agreement and is in no manner or respect in breach thereof.

28 | 37. As a direct result of Washington Mutual's contractual duties, Plaintiff has suffered

Huron law group

damages in an amount to be proven at trial in excess of $5 million.

## THIRD CAUSE OF ACTION

(Breach of the Implied Covenant of Good Faith and Fair Dealing

Against Washington Mutual and Does 1 through 10)

38.    Plaintiff incorporates the allegations of paragraphs 1 through 25, above. as though set forth in full herein.

39.    In or about November 2004, Plaintiff entered into the Agreement.

40.    Implied in the Agreement is a covenant of good faith and fair dealing that Washington Mutual will do nothing to deprive Plaintiff of the benefits of the Agreement.

41.    The material benefit that Plaintiff was to receive under the Agreement was the ability to direct the investment of "a portion" of its award.

42.    Beginning in or about August 2005. and continuing to the present. Washington Mutual breached the implied covenant of good faith and fair dealing by exclusively controlling Plaintiff's entire award of $25 million.

43.    Plaintiff has performed all the terms and conditions required of it under the Agreement, except as such performance has been excused or rendered impossible by the acts or omissions of defendants as alleged herein.

44.    As a direct result of Washington Mutual's contractual duties, Plaintiff has suffered damages in an amount to be proven at trial in excess of $5 million.

## FOURTH CAUSE OF ACTION

(Conversion Against Washington Mutual and Does 1 through 10)

45.    Plaintiff incorporates the allegations of paragraphs 1 through 25, above. as though set forth in full herein.

46.    Plaintiff is the rightful owner of the $25 million award. and entitled to control. at a minimum. that portion which exceeds the amount of the Loan balance of approximately $8.4 less the value of Washington Mutual's security interest in the Property.

47.    Washington Mutual has converted this specific property belonging to Plaintiff for its own use and benefit.

Huron law group

1    48.    Washington Mutual has committed the foregoing acts without Plaintiff's consent.

2    49.    As a proximate result of defendants' wrongful conduct. Plaintiff has suffered

3    damages in an amount to be proven at trial in excess of $5 million.

4    50.    The foregoing conduct of defendants was intended to cause injury to Plaintiff.

5    subject it to cruel and unjust hardship in conscious disregard of its rights, and/or was designed to

6    deprive it of property, legal rights or otherwise cause it injury.  Such conduct therefore constitutes

7    malice. oppression or fraud under California Civil Code § 3294, thereby entitling Plaintiff to

8    punitive damages in an amount sufficient to deter and punish defendants.

9                          **FIFTH CAUSE OF ACTION**

10                (Unjust Enrichment Against Washington Mutual and Does 1 through 10)

11    51.    Plaintiff incorporates the allegations of paragraphs 1 through 25, above, as though

12    set forth in full herein.

13    52.    Plaintiff is the rightful owner of the $25 million award. and entitled to control. at a

14    minimum, that portion which exceeds the amount of the Loan balance of approximately $8.4 less

15    the value of Washington Mutual's security interest in the Property.

16    53.    By placing the entire $25 million award in its deposit accounts. Washington Mutual

17    has been unjustly enriched at Plaintiff's expense and detriment.

18    54.    By reason of the foregoing. Washington Mutual has become and should be

19    adjudged trustee for Plaintiff; and should be required to account for and deemed to be holding in

20    trust for Plaintiff all profits Washington Mutual has received from the wrongful conversion of

21    Plaintiff's specific funds.

22                          **PRAYER FOR RELIEF**

23

24    WHEREFORE. Plaintiff prays for judgment and relief against defendants as follows:

25    1.    For compensatory damages according to proof at trial:

26    2.    An award of attorneys' fees, costs and other expenses of suit incurred herein

27    according to proof:

28    ///

1      3.     Such other and further relief as the Court deems just and proper under the

2 circumstances.

3     DATED: November 7 , 2007      HURON LAW GROUP

4

5                       By: _____

6                              JEFFREY HURON
                             Attorneys for NMSBPCSLDHB

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "1"

## ADDITIONAL SECURITY AGREEMENT

This ADDITIONAL SECURITY AGREEMENT is made this 14th day of September 2004, by and between NMSBPCSLDHB, a California Limited Partnership, by and through its general partner, Robert M. Granum II ("NMSBPCSLDHB", "Assignor") and Washington Mutual Bank, F.A. ("WAMU", "Assignee") (collectively, "parties"), with reference to the following facts:

A.    WHEREAS, NMSBPCSLDHB is the owner of that certain real property commonly known as 400 Race Street, San Jose, California ("Property").

B.    WHEREAS, Integrated Telecom Express, Inc. was a tenant of NMSBPCSLDHB and leased the Property for a term of 10 years pursuant to that certain lease dated September 21, 2000 ("Lease"), a copy of which is attached hereto as Exhibit A.

C.    WHEREAS, WAMU provided NMSBPCSLDHB with a loan in the amount of $9,000,000.00 in connection with the purchase of the Property pursuant to that certain Promissory Note dated June 5, 2001 ("Loan"), a copy of which is attached hereto as Exhibit B.

D.    WHEREAS, WAMU substantially relied upon certain factors in agreeing to make the Loan, including but not limited to: 1) Integrated

Telecom Express, Inc.'s commitment to the Lease; 2) the rental payments and other fees that would be generated as a result of the Lease; 3) Integrated Telecom Express, Inc.'s prior receipt of $150 million in public funding as a result of the sale of securities through an Initial Public Offering; and 4) WAMU's belief that Integrated Telecom Express, Inc. was, at the time WAMU made the Loan, about to become a profitable company.

E.    WHEREAS, Integrated Telecom Express, Inc. sought federal bankruptcy protection in a petition dated October 8, 2002, and received such protection by order of the United States Bankruptcy Court for the District of Delaware on October 31, 2002.

F.    WHEREAS, there has been ongoing litigation between Integrated Telecom Express, Inc. and NMSBPCSLDHB.

G.    WHEREAS, NMSBPCSLDHB's motion to dismiss Integrated Telecom Express, Inc.'s bankruptcy was denied at the United States Bankruptcy Court and United States District Court levels.

H.    WHEREAS, most recently, NMSBPCSLDHB prevailed before a panel of the United States Court of Appeals for the Third Circuit in its motion to dismiss the bankruptcy.

I.    WHEREAS, Integrated Telecom Express, Inc. has indicated that it
intends to appeal the ruling of the United States Court of Appeals for
the Third Circuit or request an en banc review of the ruling before the
entire the United States Court of Appeals for the Third Circuit.

J.    WHEREAS, NMSBPCSLDHB's ultimate award for the Lease is
between $2.3 million and $25 million, exclusive of recovery of legal fees,
interest, deposits by NMSBPCSLDHB, recovery of costs associated with
the retenanting of the building due to Integrated Telecom Express, Inc.'s
breach of the Lease, and punitive awards (collectively, "Award"). The
Award shall not include the $2,200,000 (approximately) Letter of
Credit, the proceeds of which WAMU has previously sought and
received from the issuing bank.

NOW THEREFORE, in consideration of the mutual covenants of the
parties herein, and for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    Subject to all of the conditions and provisions stated herein,
Assignor hereby transfers and assigns to Assignee to hold on
Assignor's behalf and in Assignor's name and hereby pledges to
Lender to grant to Lender a security interest in additional

security for repayment of the Loan all or any part of the Award
made to Assignor, whether a) awarded to Assignor in any action
initiated in state or federal court arising from Assignor's claims
against Integrated Telecom Express, Inc. for breach of the Lease
(or related claims), or b) paid to Assignor as a result of a
settlement of Assignor's claims against Integrated Telecom
Express, Inc. either before or after the initiation of such litigation
in state or federal court.

2.    Upon receipt of all or any part of the Award, Assignee will place
a portion of the funds received into Assignee's certificates of
deposit, to be held in the name of NMSBPCSLDHB, in amounts
and for terms as mutually agreed upon by Assignee and
Assignor.  Since Assignee is unable to make monthly
withdrawals from certificates of deposit accounts, an amount
sufficient to cover the monthly draw requirements of this
agreement, will be withdrawn from the certificate of deposit
accounts and placed into Assignee's best available passbook
account from time to time. Assignee shall not unreasonably
withhold its consent as to amounts and terms for the respective
certificates of deposit. In the event that there is no mutual

agreement, then the decision as to the term and the amount shall be made by Assignee in its sole and absolute discretion. In addition, the rates offered to Assignor shall be the equivalent of the best rates offered to Assignee's best customers. Furthermore, the rates shall be predicated upon the amount of the certificates of deposit and their respective terms.

i. Such accrued interest is to be disbursed to Assignor annually on February 1 of each year, beginning on February 1, 2005.

ii. In addition to the disbursement of the accrued interest as described above, Assignee shall disburse monthly the sum of whatever portion of the Proceeds have been transferred and assigned by Assignor to Assignee up to that date, divided by the number of months remaining on the original Integrated Telecom Express, Inc. Lease. For example, if the Award is $7,200,000 and there are 72 months remaining up to and including February 28, 2011 (the date of the expiration of the Lease), the payment by WAMU to NMSBPCSLDHB would be $100,000 per month. Such disbursement shall be made on the first of each month beginning on the first of the month following 1) either a negotiated final settlement agreement

between NMSBPCSLDHB and Integrated Telecom Express,
Inc. or the award by a court of competent and final
jurisdiction of the ultimate Award determined by such a
court, and 2) the receipt by WAMU of such Award.

3) If Assignor defaults on (i) any payment due under the Loan or (ii) under
any material covenant to be performed by Assignor under the deed of trust
or any of the documents that evidence or secure the Loan ("Loan
Documents"), or any term or provision of this Agreement, Assignee in its
sole and absolute discretion, may (i) apply the funds in the account or any
portion of such funds to payment of the obligations secured hereby
(provided, however, that such application of funds shall not cure or be
deemed to cure any default); (ii) apply the funds in the Account to
reimburse Assignee for any losses or expenses (including, without
limitation, legal fees) suffered or incurred by Lender as a result of such
default, and (iii) apply the funds in the Account in connection with
exercising and exercise of all rights and remedies available to Assignee at
Law or in Equity or under this Additional Security Agreement or any of
the Loan Documents. Nothing in this Additional Security Agreement shall
obligate Assignee to apply all or any portion of the funds in the Account on

account of any default by Assignor or to repayment of the indebtedness of the Loan.

Assignor further agrees, and expressly acknowledges the reliance of Assignee hereon, that any and all applications of the funds in the Account to or upon any of the obligations secured hereby shall be, and shall be irrevocably deemed to be, a realization upon and foreclosure of the security interests and liens granted Assignee in such funds and shall not be, or deemed to be, the exercise of a right of set-off. Neither the execution and delivery of this Additional Security Agreement, the transfer by Assignor of any funds from the Account, whether in accordance with a request therefor by Assignor or otherwise, nor the application by Assignee of any funds in the Account to or upon the obligations secured hereby shall be or be deemed to be a violation of the "security-first" doctrine embodied in California Code of Civil Procedure section 726, nor effect a reinstatement of Assignor's obligations pursuant to California Civil Code sections 2924c or 2924d, it being expressly and irrevocably acknowledged and agreed by Assignor that the funds in the Account, the Account, and any and all sums deposited in and/or transferred from the Account pursuant to this Agreement constitute collateral security securing Assignor's obligations under the Loan Documents.

Page 7 of 9

4) Assignor agrees to indemnify and hold Assignee and its agents, directors, officers, employees, attorneys, successors, and assigns (collectively, "Indemnified Parties") harmless from all liability and damage of any kind incurred by the Indemnified Parties' (including any attorney's fees of the Indemnified Parties incurred defending any claim), in connection with any of the parties' performance under the terms of this Additional Security Agreement.

GOVERNING LAW.    This Additional Security Agreement is made and entered into in the State of California and shall be interpreted, construed, and enforced in accordance with the laws of the State of California.

BINDING EFFECT.    This Additional Security Agreement shall apply to, bind, and inure to the benefit of Assignor and Assignee, and their respective heirs, legal representatives, successors, and assigns.

COUNTERPARTS.    This Additional Security Agreement may be executed in one or more counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

ATTORNEY'S FEES.    In the event that a dispute arises between the parties over the terms, interpretation, or enforcement of this ADDITIONAL SECURITY AGREEMENT, whether such dispute is initiated through a judicial action or any alternative form of dispute resolution, and whether such dispute is

resolved through judgment, settlement, or otherwise, the prevailing party shall be
entitled to reasonable attorney's fees and costs and shall be deemed to have accrued
upon the commencement of such action or alternative form of dispute resolution.


    IN WITNESS WHEREOF, this Additional Security Agreement has been
executed as of the date first written above.

**ASSIGNOR**

NMSBPCSLDHB, a California
Limited Partnership, by and
through Robert M. Granum II

**ASSIGNEE**

Washington Mutual Bank, F.A.,
by and through MARK ST. PIERRE
its _VICE PRESIDENT_

Page 9 of 9

Exhibit C

Gregory N. Dolton. State Bar No. 159451
Gregory N. Dolton. Attorney at Law
708 Blossom Hill Road, No. 208
Los Gatos, California 95032
Telephone: 408.399.7540
Fax: 408.399.7542

Jeffrey Huron, State Bar No. 136585
jhuron@huronlaw.com
HURON LAW GROUP
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: 310.284.3400
Facsimile: 310.772.0037

Attorneys for Defendants NMSBPCSLDHB,
GRANUM FAMILY TRUST. and ROBERT
M. GRANUM, II

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WASHINGTON MUTUAL BANK,<br><br>               Plaintiff,<br><br>v.<br><br>NMSBPCSLDHB. a California limited partnership; the Granum Family Trust. as General Partner of NMSBPCSLDHB; and Robert M. Granum, II. as trustee of the Granum Family Trust,<br><br>               Defendants. | CASE NO. C 07 0280 PJH<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS OR STAY ACTION IN FAVOR OF PARALLEL STATE COURT ACTION; MEMORANDUM OF POINTS AND AUTHORITIES; SUPPORTING DECLARATION OF JEFFREY HURON**<br><br>Date:    December 19, 2007<br>Time:   9:00 A.M.<br>Crtrm:  3 |

*Huron law group*

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on December 19, 2007, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Phyllis J. Hamilton, Judge of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, 17th floor, San Francisco, California 94102, defendants NMSBPCSLDHB, Granum Family Trust, and Robert M. Granum, II (collectively, "Defendants") will and hereby do move this Court for order dismissing or staying this declaratory judgment action in favor of the parallel state court action currently pending in the Superior Court of the State of California for the County of Santa Clara and captioned as *NMSBPCSLDHB, a California limited partnership v. Washington Mutual Bank, a federal savings association; Mark St. Pierre, an individual; and Does 1 through 10*. Case No. 107 CV 098453.

This motion to dismiss or stay this declaratory judgment action in favor of the pending state court action is based on the grounds that this action involves only questions of state contract law, plaintiff Washington Mutual Bank ("WAMU") filed this action in anticipation of being sued by Defendants, and the state court action parallels this action in that both proceedings involve essentially the same parties and same state law issues. Therefore, if this action were to proceed, the Court would be making needless decisions of state law, rewarding forum shopping, and engaging in duplicative litigation. Further, all matters in controversy between the parties can be fully adjudicated in the parallel state court action. if WAMU's claim for declaratory relief is dismissed there will be no need to continue this case, and WAMU could have sought the same declaratory relief under California law in a California state court that it now seeks in this action. Relevant case law holds that a district court "ordinarily should **not** exercise its discretion to grant declaratory relief "where another suit is pending in a state court presenting the same issues. not governed by federal law, between the same parties." Brillhart v. Excess Ins. Co. of America. 316 U.S. 491, 495, 62 S. Ct. 1173, 1175-76, 86 L. Ed. 1620 (1942).

1  This motion is further based on this notice, the attached memorandum of points and

2  authorities, the attached declaration of Jeffrey Huron and all exhibits thereto, the papers and

3  pleadings on file in this action, and any further evidence as may be adduced at or before the

4  hearing on this motion.

5

6  DATED: November 8, 2007          HURON LAW GROUP

7

8                                  By:  _____

9                                       JEFFREY HURON
                                        Attorneys for Defendants NMSBPCSLDHB,
                                        GRANUM FAMILY TRUST, and ROBERT M.
10                                      GRANUM, II

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  ## MEMORANDUM OF POINTS AND AUTHORITIES

2

3  ## I.    INTRODUCTION

4        Plaintiff Washington Mutual Bank ("WAMU"), anticipating that it was about to be sued

5  for breach of contract and related causes of action by defendant NMSBPCSLDHB, preemptively

6  filed this action for declaratory relief against NMSBPCSLDHB and defendants Granum Family

7  Trust and Robert M. Granum, II (collectively, "Defendants"), hoping to obtain a declaration from

8  this Court that it could use to defend itself against Defendants' anticipated state law claims.  It is

9  patently obvious that WAMU was forum shopping when it filed this action.  WAMU's complaint

10  does not raise any questions of federal law, and alleges that subject matter jurisdiction is premised

11  exclusively on diversity of citizenship.  Moreover, had it chosen to do so, WAMU could have

12  obtained the exact same declaratory relief it now seeks in this federal action under California law

13  from a state court.  Cal. Code Civ. Proc. § 1060.  Since a parallel action is pending in state court in

14  which all the matters in controversy between the parties can be fully adjudicated, a declaratory

15  judgment in the federal court is unwarranted.  And, under the circumstances, allowing this action

16  to proceed would result in the Court making needless decisions of state law, rewarding forum

17  shopping, and engaging in duplicative litigation.  In short, this motion to dismiss or stay this

18  declaratory judgment action in favor of the pending state court action should be granted.

19

20  ## II.    RELEVANTS FACTS

21        In June 2001, WAMU loaned NMSBPCSLDHB the sum of $9 million evidenced by a

22  written promissory note (the "Loan") and secured by a deed of trust on real property located in

23  San Jose, California.  Complaint for Declaratory Relief ("CDR") ¶ 9; Declaration of Jeffrey Huron

24  ("Huron Decl.") ¶ 2, Ex. A (complaint ¶ 10).  At the time the parties executed the promissory note,

25  Integrated Telecom Express, Inc. ("ITEX") held a long-term lease on the property.  CDR ¶ 9;

26  Huron Decl., Ex. A (¶ 11).  In October 2002, ITEX filed for bankruptcy protection, and litigation

27  ensued between ITEX and NMSBPCSLDHB concerning amounts due under the lease.  CDR ¶ 10;

28  Huron Decl., Ex. A (¶ 12).

*Huron law group*

Huron law group

1    In or about the fall of 2004, NMSBPCSLDHB and WAMU entered into an Additional

2  Security Agreement (the "SAS") pursuant to which NMSBPCSLDHB assigned its recovery

3  against ITEX to WAMU as additional security for the $9 million loan. CDR ¶ 11 & Ex. A thereto;

4  Huron Decl., Ex. A (¶¶ 14-16 & Ex. A thereto). The SAS states: "Upon receipt of all or ay part of

5  the Award, [WAMU] will place a portion of the funds received into [WAMU's] certificates of

6  deposit, to be held in [NMSBPCSLDHB's name], in amounts and for terms as mutually agreed

7  upon by [WAMU] and [NMSBPCSLDHB]." CDR, Ex. A (SAS); Huron Decl., Ex. A (Ex. A

8  [SAS]) (emphasis added).

9    Thereafter, in August 2005, ITEX wire transferred $25 million—i.e., the amount awarded

10  to NMSBPCSLDHB in the litigation between it and ITEX—to WAMU. CDR ¶ 12; Huron Decl.,

11  Ex. A (¶ 18). Because the amount received by WAMU greatly exceeded the amount of the Loan

12  for $9 million, NMSBPCSLDHB contacted WAMU regarding investment of the funds and was

13  referred to Washington Mutual Financial Services, Inc. ("WMFS"), a related but separate entity.

14  Huron Decl., Ex. A (¶ 19). NMSBPCSLDHB and WMFS agreed upon certain investments for a

15  portion of the funds received by WAMU, and the necessary documents for making such

16  investments were completed and signed on behalf of NMSBPCSLDHB. Id. (¶ 20).

17    However, WMFS then informed NMSBPCSLDHB that WAMU would not transfer the

18  funds need to make the agreed upon investments. Id. (¶ 21). Instead, WAMU deposited the

19  entire award, including the excess collateral totaling over $16 million, into low interest deposit

20  accounts. CDR ¶ 12; Huron Decl., Ex. A (¶¶ 22, 38). Moreover, WAMU continues to exercise

21  exclusive control over the funds transferred to it, and has continued to insist that the entire award

22  remain in its deposit accounts. CDR ¶¶ 12-14; Huron Decl., Ex. A (¶ 23). WAMU directly

23  benefits from forcing NMSBPCSLDHB to keep all of the $25 million in its deposit accounts

24  because, among other things, the money is considered part of its assets for regulatory and lending

25  purposes. Huron Decl., Ex. A (¶ 24).

26    Efforts to resolve the parties' dispute informally proved ineffectual. CDR ¶¶ 13-14. That

27  NMSBPCSLDHB would soon initiate litigation proceedings against WAMU must have been

28  apparent to WAMU given the millions of dollars at stake and the parties' adamant but conflicting

-5-

1  stances on how the SAS should be interpreted with respect to investing the $25 million award. In

2  anticipation of that lawsuit, and despite the fact that the parties' dispute presents only issues of

3  state contract law and the remedy of declaratory relief under California law was available to it,

4  WAMU filed this federal declaratory judgment action against Defendants on January 16, 2007.

5       On November 6, 2007, NMSBPCSLDHB filed its anticipated action against WAMU (and

6  one of its vice presidents, Mark St. Pierre) in the Superior Court for the State of California for the

7  County of Santa Clara. Huron Decl., Ex. A. In that state court action, NMSBPCSLDHB alleges

8  causes of action against WAMU for breach of contract, breach of implied covenant, conversion

9  and unjust enrichment—all of which arise out of the same set of material operative facts involved

10  in this action. Id. (¶¶ 10-25, 33-62). Where, as is the case here, "an ongoing state proceeding

11  involves a state law issue that is predicated on the same factual transaction or occurrence involved

12  in a matter pending before a federal court, the state court is the more suitable forum for a

13  petitioner to bring a claim." American National Fire Ins. Co. v. Hungerford, 53 F. 3d 1012, 1016-

14  17, *overruled on other grounds in* Government Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1226

15  (9th Cir. 1998). Accordingly, Defendants now move this Court to dismiss or stay this declaratory

16  action in favor of the parallel action pending in state court. As explained below, this motion

17  should be granted.

18

19  **III.    THIS DECLARATORY ACTION SHOULD BE DISMISSED OR STAYED IN**

20  **FAVOR OF THE PENDING STATE COURT PROCEEDING**

21       **A.    District Courts Ordinarily Refrain From Exercising Jurisdiction Over A**

22       **Federal Declaratory Action When A Parallel State Court Case Is Pending**

23       A district court "ordinarily should <u>not</u> exercise its discretion to grant declaratory relief

24  'where another suit is pending in a state court presenting the same issues, not governed by federal

25  law, between the same parties.'" Continental Casualty Co. v. Robsac Industries, 947 F.2d 1367,

26  1370 (9th Cir. 1991) (emphasis added), *overruled on other grounds* in Dizol, supra, 133 F.3d at

27  1226, *and quoting* Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495, 62 S. Ct. 1173,

28  1175-76, 86 L. Ed. 1620 (1942). Under such circumstances, there is a presumption that the entire

-6-

Huron law group

1  suit should be heard in state court. Chamberlain v. Allstate Insurance Co., 931 F.2d 1361, 1366-

2  67 (9th Cir. 1991); see also Brillhart, supra, 316 U.S. at 495, 62 S. Ct. at 1175-76 (same); Gribin

3  v. Hammer Galleries, a Div. of Hammer Holding, Inc., 793 F. Supp. 233, 234 (C.D. Cal. 1992)

4  (same).

5         The presumption against exercising federal declaratory jurisdiction is not rebutted merely

6  because the parallel state court action was filed after the declaratory action was commenced.

7  Gribin, 793 F. Supp at 235. Rather, "[t]he real question for the court is not which action was

8  commenced first but which will most fully serve the needs and convenience of the parties and

9  provide a comprehensive solution of the general conflict." Id. Moreover, a district court may, in

10 the sound exercise of its discretion, dismiss or stay a declaratory action any time before trial or

11 even "after all arguments have drawn to a close." Wilton v. Seven Falls Co., 515 U.S. 277, 288,

12 115 S. Ct. 2137, 2143, 132 L. Ed. 2d 214 (1995).

13        In Brillhart, supra, the Supreme Court set forth the primary factors for consideration when

14 determining whether to dismiss or stay a federal declaratory action in favor of a parallel state court

15 proceeding: "[a] district court should avoid needless determination of state law issues; it should

16 discourage litigants from filing declaratory actions as a means of forum shopping; and it should

17 avoid duplicative litigation." Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800, 803 (9th

18 Cir. 2002). The Brillhart factors are not exhaustive, and pertinent factors can also include, e.g.,

19 whether the declaratory judgment action will settle the controversy or clarify legal issues; whether

20 the declaratory action is sought only for "procedural fencing," including an unfair advantage in

21 achieving res judicata; whether deciding the declaratory judgment would improperly entangle the

22 federal and state court systems; and the availability and convenience of other remedies. Dizol,

23 supra, 133 F.3d at 1225 fn. 5. Another factor that may be considered is whether the federal action

24 will continue if the declaratory judgment claim is dismissed. DeFeo v. Procter & Gamble Co.,

25 831 F. Supp. 776, 778 (N.D. Cal. 1993).

26        **B.    When All The Relevant Factors Are Considered, It Becomes Readily Apparent**

27              **That The Court Should Dismiss Or Stay This Declaratory Judgment Action**

28        Here, application of the Brillhart factors compels the conclusion that the Court should

1  dismiss or stay this declaratory action in favor of the pending state court action. First. this action

2  involves <u>exclusively</u> questions of state contract law—i.e., WAMU seeks a judicial declaration

3  from the Court regarding the meaning of certain disputed terms in the parties' contract, and of its

4  rights and obligations under that contract. See CDR ¶ 14 ("A dispute has now arisen concerning

5  the terms of the ASA: specifically, plaintiff contends that the ASA mandates that the award be

6  placed in only two types of accounts: certificates of deposit and passbook accounts. Defendants

7  NMSBPCSLDHB and Robert M. Granum, II claim the ASA allows other investments. Therefore.

8  plaintiff seeks declaratory relief defining its rights and obligations under the ASA."). No

9  questions of federal law are raised, and that is why subject matter jurisdiction is alleged to be

10  premised solely on diversity of citizenship. Id. ¶ 1. The state law questions raised by WAMU in

11  its federal declaratory action can and indeed will be addressed by the state court in the pending

12  state court action given that the judicial declaration WAMU seeks in this case is obviously a

13  defense to the breach of contract, breach of fiduciary duty, and breach of implied covenant causes

14  of action alleged in the state court action. Consequently, dismissing or staying this declaratory

15  action will ensure that the Court does not needlessly determine issues of state law.

16      Second. WAMU filed this action in anticipation of being sued by Defendants and in order

17  to secure a federal forum, hoping it will receive more favorable treatment in a federal court given

18  its status as a federal savings association organized and existing under federal law. The final

19  award of <u>$25 million</u> granted to NMSBPCSLDHB in the ITEX Litigation and transferred to

20  WAMU pursuant to the ASA greatly exceeded the amount of the $9 million Loan. By exclusively

21  controlling NMSBPCSLDHB's entire award, placing the <u>entire</u> amount of that award in its low

22  interest deposit accounts, and refusing to invest any of the award, especially the excess collateral,

23  as NMSBPCSLDHB has requested, WAMU created a situation in which litigation was inevitable

24  and it knew that it was only a matter of time before NMSBPCSLDHB brought an action against it.

25  Accordingly, WAMU raced to the courthouse ahead of NMSBPCSLDHB, filing this declaratory

26  relief action seeking a judicial declaration that would provide it with a defense to the breach of

27  contract and related state law claims WAMU anticipated NMSBPCSLDHB would file against it.

28      However, "[t]he Declaratory Judgment Act was not intended to enable a party to obtain a

Huron law group

1  change of tribunal from a state to federal court, and it is not the function of the federal declaratory

2  action merely to anticipate a defense that otherwise could be presented in a state court action."

3  Gribin, supra, 793 F. Supp. at 235. The Ninth Circuit agrees. In Robsac, supra, 947 F.2d 1367, an

4  insurance company brought a declaratory relief action seeking a declaration of non-liability on an

5  insurance policy one month after the insureds had filed suit for breach of contract. The Ninth

6  Circuit found that the district court abused its discretion by not dismissing or staying the

7  declaratory action which had been brought solely on the basis of diversity jurisdiction. Id. at

8  1372-73. The Ninth Circuit's holding relied in part on the interest of discouraging litigants from

9  filing declaratory actions as a means of forum shopping, finding that the insurance company's suit

10  represented "the archetype of ... 'reactive' litigation." Id. at 1372. In response to the insurance

11  company's argument that it had intended to file in federal court before the insured filed its state

12  court action, the Ninth Circuit stated: "Whether the federal declaratory judgment action regarding

13  insurance coverage is filed first or second, it is reactive, and permitting it to go forward when there

14  is a pending state court case presenting the identical issue would encourage forum shopping in

15  violation of the *Brillhart* principle." Id. at 1372-73; see also Dizol, supra, 133 F.3d at 1225

16  ("[F]ederal courts should generally decline to entertain reactive declaratory actions.").

17       Here, as shown above, the facts of this case establish that WAMU has come to this Court

18  only to preemptively assert an anticipatory defense against the lawsuit for breach of contract and

19  related claims that WAMU fully expected NMSBPCSLDHB was going to file against it. "The

20  Declaratory Judgment Act is not to be invoked to deprive a plaintiff of his conventional choice of

21  forum and timing, precipitating a disorderly race to the courthouse. [Citation omitted]." DeFeo,

22  supra, 831 F. Supp. at 778. Under the circumstances, staying or dismissing this declaratory action

23  in favor of the parallel state court action would discourage litigants from engaging in forum

24  shopping consistent and therefore the second Brillhart factor likewise compels the Court to abstain

25  from exercising its declaratory jurisdiction in this case.

26       Third, the parties and issues in this case parallel those in the pending state court action.

27  WAMU is the defendant in the state court action, NMSBPCSLDHB is the plaintiff, and while they

28  are not named in the state court action, Robert M. Granum is trustee of Granum Family Trust,

**Huron law group**

NOTICE OF MOTION AND MOTION TO DISMISS ACTION IN FAVOR OF STATE COURT ACTION

1   NMSBPCSLDHB's general partner.  Huron Decl. ¶ 2, Ex. A (complaint ¶¶ 1-2).  Not only are the

2   parties essentially the same in both actions, but so are the issues.  In the state court action.

3   NMSBPCSLDHB sues WAMU for breach of contract, breach of the implied covenant of good

4   faith and fair dealing, conversion, and for unjust enrichment; each of those causes of action arises

5   out of the same dispute over the terms of the ASA upon which this declaratory action is based.  Id.

6   (¶¶ 10-25, 33-62).  Moreover, as explained above, WAMU has come to this Court seeking an

7   anticipatory defense to the causes of action alleged against it in the state court action.  The federal

8   and state actions do not have to be exactly identical before a district court can decline to exercise

9   jurisdiction under the Declaratory Judgment Act because another case is pending in a state court.

10  Hungerford, supra, 53 F. 3d at 1015-17.  For the above reasons, the abstention from exercising

11  declaratory jurisdiction in this case will avoid duplicative litigation, and thus the third Brillhart

12  factor likewise compels the dismissal or stay of this declaratory action.

13      In addition to the Brillhart factors, there are other factors which likewise urge the Court to

14  dismiss or stay this declaratory action.  For example, this action will not settle all aspects of the

15  controversy because the pending state court action is broader than this one.  Specifically, the state

16  court action includes a cause of action for misrepresentation against Mark St. Pierre, a vice

17  president of WAMU, which will not be resolved by this Court's decision to grant (or deny) the

18  declaratory relief requested in this case.  On the other hand, the only claim alleged in this action is

19  one for declaratory relief; consequently, this action will not continue if such declaratory relief

20  claim is dismissed.  DeFeo, supra, 831 F. Supp. at 778 (continuance of federal action after

21  dismissal of claim for declaratory judgment is factor that may rebut presumption against

22  exercising declaratory jurisdiction when a parallel action is pending in a state court).

23      Moreover, WAMU could have sought the **exact same** declaratory relief it now seeks in

24  this action from the state court where NMSBPCSLDHB's action against WAMU is now pending.

25  California Code of Civil Procedure section 1060 provides in relevant part: "Any person interested

26  under ... a contract, or who desires a declaration of his or her rights or duties with respect to

27  another. ... may, in cases of actual controversy relating to the legal rights and duties of the

28  respective parties, bring an original action or cross-complaint in the superior court for a

Huron law group

-10-

1 declaration of his or her rights and duties ..., including a determination of any question of

2 construction ... arising under the ... contract." Cal. Code Civ. Proc. § 1060. This is yet another

3 reason justifying the dismissal or stay of this declaratory action in favor of the state court action.

4 Hungerford, supra, 53 F. 3d at 1018 ("Because it appears that [declaratory plaintiff] could have

5 brought this action in state court through California's own declaratory judgment provision, we

6 should not endorse its attempt to obtain a federal forum to provide the remedy it seeks. [Footnote

7 omitted]. Thus, ... a decision to exercise jurisdiction in this case would only encourage forum

8 shopping, procedural fencing, and the 'race for res judicata.' [Citation omitted].")

9      In short, once this action is carefully examined in light of the Brillhart and other relevant

10 factors, it becomes readily apparent that the Court should decide against exercising declaratory

11 jurisdiction in this case.

12

13 **IV.    CONCLUSION**

14      For all of the above reasons, Defendants respectfully urge that this action be dismissed or

15 stayed in favor of the pending state court proceeding.

16

17 DATED: November 8, 2007          HURON LAW GROUP

18

19                                 By:  _____

20                                      JEFFREY HURON
                                        Attorneys for Defendants NMSBPCSLDHB,
21                                      GRANUM FAMILY TRUST, and ROBERT M.
                                        GRANUM, II

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS ACTION IN FAVOR OF STATE COURT ACTION

Huron law group

## DECLARATION OF JEFFREY HURON

I, Jeffrey Huron, declare as follows:

1.    I am an attorney at law duly licensed to practice law in the State of California and before all of its Courts.  I am a partner in the law firm of the Huron Law group, attorneys of record herein for defendants NMSBPCSLDHB, Granum Family Trust, and Robert M. Granum, II (collectively, "Defendants").  I have personal knowledge of the following facts and, if called upon to do so, could and would competently testify thereto.

2.    Attached hereto as Exhibit A is a true and correct copy of a complaint that I caused to be filed on behalf of NMSBPCSLDHB on November 6, 2007, with the Superior Court of the State of California for the County of Santa Clara, captioned *NMSBPCSLDHB, a California limited partnership v. Washington Mutual Bank, a federal savings association; Mark St. Pierre, an individual; and Does 1 through 10*. Case No. 107 CV 098453.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 8th day of November 2007 in Los Angeles, California.

_____
Jeffrey Huron

R:\WordData\2346.017 [WAMU]\Pleadings\Motion to Dismiss Action.doc

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1875 Century Park East, Suite 1000, Los Angeles, California 90067.

On November 8, 2007, I served the following document(s) described as **NOTICE OF MOTION AND MOTION TO DISMISS OR STAY ACTION IN FAVOR OF PARALLEL STATE COURT ACTION; MEMORANDUM OF POINTS AND AUTHORITIES; SUPPORTING DECLARATION OF JEFFREY HURON** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Gregory N. Dolton, Esq.                        Anna S. McLean, Esq.
Gregory N. Dolton, Attorney at Law             HELLER EHRMAN LLP
708 Blossom Hill Road. No. 208                 333 Bush Street
Los Gatos, California 95032                     San Francisco, CA 94104-2878

**BY MAIL:** I am "readily familiar" with Huron law group's practice for collecting and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 8, 2007, at Los Angeles, California.

OMAR ROQUE B

-13-
NOTICE OF MOTION AND MOTION TO DISMISS ACTION IN FAVOR OF STATE COURT ACTION

.

Exhibit D

11/28/2007 16:51 FAX 415 772 6268    HEWM LLP SF1-4    ☑003

1  PETER S. HECKER (Bar No. 66159)
   ANNA S. McLEAN (Bar No. 14223)
2  JESSE P. SISGOLD (Bar No. 222403)
   E-Mail: anna.mclean@hellerehrman.com
3  HELLER EHRMAN LLP
   333 Bush Street
4  San Francisco, CA 94104-2878
   Telephone: +1 (415) 772-6000
5  Facsimile: +1 (415) 772-6268

6  Attorneys for Defendants
   WASHINGTON MUTUAL BANK and
7  MARK ST. PIERRE

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12
   NMSBPCSLDHB, a California limited          Case No.:
13 partnership,
                                             **NOTICE OF REMOVAL OF CIVIL**
14                          Plaintiff,       **ACTION PURSUANT TO 28 U.S.C.**
                                             **§ 1441(b) (DIVERSITY OF**
15         v.                                **CITIZENSHIP)**

16 WASHINGTON MUTUAL BANK, a federal
   savings association; MARK ST. PIERRE, an
17 individual; and DOES 1 THROUGH 10,

18                          Defendants.

19

20

21

22

23

24

25

26

27

28

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

**PLEASE TAKE NOTICE** that defendants Washington Mutual Bank ("WaMu") and Mark St. Pierre hereby remove the action described below to this Court. This is a civil action of which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.

In support of this Notice of Removal, defendants state as follows:

1.    On or about November 7, 2007, plaintiff commenced an action for negligent misrepresentation against Mark St. Pierre and for breach of contract, breach of implied covenant, conversion and unjust enrichment against WaMu in the Superior Court of the State of California for the County of Santa Clara entitled *NMSBPCSLDHB v. Washington Mutual Bank, et al.*, Case No. 107 CV 098453. Defendants executed an acknowledgement of receipt for the summons and complaint – thereby effecting service – on November 19, 2007. (Copies of the summons, complaint, civil case cover sheet and acknowledgement of receipt are attached as Exhibit A.)

2.    Pursuant to 28 U.S.C. § 1446(b), this removal is timely because it is accomplished within 30 days of the removing party being served with the initial pleading (*i.e.*, accomplished by December 19, 2007).

3.    This is a civil action of which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332. It may be removed to this Court by defendants pursuant to the provisions of 28 U.S.C. § 1441(b) because it is a civil action between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

4.    Plaintiff NMSBPCSLDHB was at the time of the filing of this action and still is a California limited partnership with its principal place of business in California.

5.    The Granum Family Trust is the general partner of defendant NMSBPCSLDHB and is located in California.

6.    Robert M. Granum, II is the trustee of the Granum Family Trust and is otherwise authorized to transact business on behalf of the Granum Family Trust as general partner for NMSBPCSLDHB. Robert M. Granum, II is an individual and resident of California.

1

7.    Defendant WaMu is a federal association duly organized under 12 U.S.C. § 1464, has its home office in Henderson, Nevada, and is for diversity purposes a citizen of Nevada.

8.    Defendant Mark St. Pierre, an individual employee of WaMu in Stockton, California, has been *fraudulently joined* to this lawsuit and thus is ignored for diversity purposes. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (joinder of non-diverse defendant is deemed fraudulent, and defendant's presence in lawsuit is ignored for purposes of determining diversity, "if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious . . ."). Plaintiff fails to state a cause of action against St. Pierre because, *inter alia*, the sole cause of action asserted against him— negligent misrepresentation—is barred on its face by the applicable statute of limitations.

9.    Plaintiff alleges its principal, Granum, learned "in or about late September 2005" that prior representations allegedly made by St. Pierre were not included in the parties' written agreement, as interpreted by WaMu. Complaint ¶ 22. Plaintiff filed its action for negligent misrepresentation in November 2007—some 26 months after Granum discovered the alleged misrepresentation. As a result, the sole claim against St. Pierre is time-barred. *See* Cal. Civ. Proc. § 339; *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1316 (2007) ("a cause of action for negligent misrepresentation . . . is subject to a two-year limitations period"); *Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Associates, Inc.*, 115 Cal. App. 4th 1145, 1155 (2004) (two-year statute of limitation applies, especially where information is conveyed in commercial setting for business purpose); *see also Ventura County Nat'l Bank v. Macker*, 49 Cal. App. 4th 1528, 1531 (1996) (same).

10.    Consequently, complete diversity exists. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-1319 (9th Cir. 1998) (fraudulently joined defendants against whom plaintiff could not state cause of action due to statute of limitations are ignored for diversity purposes).

1       11.     Plaintiff seeks, and thus the actual amount in controversy is, in excess of

2   $75,000, exclusive of interest and costs.  In its complaint, plaintiff seeks compensatory

3   damages "in excess of $5 million."  Complaint, ¶¶ 37, 44, 49.  Accordingly, the amount in

4   controversy requirement is also satisfied.  *See* 20 U.S.C. § 1332(a).

5       Based on the foregoing, this case is properly removed and original jurisdiction vests

6   in this Court pursuant to 28 U.S.C. § 1332.

7

8   Dated:  November 28, 2007              HELLER EHRMAN LLP

9                                          By _____

10                                             ANNA S. McLEAN

11                                          Attorneys for Defendants
                                            WASHINGTON MUTUAL BANK and
12                                          MARK ST. PIERRE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. § 1441(B) (DIVERSITY OF

# EXHIBIT A

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
WASHINGTON MUTUAL BANK, a federal savings
association; MARK ST. PIERRE, an individual; and DOES
1 THROUGH 10,

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ENDORSED

2007 ... 7 P 3: 53

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
NMSBPCSLDHB, a California limited partnership

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| *(El nombre y dirección de la corte es):* | *(Número del caso):* **07 CV 098453** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
191 NORTH FIRST STREET
SAN JOSE, CA  95113-1090

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jeffrey Huron                              (310) 284-3400
Huron law group
1875 Century Park East
Los Angeles

| DATE: **NOV 0 7 2007** | Clerk, by _____ A. Ilas | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

SUMMONS

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

FILED BY FAX

1  Jeffrey Huron, State Bar No. 136585
   jhuron@huronlaw.com
2  HURON LAW GROUP
   1875 Century Park East, Suite 1000
3  Los Angeles, California 90067
   Telephone: 310.284.3400
4  Facsimile: 310.772.0037

5  Attorneys for NMSBPCSLDHB

ENDORSED

2091 ⋯ 7 P 3: 59

[illegible stamp]
COUNTY OF [illegible]
BY
A. Ilas[illegible]

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                  **FOR THE COUNTY OF SANTA CLARA**

10                     **107CV098453**

11  NMSBPCSLDHB, a California limited     CASE NO.
    partnership,
12                                         **COMPLAINT FOR:**
           Plaintiff,                      **(1) NEGLIGENT**
13                                         **MISREPRESENTATION;**
        v.                                 **(2) BREACH OF CONTRACT;**
14                                         **(3) BREACH OF IMPLIED COVENANT:**
    WASHINGTON MUTUAL BANK, a federal      **(4) CONVERSION; AND**
15  savings association; MARK ST. PIERRE, an  **(5) UNJUST ENRICHMENT**
    individual; and DOES 1 THROUGH 10,
16
           Defendants.
17

18

19       Plaintiff NMSBPCSLDHB ("Plaintiff") alleges as follows:

20       1.    Plaintiff is a California limited partnership organized and existing under the laws of

21  the State of California, with its principal place of business in Santa Clara County, California.

22  Robert M. Granum ("Granum") is the trustee of the Granum Family Trust – Plaintiff's general

23  partner.

24       2.    Defendant Washington Mutual Bank is a federal savings association organized and

25  existing under the laws of the United States of America doing business in Santa Clara County,

26  California.

27       3.    Upon information and belief, defendant Mark St. Pierre ("St. Pierre") is a

28  California resident living in Santa Clara County, California. St. Pierre is now, and at all times

Huron law group

1   relevant to this action was, a Vice President of Washington Mutual. In performing each of the acts

2   set forth herein, St. Pierre was acting within the scope and course of his agency with Washington

3   Mutual.

4       4.      Plaintiff is ignorant of the true names of the defendants sued herein as Does 1

5   through 10, inclusive, and therefore sues such defendants by such fictitious names. Plaintiff will

6   amend this complaint when it has the true names and capacities of the Doe defendants. Plaintiff is

7   informed and believes and on that basis alleges that each of the fictitiously named defendants was

8   the agent, employee or co-conspirator of one or more of the named defendants, aided and assisted

9   the named defendants in doing the wrongful acts alleged herein, ratified said acts and/or

10  perpetrated such wrongful acts themselves, and that Plaintiff's damages as alleged herein were

11  proximately caused by such defendants.

12      5.      Plaintiff is informed and believes and on that basis alleges that at all times material

13  hereto, each of the defendants were the agents or employees of the other defendants, acting within

14  the course and scope of such agency or employment, and aided or assisted one or more of the

15  other defendants in completing the wrongful acts alleged herein. Accordingly, each of the

16  defendants is jointly and severally liable for the damages alleged herein.

17      6.      Washington Mutual is responsible for the actions, policies, and practices of its

18  agents and employees. At all relevant times, Washington Mutual was and continues to be

19  responsible for assuring that the actions of its agents and employees comply with California law.

20      7.      Each of the defendants knew of, approved, endorsed or otherwise ratified the

21  wrongful acts of each of the other named defendants.

22      8.      The Court has jurisdiction of the subject matter of Plaintiff's causes of actions

23  pursuant to Article VI, Section 10 of the California Constitution.

24      9.      Venue in this Court is proper because defendants do business and reside in the

25  County of Santa Clara and their wrongful and unlawful conduct occurred in this judicial district.

26  ///

27  ///

28

Huron law group

## FACTS COMMON TO ALL ALLEGATIONS

10.   In or about June 2001, Washington Mutual loaned Plaintiff the sum of $9 million evidenced by a written promissory note (the "Loan") and secured by a deed of trust on that certain real property located at 400 Race Street, San Jose, California (the "Property").

11.   At the time of the Loan, Integrated Telecom Express, Inc. (the "Tenant") leased the Property from Plaintiff pursuant to a long-term written lease.

12.   In or about October 2002, the Tenant filed for bankruptcy in an effort to discharge its approximately $26 million of lease obligations to Plaintiff. At the time of the bankruptcy, Tenant had $105 million in cash.

13.   Plaintiff successfully contested the Tenant's bankruptcy filing and ability to discharge its lease obligations. See, NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc. 384 F.3d 108 (3rd Cir. 2004).

14.   In or about August or September 2004, Granum and St. Pierre discussed Plaintiff assigning its recovery against the Tenant to Washington Mutual as additional security for the Loan. The exact amount of Plaintiff's recovery against the Tenant was unknown at that time but ranged anywhere from $2.3 million to $25 million.

15.   During the foregoing discussions, St. Pierre, individually and on behalf of Washington Mutual, orally assured, promised and represented to Granum that only a portion of the funds recovered from Tenant would held in Washington Mutual's deposit accounts and the remaining portion would be placed in other investments.

16.   In reliance upon St. Pierre's assurances, promises and representations, Plaintiff agreed to sign that certain Additional Security Agreement (the "Agreement") in or about mid-November 2004. A true and correct copy of the Agreement is attached hereto and incorporated herein by this reference as Exhibit 1.

17.   Consistent with St. Pierre's promise, the Agreement states: "Upon receipt of all or any part of the Award, [Washington Mutual] will place **a portion of the funds received** into [Washington Mutual's] certificates of deposit, to be held in [Plaintiff's name], in amounts and for terms as mutually agreed upon by [Washington Mutual] and [Plaintiff] [emphasis added].

18.    In or about August 2005, the Tenant wire transferred $25 million – the amount awarded to Plaintiff – to Washington Mutual.

19.    Because the amount received by Washington Mutual greatly exceeded the amount of the Loan for $9 million, in or about September 2005, St. Pierre referred Granum to Washington Mutual Financial Services, Inc. ("WMFS"), a related but separate entity, for the purpose of collaboratively agreeing upon investments into which a portion of the funds would be invested.

20.    Granum and WMFS discussed and thereafter agreed upon certain investments for a portion of the funds. Granum did everything he was asked to do in order for WMFS to make the agreed upon investments, including completing and signing various documents.

21.    WMFS then informed Granum that Washington Mutual would not transfer the funds needed to make the agreed upon investments.

22.    In spite of his representations, and despite referring Granum to WMFS, in or about late September 2005, St. Pierre told Granum that the Agreement required that the entire $25 million remain in Washington Mutual deposit accounts and that none of it could be invested elsewhere.

23.    Since its receipt of the $25 million in August 2005, Washington Mutual has controlled the entire sum, even though the outstanding balance on the Loan is approximately $8.4 and Washington Mutual is also the beneficiary of a first deed of trust encumbering the Property.

24.    Washington Mutual directly benefits from forcing Plaintiff to keep all of the $25 million in its deposit accounts because, among other things, the money is considered part of its assets for regulatory and lending purposes.

25.    Washington Mutual has no interest or claim to any portion of the $25 million in excess of the Loan balance of approximately $8.4 million, and thus holds such monies as a trustee for Plaintiff's benefit.

### FIRST CAUSE OF ACTION

#### (Negligent Misrepresentation Against St. Pierre

#### And Does 1 through 10)

26.    Plaintiff incorporates the allegations of paragraph 1 through 25, above, as though

1    set forth in full herein.

2       27.    St. Pierre made the assurances, promises and representations alleged in paragraph

3    15 above negligently with no reasonable basis for believing that Washington Mutual would agree

4    to permit any of the $25 million to be invested anywhere other than its own deposit accounts.

5       28.    St. Pierre's assurances, promises, and representations were important because

6    Plaintiff's potential recovery greatly exceeded its indebtedness to Washington Mutual.

7       29.    St. Pierre made such representations with the intent to induce Plaintiff to enter into

8    the Agreement.

9       30.    At all times material hereto, Plaintiff believed St. Pierre's representations. Plaintiff

10    justifiably relied on St. Pierre's representations as alleged herein by entering into the Agreement.

11       31.    If Plaintiff had known of the falsity of St. Pierre's representations, and lack of

12    reasonable belief as to the truth of those representations, Plaintiff would not have entered into the

13    Agreement.

14       32.    As a proximate result of defendants' fraud and deceit, Plaintiff has suffered

15    damages in an amount to be proven at trial in excess of $5 million.

16                **SECOND CAUSE OF ACTION**

17       **(Breach of Contract Against Washington Mutual and Does 1 through 10)**

18       33.    Plaintiff incorporates the allegations of paragraphs 1 through 25, above, as though

19    set forth in full herein.

20       34.    In or about November 2004, Plaintiff entered into the Agreement. By the terms of

21    the Agreement, Washington Mutual agreed to place only "a portion" of Plaintiff's award in its

22    deposit accounts.

23       35.    Washington Mutual has breached the Agreement by exclusively controlling the

24    entire amount of Plaintiff's award and placing the "entire" amount of Plaintiff's award in its deposit

25    accounts.

26       36.    Plaintiff has done all things that have been required to by done by it under the

27    Agreement and is in no manner or respect in breach thereof.

28       37.    As a direct result of Washington Mutual's contractual duties, Plaintiff has suffered

Huron law group

Huron law group

1    damages in an amount to be proven at trial in excess of $5 million.

2    ### THIRD CAUSE OF ACTION

3    ### (Breach of the Implied Covenant of Good Faith and Fair Dealing

4    ### Against Washington Mutual and Does 1 through 10)

5    38.    Plaintiff incorporates the allegations of paragraphs 1 through 25, above, as though

6    set forth in full herein.

7    39.    In or about November 2004, Plaintiff entered into the Agreement.

8    40.    Implied in the Agreement is a covenant of good faith and fair dealing that

9    Washington Mutual will do nothing to deprive Plaintiff of the benefits of the Agreement.

10    41.    The material benefit that Plaintiff was to receive under the Agreement was the

11    ability to direct the investment of "a portion" of its award.

12    42.    Beginning in or about August 2005, and continuing to the present, Washington

13    Mutual breached the implied covenant of good faith and fair dealing by exclusively controlling

14    Plaintiff's entire award of $25 million.

15    43.    Plaintiff has performed all the terms and conditions required of it under the

16    Agreement, except as such performance has been excused or rendered impossible by the acts or

17    omissions of defendants as alleged herein.

18    44.    As a direct result of Washington Mutual's contractual duties, Plaintiff has suffered

19    damages in an amount to be proven at trial in excess of $5 million.

20    ### FOURTH CAUSE OF ACTION

21    ### (Conversion Against Washington Mutual and Does 1 through 10)

22    45.    Plaintiff incorporates the allegations of paragraphs 1 through 25, above, as though

23    set forth in full herein.

24    46.    Plaintiff is the rightful owner of the $25 million award, and entitled to control, at a

25    minimum, that portion which exceeds the amount of the Loan balance of approximately $8.4 less

26    the value of Washington Mutual's security interest in the Property.

27    47.    Washington Mutual has converted this specific property belonging to Plaintiff for

28    its own use and benefit.

1     48.    Washington Mutual has committed the foregoing acts without Plaintiff's consent.

2     49.    As a proximate result of defendants' wrongful conduct, Plaintiff has suffered

3 damages in an amount to be proven at trial in excess of $5 million.

4     50.    The foregoing conduct of defendants was intended to cause injury to Plaintiff,

5 subject it to cruel and unjust hardship in conscious disregard of its rights, and/or was designed to

6 deprive it of property, legal rights or otherwise cause it injury.  Such conduct therefore constitutes

7 malice, oppression or fraud under California Civil Code § 3294, thereby entitling Plaintiff to

8 punitive damages in an amount sufficient to deter and punish defendants.

9 **FIFTH CAUSE OF ACTION**

10 **(Unjust Enrichment Against Washington Mutual and Does 1 through 10)**

11     51.    Plaintiff incorporates the allegations of paragraphs 1 through 25, above, as though

12 set forth in full herein.

13     52.    Plaintiff is the rightful owner of the $25 million award, and entitled to control, at a

14 minimum, that portion which exceeds the amount of the Loan balance of approximately $8.4 less

15 the value of Washington Mutual's security interest in the Property.

16     53.    By placing the entire $25 million award in its deposit accounts, Washington Mutual

17 has been unjustly enriched at Plaintiff's expense and detriment.

18     54.    By reason of the foregoing, Washington Mutual has become and should be

19 adjudged trustee for Plaintiff; and should be required to account for and deemed to be holding in

20 trust for Plaintiff all profits Washington Mutual has received from the wrongful conversion of

21 Plaintiff's specific funds.

22 **PRAYER FOR RELIEF**

23

24 WHEREFORE, Plaintiff prays for judgment and relief against defendants as follows:

25     1.    For compensatory damages according to proof at trial;

26     2.    An award of attorneys' fees, costs and other expenses of suit incurred herein

27 according to proof;

28 ///

*Huron law group* (vertical text, left margin)

1    3.    Such other and further relief as the Court deems just and proper under the

2    circumstances.

3    DATED: November ___, 2007          HURON LAW GROUP

4

5                                       By: _____

6                                            JEFFREY HURON
                                             Attorneys for NMSBPCSLDHB

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Huron law group

-8-
COMPLAINT

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Jeffrey Huron, SBN 136585<br>Huron law group<br>1875 Century Park East<br>Suite 1000<br>Los Angeles<br>TELEPHONE NO.: (310) 284-3400    FAX NO.: 310.772.0037<br>ATTORNEY FOR (Name): Plaintiff, NMSBPCSLDHB | **ENDORSED**<br>**FILED BY FAX**<br><br>2007    7 P 3:53<br><br>A. Ilas |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 NORTH FIRST STREET
MAILING ADDRESS:
CITY AND ZIP CODE: SAN JOSE 95113-1090
BRANCH NAME:

CASE NAME: NMSBPCSLDHB v. Washington Mutual Bank, et al.

**1 0 7 C V 0 9 8 4 5 3**

| CIVIL CASE COVER SHEET | | Complex Case Designation | | |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: | |
| | | | DEPT: | |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [X] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400-3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| Other PI/PD/WD (Personal Injury/Property | [ ] Other collections (09) | [ ] Construction defect (10) |
| Damage/Wrongful Death) Tort | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | Real Property | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| Non-PI/PD/WD (Other) Tort | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | Enforcement of Judgment |
| [ ] Civil rights (08) | Unlawful Detainer | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | Miscellaneous Civil Complaint |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint (not specified above) (42) |
| [ ] Professional negligence (25) | Judicial Review | Miscellaneous Civil Petition |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| Employment | [ ] Petition re: arbitration award (11) | [ ] Other petition (not specified above) (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
   issues that will be time-consuming to resolve   in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive

4. Number of causes of action (specify): FIVE (5)

5. This case [ ] is   [X] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: November 7, 2007

Jeffrey Huron, SBN 136585
(TYPE OR PRINT NAME)                                    ► _____
                                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Legal<br>Solutions<br>Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):*
Jeffrey Huron, Esq. SBN 136585
Huron law group
1875 Century Park East
Suite 1000
Los Angeles
TELEPHONE NO.: (310) 284-3400    FAX NO. *(Optional):*    310.772.0037
E-MAIL ADDRESS *(Optional):* jhuron@huronlaw.com
ATTORNEY FOR *(Name):* Plaintiff, NMSBPCSLDHB

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 NORTH FIRST STREET
MAILING ADDRESS: 191 NORTH FIRST STREET
CITY AND ZIP CODE: SAN JOSE 95113-1090
BRANCH NAME:

PLAINTIFF/PETITIONER: NMSBPCSLDHB

DEFENDANT/RESPONDENT: WASHINGTON MUTAL BANK, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>107CV098453 |
|---|---|

TO *(insert name of party being served):* WASHINGTON MUTUAL BANK

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: NOVEMBER 12, 2007

JEFFREY HURON, ESQ.
(TYPE OR PRINT NAME)    ▶ *(signature)*    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [X] A copy of the summons and of the complaint.
2. [X] Other: *(specify):* CIVIL CASE COVER SHEET

*(To be completed by recipient):*
Date this form is signed: 11/19/07

ANN S. McLEAN, ESQ.
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

*(signature)*
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Legal
Solutions
Plus

Code of Civil Procedure,
§§ 415.30, 417.10

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

Jeffrey Huron, Esq. SBN 136585
Huron Law Group
1875 Century Park East
Suite 1000
Los Angeles

TELEPHONE NO.: (310) 284-3400    FAX NO. (Optional): 310.772.0037

E-MAIL ADDRESS (Optional): jhuron@huronlaw.com

ATTORNEY FOR (Name): Plaintiff, NMSBPCSLDHB

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

STREET ADDRESS: 191 NORTH FIRST STREET

MAILING ADDRESS: 191 NORTH FIRST STREET

CITY AND ZIP CODE: SAN JOSE 95113-1090

BRANCH NAME:

PLAINTIFF/PETITIONER: NMSBPCSLDHB

DEFENDANT/RESPONDENT: WASHINGTON MUTAL BANK, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: 107CV098453 |
| --- | --- |

TO (insert name of party being served): ~~WASHINGTON MUTUAL BANK~~ Mark St. Pierre

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: NOVEMBER 12, 2007

JEFFREY HURON, ESQ.
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):

1. [X] A copy of the summons and of the complaint.
2. [X] Other: (specify): CIVIL CASE COVER SHEET

(To be completed by recipient):
Date this form is signed: 11/19/07

ANN S. McLEAN, ESQ.
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 (Rev. January 1, 2005)

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Legal
Solutions
Ⓟ Plus

Code of Civil Procedure,
§§ 415.30, 417.10

Exhibit E

1

2

3                          UNITED STATES DISTRICT COURT

4                         NORTHERN DISTRICT OF CALIFORNIA

5

6

7   WASHINGTON MUTUAL BANK,

8            Plaintiff,                          No. C 07-0280 PJH

9        v.                                      ORDER DENYING MOTION TO
                                                 DISMISS OR IN THE ALTERNATIVE,
10  NMSBPCSLDHB, et al.,                         TO STAY

11           Defendants.
                                    /
12

13          Defendant's motion to dismiss plaintiff's complaint or in the alternative, to stay the

14  action on <u>Brillhart</u> abstention grounds, came on for hearing before this court on December

15  19, 2007. Plaintiff, Washington Mutual Bank ("plaintiff"), appeared through its counsel,

16  Anna S. McLean and Peter S. Hecker. Defendant NMSBPCSLDHB ("defendant"),

17  appeared through its counsel, Jeffrey G. Huron. Having read the parties' papers and

18  carefully considered their arguments and the relevant legal authority, and good cause

19  appearing, the court hereby DENIES defendant's motion, for the reasons stated at the

20  hearing, and summarized as follows.

21          In view of plaintiff's removal of defendants' state court complaint on diversity

22  grounds, and its subsequent relation to the instant declaratory judgment action, no parallel

23  state court action is actually pending at this juncture. Defendants argue that,

24  notwithstanding an absence of a parallel proceeding currently pending, such a proceeding

25  *will* be pending in future. Specifically, defendants propose either dismissing the related

26  action and re-filing it in state court with a proper claim against a California defendant

27  (defendants concede that diversity jurisdiction over the related complaint is established on

28  fraudulent joinder grounds), or seeking remand of the related action in the event the court

1 | were to dismiss the instant action. Defendants have also proposed seeking leave of court

2 | to amend the related action in order to re-state a valid claim against the California

3 | defendant first, at which point defendants could *then* seek remand to state court.

4 | Regardless whether any of these actions would ultimately destroy diversity jurisdiction and

5 | require a pending state court proceeding, however, *all* of these options are speculative at

6 | this point. Moreover, the parties have been diligently prosecuting the instant action before

7 | the court, and dispositive motion briefing is complete. In essence, then, defendants are

8 | seeking dismissal or a stay of an action that is ready for consideration on the merits, based

9 | on no more than their promise that future parallel state court proceedings are forthcoming,

10 | which *might* properly avoid federal subject matter jurisdiction.

11 | Under this scenario, the court is unpersuaded that Brillhart abstention is either

12 | warranted or advisable. See, e.g., Gov't Employees Ins. Co. v. Dizol, et al., 133 F.3d 1220,

13 | 1225 (9th Cir. 1998)(Brillhart abstention depends on consideration of three factors: first, the

14 | "needless determination of state law issues;" second, whether a declaratory action has

15 | been filed as a means of forum shopping; third, the need to avoid duplicative litigation).

16 | First, it is unclear that the court will be avoiding the needless consideration of state law

17 | issues by abstaining from judgment in the instant action, since the pending related action

18 | currently states a proper basis for subject matter jurisdiction on diversity grounds, and

19 | therefore requires this court's consideration. Second, the court finds no basis for

20 | concluding that plaintiff has engaged in impermissible forum shopping by virtue of filing the

21 | instant declaratory judgment action. Indeed, the court finds *defendants'* state court action,

22 | filed more than 10 months after the present action was filed, more worthy of suspicion in

23 | this regard. Finally, the court will not avoid duplicative litigation at this juncture, by

24 | abstaining from judgment in the present case. For as already stated, the court's jurisdiction

25 | over both the present action and the related action is currently proper. And since the cases

26 | are related, the court is in a position to consolidate and/or streamline the litigation of both.

27 | In sum, and for all the above reasons, the court DENIES defendants' motion to

28 |

2

1  dismiss the instant declaratory judgment action or in the alternative, to stay it. Rather, the

2  court will proceed to hear and determine the pending dispositive motion. Accordingly, the

3  parties are hereby notified that plaintiff's motion for summary judgment will be heard on

4  January 30, 2008, during the court's regular law and motion calendar. The motion to

5  dismiss currently scheduled for that same date, is hereby VACATED.

6

7  IT IS SO ORDERED.

8  Dated: December 21, 2007

9                                                 PHYLLIS J. HAMILTON
                                                   United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

3

Exhibit F

1  Gregory N. Dolton. State Bar No. 159451
   Gregory N. Dolton, Attorney at Law
2  708 Blossom Hill Road, No. 208
   Los Gatos, California 95032
3  Telephone: 408.399.7540
   Fax: 408.399.7542
4
   Jeffrey Huron, State Bar No. 136585
5  jhuron@huronlaw.com
   Edward Kang, State Bar No. 237751
6  ekang@huronlaw.com
   HURON LAW GROUP
7  1875 Century Park East, Suite 1000
   Los Angeles, California 90067
8  Telephone: 310.284.3400
   Facsimile: 310.772.0037
9
   Attorneys for NMSBPCSLDHB, GRANUM
10 FAMILY TRUST, and ROBERT M. GRANUM,
   II
11

12

13                   UNITED STATES DISTRICT COURT FOR THE

14                     NORTHERN DISTRICT OF CALIFORNIA

15

16
   NMSBPCSLDHB, a California limited        CASE NO. 3:07-cv-00280-PJH
17 partnership,
                                            FIRST AMENDED COMPLAINT FOR:
18              Plaintiff,
                                            (1) NEGLIGENT
19        v.                                MISREPRESENTATION;
                                            (2) BREACH OF CONTRACT;
20 WASHINGTON MUTUAL BANK. a federal        (3) BREACH OF IMPLIED COVENANT;
   savings association: MARK ST. PIERRE, an (4) CONVERSION; AND
21 individual; and DOES 1 THROUGH 10.       (5) UNJUST ENRICHMENT
                                            (6) FRAUD AND DECEIT
22              Defendants.

23

24
   / / /
25
   / / /
26

27

28

---

FIRST AMENDED COMPLAINT

Plaintiff NMSBPCSLDHB ("Plaintiff") alleges as follows:

1.      Plaintiff is a California limited partnership organized and existing under the laws of the State of California, with its principal place of business in Santa Clara County, California. Robert M. Granum ("Granum") is the trustee of the Granum Family Trust – Plaintiff's general partner.

2.      Defendant Washington Mutual Bank is a federal savings association organized and existing under the laws of the United States of America doing business in Santa Clara County, California.

3.      Upon information and belief, defendant Mark St. Pierre ("St. Pierre") is a California resident living in Santa Clara County, California. St. Pierre is now, and at all times relevant to this action was, a Vice President of Washington Mutual. In performing each of the acts set forth herein, St. Pierre was acting within the scope and course of his agency with Washington Mutual.

4.      Plaintiff is ignorant of the true names of the defendants sued herein as Does 1 through 10, inclusive, and therefore sues such defendants by such fictitious names. Plaintiff will amend this complaint when it has the true names and capacities of the Doe defendants. Plaintiff is informed and believes and on that basis alleges that each of the fictitiously named defendants was the agent, employee or co-conspirator of one or more of the named defendants, aided and assisted the named defendants in doing the wrongful acts alleged herein, ratified said acts and/or perpetrated such wrongful acts themselves, and that Plaintiff's damages as alleged herein were proximately caused by such defendants.

5.      Plaintiff is informed and believes and on that basis alleges that at all times material hereto, each of the defendants were the agents or employees of the other defendants, acting within the course and scope of such agency or employment, and aided or assisted one or more of the other defendants in completing the wrongful acts alleged herein. Accordingly, each of the defendants is jointly and severally liable for the damages alleged herein.

6.      Washington Mutual is responsible for the actions, policies, and practices of its agents and employees. At all relevant times, Washington Mutual was and continues to be

1  responsible for assuring that the actions of its agents and employees comply with California law.

2      7.    Each of the defendants knew of, approved, endorsed or otherwise ratified the

3  wrongful acts of each of the other named defendants.

4

5  ## FACTS COMMON TO ALL ALLEGATIONS

6      8.    In or about June 2001, Washington Mutual loaned Plaintiff the sum of $9 million

7  evidenced by a written promissory note (the "Loan") and secured by a deed of trust on that certain

8  real property located at 400 Race Street, San Jose, California (the "Property").

9      9.    At the time of the Loan, Integrated Telecom Express, Inc. (the "Tenant") leased the

10  Property from Plaintiff pursuant to a long-term written lease.

11      10.    In or about October 2002, the Tenant filed for bankruptcy in an effort to discharge

12  its approximately $26 million of lease obligations to Plaintiff. At the time of the bankruptcy,

13  Tenant had $105 million in cash.

14      11.    Plaintiff successfully contested the Tenant's bankruptcy filing and ability to

15  discharge its lease obligations. See, NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc.

16  (In re Integrated Telecom Express, Inc. 384 F.3d 108 (3rd Cir. 2004).

17      12.    In or about August or September 2004, Granum and St. Pierre discussed Plaintiff

18  assigning its recovery against the Tenant to Washington Mutual as additional security for the

19  Loan. The exact amount of Plaintiff's recovery against the Tenant was unknown at that time but

20  ranged anywhere from $2.3 million to $25 million.

21      13.    During the foregoing discussions, St. Pierre, individually and on behalf of

22  Washington Mutual, orally assured, promised and represented to Granum that only a portion of the

23  funds recovered from Tenant would held in Washington Mutual's deposit accounts and the

24  remaining portion would be placed in other investments.

25      14.    In reliance upon St. Pierre's assurances, promises and representations. Plaintiff

26  agreed to sign that certain Additional Security Agreement (the "Agreement") in or about mid-

27  November 2004. A true and correct copy of the Agreement is attached hereto and incorporated

28  herein by this reference as Exhibit 1.

Huron law group

15.     Consistent with St. Pierre's promise, the Agreement states: "Upon receipt of all or any part of the Award. [Washington Mutual] will place <u>a portion of the funds received</u> into [Washington Mutual's] certificates of deposit, to be held in [Plaintiff's name]. in amounts and for terms as mutually agreed upon by [Washington Mutual] and [Plaintiff] [emphasis added].

16.     In or about August 2005, the Tenant wire transferred $25 million – the amount awarded to Plaintiff – to Washington Mutual.

17.     Because the amount received by Washington Mutual greatly exceeded the amount of the Loan for $9 million, in or about September 2005, St. Pierre referred Granum to Washington Mutual Financial Services, Inc. ("WMFS"), a related but separate entity, for the purpose of collaboratively agreeing upon investments into which a portion of the funds would be invested.

18.     Granum and WMFS discussed and thereafter agreed upon certain investments for a portion of the funds. Granum did everything he was asked to do in order for WMFS to make the agreed upon investments, including completing and signing various documents.

19.     WMFS then informed Granum that Washington Mutual would not transfer the funds needed to make the agreed upon investments.

20.     In spite of his representations, and despite referring Granum to WMFS in or about late September 2005, St. Pierre told Granum that the Agreement required that the entire $25 million remain in Washington Mutual deposit accounts and that none of it could be invested elsewhere.

21.     Since its receipt of the $25 million in August 2005, Washington Mutual has controlled the entire sum, even though the outstanding balance on the Loan is approximately $8.4 and Washington Mutual is also the beneficiary of a first deed of trust encumbering the Property.

22.     Washington Mutual directly benefits from forcing Plaintiff to keep all of the $25 million in its deposit accounts because, among other things, the money is considered part of its assets for regulatory and lending purposes.

23.     Washington Mutual has no interest or claim to any portion of the $25 million in excess of the Loan balance of approximately $8.4 million. and thus holds such monies as a trustee for Plaintiff's benefit.

-4-

Huron law group

## FIRST CAUSE OF ACTION

### Negligent Misrepresentation

### (Against St. Pierre and Does 1 through 10)

24.    Plaintiff incorporates the allegations of paragraph 1 through 23, above, as though set forth in full herein.

25.    St. Pierre made the assurances, promises and representations alleged in paragraph 13 above negligently with no reasonable basis for believing that Washington Mutual would agree to permit any of the $25 million to be invested anywhere other than its own deposit accounts.

26.    St. Pierre's assurances, promises, and representations were important because Plaintiff's potential recovery greatly exceeded its indebtedness to Washington Mutual.

27.    St. Pierre made such representations with the intent to induce Plaintiff to enter into the Agreement.

28.    At all times material hereto, Plaintiff believed St. Pierre's representations. Plaintiff justifiably relied on St. Pierre's representations as alleged herein by entering into the Agreement.

29.    If Plaintiff had known of the falsity of St. Pierre's representations, and lack of reasonable belief as to the truth of those representations, Plaintiff would not have entered into the Agreement.

30.    As a proximate result of defendants' fraud and deceit, Plaintiff has suffered damages in an amount to be proven at trial in excess of $5 million.

## SECOND CAUSE OF ACTION

### Breach of Contract

### (Against Washington Mutual and Does 1 through 10)

31.    Plaintiff incorporates the allegations of paragraphs 1 through 23, above, as though set forth in full herein.

32.    In or about November 2004, Plaintiff entered into the Agreement. By the terms of the Agreement, Washington Mutual agreed to place only "a portion" of Plaintiff's award in its deposit accounts.

FIRST AMENDED COMPLAINT

1    33.    Washington Mutual has breached the Agreement by exclusively controlling the

2    entire amount of Plaintiff's award and placing the "entire" amount of Plaintiff's award in its deposit

3    accounts.

4    34.    Plaintiff has done all things that have been required to by done by it under the

5    Agreement and is in no manner or respect in breach thereof.

6    35.    As a direct result of Washington Mutual's contractual duties, Plaintiff has suffered

7    damages in an amount to be proven at trial in excess of $5 million.

8

9                        **THIRD CAUSE OF ACTION**

10             **Breach of the Implied Covenant of Good Faith and Fair Dealing**

11                  **(Against Washington Mutual and Does 1 through 10)**

12    36.    Plaintiff incorporates the allegations of paragraphs 1 through 23, above, as though

13    set forth in full herein.

14    37.    In or about November 2004, Plaintiff entered into the Agreement.

15    38.    Implied in the Agreement is a covenant of good faith and fair dealing that

16    Washington Mutual will do nothing to deprive Plaintiff of the benefits of the Agreement.

17    39.    The material benefit that Plaintiff was to receive under the Agreement was the

18    ability to direct the investment of "a portion" of its award.

19    40.    Beginning in or about August 2005. and continuing to the present. Washington

20    Mutual breached the implied covenant of good faith and fair dealing by exclusively controlling

21    Plaintiff's entire award of $25 million.

22    41.    Plaintiff has performed all the terms and conditions required of it under the

23    Agreement, except as such performance has been excused or rendered impossible by the acts or

24    omissions of defendants as alleged herein.

25    42.    As a direct result of Washington Mutual's contractual duties, Plaintiff has suffered

26    damages in an amount to be proven at trial in excess of $5 million.

27    / / /

28    / / /

Huron law group

## FOURTH CAUSE OF ACTION

### Conversion

#### (Against Washington Mutual and Does 1 through 10)

43.    Plaintiff incorporates the allegations of paragraphs 1 through 23. above. as though set forth in full herein.

44.    Plaintiff is the rightful owner of the $25 million award, and entitled to control, at a minimum, that portion which exceeds the amount of the Loan balance of approximately $8.4 less the value of Washington Mutual's security interest in the Property.

45.    Washington Mutual has converted this specific property belonging to Plaintiff for its own use and benefit.

46.    Washington Mutual has committed the foregoing acts without Plaintiff's consent.

47.    As a proximate result of defendants' wrongful conduct. Plaintiff has suffered damages in an amount to be proven at trial in excess of $5 million.

48.    The foregoing conduct of defendants was intended to cause injury to Plaintiff, subject it to cruel and unjust hardship in conscious disregard of its rights, and/or was designed to deprive it of property, legal rights or otherwise cause it injury. Such conduct therefore constitutes malice, oppression or fraud under California Civil Code § 3294, thereby entitling Plaintiff to punitive damages in an amount sufficient to deter and punish defendants.


## FIFTH CAUSE OF ACTION

### Unjust Enrichment

#### (Against Washington Mutual and Does 1 through 10)

49.    Plaintiff incorporates the allegations of paragraphs 1 through 23. above, as though set forth in full herein.

50.    Plaintiff is the rightful owner of the $25 million award, and entitled to control. at a minimum, that portion which exceeds the amount of the Loan balance of approximately $8.4 less the value of Washington Mutual's security interest in the Property.

51.    By placing the entire $25 million award in its deposit accounts, Washington Mutual

1    has been unjustly enriched at Plaintiff's expense and detriment.

2         52.    By reason of the foregoing, Washington Mutual has become and should be

3    adjudged trustee for Plaintiff; and should be required to account for and deemed to be holding in

4    trust for Plaintiff all profits Washington Mutual has received from the wrongful conversion of

5    Plaintiff's specific funds.

6

7                              **SIXTH CAUSE OF ACTION**

8                                For Fraud and Deceit

9              (Against Washington Mutual, St. Pierre and Does 1 through 10)

10        53.    Plaintiff incorporates the allegations of paragraph 1 through 23, above, as though

11   set forth in full herein.

12        54.    Defendants promised Plaintiff that Washington Mutual would not control all of the

13   funds and would permit Granum the right to direct how a portion of the funds should be invested,

14   as alleged in Paragraph 13 above.

15        55.    Defendants' promises were important because Plaintiff's potential recovery greatly

16   exceeded its indebtedness to Washington Mutual. Therefore, if Plaintiff were going to agree to

17   pledge the total amount of its yet unknown recovery to Washington Mutual as additional security

18   for the Loan, Plaintiff wanted assurances that it would have the ability to direct how Washington

19   Mutual directed at least a portion of such funds.

20        56.    Despite referring Granum to WMFS, defendants never intended to honor the

21   promises as alleged in paragraph 13 above.

22        57.    Defendants have not performed or kept any of the promises as alleged in paragraph

23   13 above.

24        58.    At all times material hereto, Plaintiff believed defendants' promises. Plaintiff

25   justifiably relied on defendants' promises as alleged herein by entering into the Agreement.

26        59.    If Plaintiff had known that defendants never intended to perform any of their

27   promises as alleged herein. Plaintiff would not have entered into the Agreement.

28        60.    As a proximate result of defendants' fraud and deceit, Plaintiff has suffered

_Huron law group_

-8-

FIRST AMENDED COMPLAINT

1    damages in an amount to be proven at trial in excess of $5 million.

2        61.     The foregoing conduct of defendants was intended to cause injury to Plaintiff,

3    subject it to cruel and unjust hardship in conscious disregard of its rights, and/or was designed to

4    deprive it of property, legal rights or otherwise cause it injury. Such conduct therefore constitutes

5    malice, oppression or fraud under California Civil Code § 3294, thereby entitling Plaintiff to

6    punitive damages in an amount sufficient to deter and punish defendants.

### PRAYER FOR RELIEF

10       WHEREFORE, Plaintiff prays for judgment and relief against defendants as follows:

11       1.      For compensatory damages according to proof at trial;

12       2.      For punitive damages pursuant to California Civil Code § 3294;

13       3.      An award of attorneys' fees, costs and other expenses of suit incurred herein

14    according to proof;

15       4.      Such other and further relief as the Court deems just and proper under the

16    circumstances.

17    DATED: December 27, 2007        HURON LAW GROUP

19                     By:   */s/ Jeffrey Huron*

20                        JEFFREY HURON
                             Attorneys for NMSBPCSLDHB

*Huron law group*