Gregory N. Dolton, State Bar No. 159451
Gregory N. Dolton, Attorney at Law
708 Blossom Hill Road, No. 208
Los Gatos, California 95032
Telephone: 408.399.7540
Fax: 408.399.7542

Jeffrey Huron, State Bar No. 136585
jhuron@huronlaw.com
Edward Kang, State Bar No. 237751
ekang@huronlaw.com
HURON LAW GROUP
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: 310.284.3400
Facsimile: 310.772.0037

Attorneys for NMSBPCSLDHB, GRANUM FAMILY TRUST, and ROBERT M. GRANUM, II

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NMSBPCSLDHB, a California limited partnership,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WASHINGTON MUTUAL BANK, a federal savings association; MARK ST. PIERRE, an individual; and DOES 1 THROUGH 10,<br><br>　　　　Defendants. | CASE NO. 3:07-cv-06020-PJH<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) NEGLIGENT MISREPRESENTATION;**<br>**(2) BREACH OF CONTRACT;**<br>**(3) BREACH OF IMPLIED COVENANT:**<br>**(4) CONVERSION; AND**<br>**(5) UNJUST ENRICHMENT**<br>**(6) FRAUD AND DECEIT** |

/ / /

/ / /

FIRST AMENDED COMPLAINT

Plaintiff NMSBPCSLDHB ("Plaintiff") alleges as follows:

1. Plaintiff is a California limited partnership organized and existing under the laws of the State of California, with its principal place of business in Santa Clara County, California. Robert M. Granum ("Granum") is the trustee of the Granum Family Trust – Plaintiff's general partner.

2. Defendant Washington Mutual Bank is a federal savings association organized and existing under the laws of the United States of America doing business in Santa Clara County, California.

3. Upon information and belief, defendant Mark St. Pierre ("St. Pierre") is a California resident living in Santa Clara County, California. St. Pierre is now, and at all times relevant to this action was, a Vice President of Washington Mutual. In performing each of the acts set forth herein, St. Pierre was acting within the scope and course of his agency with Washington Mutual.

4. Plaintiff is ignorant of the true names of the defendants sued herein as Does 1 through 10, inclusive, and therefore sues such defendants by such fictitious names. Plaintiff will amend this complaint when it has the true names and capacities of the Doe defendants. Plaintiff is informed and believes and on that basis alleges that each of the fictitiously named defendants was the agent, employee or co-conspirator of one or more of the named defendants, aided and assisted the named defendants in doing the wrongful acts alleged herein, ratified said acts and/or perpetrated such wrongful acts themselves, and that Plaintiff's damages as alleged herein were proximately caused by such defendants.

5. Plaintiff is informed and believes and on that basis alleges that at all times material hereto, each of the defendants were the agents or employees of the other defendants, acting within the course and scope of such agency or employment, and aided or assisted one or more of the other defendants in completing the wrongful acts alleged herein. Accordingly, each of the defendants is jointly and severally liable for the damages alleged herein.

6. Washington Mutual is responsible for the actions, policies, and practices of its agents and employees. At all relevant times, Washington Mutual was and continues to be

responsible for assuring that the actions of its agents and employees comply with California law.

7. Each of the defendants knew of, approved, endorsed or otherwise ratified the wrongful acts of each of the other named defendants.

## FACTS COMMON TO ALL ALLEGATIONS

8. In or about June 2001, Washington Mutual loaned Plaintiff the sum of $9 million evidenced by a written promissory note (the "Loan") and secured by a deed of trust on that certain real property located at 400 Race Street, San Jose, California (the "Property").

9. At the time of the Loan, Integrated Telecom Express, Inc. (the "Tenant") leased the Property from Plaintiff pursuant to a long-term written lease.

10. In or about October 2002, the Tenant filed for bankruptcy in an effort to discharge its approximately $26 million of lease obligations to Plaintiff. At the time of the bankruptcy, Tenant had $105 million in cash.

11. Plaintiff successfully contested the Tenant's bankruptcy filing and ability to discharge its lease obligations. See, NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc. 384 F.3d 108 (3rd Cir. 2004).

12. In or about August or September 2004, Granum and St. Pierre discussed Plaintiff assigning its recovery against the Tenant to Washington Mutual as additional security for the Loan. The exact amount of Plaintiff's recovery against the Tenant was unknown at that time but ranged anywhere from $2.3 million to $25 million.

13. During the foregoing discussions, St. Pierre, individually and on behalf of Washington Mutual, orally assured, promised and represented to Granum that only a portion of the funds recovered from Tenant would held in Washington Mutual's deposit accounts and the remaining portion would be placed in other investments.

14. In reliance upon St. Pierre's assurances, promises and representations, Plaintiff agreed to sign that certain Additional Security Agreement (the "Agreement") in or about mid-November 2004. A true and correct copy of the Agreement is attached hereto and incorporated herein by this reference as Exhibit 1.

15. Consistent with St. Pierre's promise, the Agreement states: "Upon receipt of all or any part of the Award, [Washington Mutual] will place **a portion of the funds received** into [Washington Mutual's] certificates of deposit, to be held in [Plaintiff's name], in amounts and for terms as mutually agreed upon by [Washington Mutual] and [Plaintiff] [emphasis added].

16. In or about August 2005, the Tenant wire transferred $25 million – the amount awarded to Plaintiff – to Washington Mutual.

17. Because the amount received by Washington Mutual greatly exceeded the amount of the Loan for $9 million, in or about September 2005, St. Pierre referred Granum to Washington Mutual Financial Services, Inc. ("WMFS"), a related but separate entity, for the purpose of collaboratively agreeing upon investments into which a portion of the funds would be invested.

18. Granum and WMFS discussed and thereafter agreed upon certain investments for a portion of the funds. Granum did everything he was asked to do in order for WMFS to make the agreed upon investments, including completing and signing various documents.

19. WMFS then informed Granum that Washington Mutual would not transfer the funds needed to make the agreed upon investments.

20. In spite of his representations, and despite referring Granum to WMFS in or about late September 2005, St. Pierre told Granum that the Agreement required that the entire $25 million remain in Washington Mutual deposit accounts and that none of it could be invested elsewhere.

21. Since its receipt of the $25 million in August 2005, Washington Mutual has controlled the entire sum, even though the outstanding balance on the Loan is approximately $8.4 and Washington Mutual is also the beneficiary of a first deed of trust encumbering the Property.

22. Washington Mutual directly benefits from forcing Plaintiff to keep all of the $25 million in its deposit accounts because, among other things, the money is considered part of its assets for regulatory and lending purposes.

23. Washington Mutual has no interest or claim to any portion of the $25 million in excess of the Loan balance of approximately $8.4 million, and thus holds such monies as a trustee for Plaintiff's benefit.

**FIRST CAUSE OF ACTION**

**Negligent Misrepresentation**

**(Against St. Pierre and Does 1 through 10)**

24. Plaintiff incorporates the allegations of paragraph 1 through 23, above, as though set forth in full herein.

25. St. Pierre made the assurances, promises and representations alleged in paragraph 13 above negligently with no reasonable basis for believing that Washington Mutual would agree to permit any of the $25 million to be invested anywhere other than its own deposit accounts.

26. St. Pierre's assurances, promises, and representations were important because Plaintiff's potential recovery greatly exceeded its indebtedness to Washington Mutual.

27. St. Pierre made such representations with the intent to induce Plaintiff to enter into the Agreement.

28. At all times material hereto, Plaintiff believed St. Pierre's representations. Plaintiff justifiably relied on St. Pierre's representations as alleged herein by entering into the Agreement.

29. If Plaintiff had known of the falsity of St. Pierre's representations, and lack of reasonable belief as to the truth of those representations, Plaintiff would not have entered into the Agreement.

30. As a proximate result of defendants' fraud and deceit, Plaintiff has suffered damages in an amount to be proven at trial in excess of $5 million.

**SECOND CAUSE OF ACTION**

**Breach of Contract**

**(Against Washington Mutual and Does 1 through 10)**

31. Plaintiff incorporates the allegations of paragraphs 1 through 23, above, as though set forth in full herein.

32. In or about November 2004, Plaintiff entered into the Agreement. By the terms of the Agreement, Washington Mutual agreed to place only "a portion" of Plaintiff's award in its deposit accounts.

33. Washington Mutual has breached the Agreement by exclusively controlling the entire amount of Plaintiff's award and placing the "entire" amount of Plaintiff's award in its deposit accounts.

34. Plaintiff has done all things that have been required to by done by it under the Agreement and is in no manner or respect in breach thereof.

35. As a direct result of Washington Mutual's contractual duties, Plaintiff has suffered damages in an amount to be proven at trial in excess of $5 million.

## THIRD CAUSE OF ACTION

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

**(Against Washington Mutual and Does 1 through 10)**

36. Plaintiff incorporates the allegations of paragraphs 1 through 23, above, as though set forth in full herein.

37. In or about November 2004, Plaintiff entered into the Agreement.

38. Implied in the Agreement is a covenant of good faith and fair dealing that Washington Mutual will do nothing to deprive Plaintiff of the benefits of the Agreement.

39. The material benefit that Plaintiff was to receive under the Agreement was the ability to direct the investment of "a portion" of its award.

40. Beginning in or about August 2005, and continuing to the present, Washington Mutual breached the implied covenant of good faith and fair dealing by exclusively controlling Plaintiff's entire award of $25 million.

41. Plaintiff has performed all the terms and conditions required of it under the Agreement, except as such performance has been excused or rendered impossible by the acts or omissions of defendants as alleged herein.

42. As a direct result of Washington Mutual's contractual duties, Plaintiff has suffered damages in an amount to be proven at trial in excess of $5 million.

/ / /

/ / /

## FOURTH CAUSE OF ACTION

### Conversion

### (Against Washington Mutual and Does 1 through 10)

43. Plaintiff incorporates the allegations of paragraphs 1 through 23, above, as though set forth in full herein.

44. Plaintiff is the rightful owner of the $25 million award, and entitled to control, at a minimum, that portion which exceeds the amount of the Loan balance of approximately $8.4 less the value of Washington Mutual's security interest in the Property.

45. Washington Mutual has converted this specific property belonging to Plaintiff for its own use and benefit.

46. Washington Mutual has committed the foregoing acts without Plaintiff's consent.

47. As a proximate result of defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be proven at trial in excess of $5 million.

48. The foregoing conduct of defendants was intended to cause injury to Plaintiff, subject it to cruel and unjust hardship in conscious disregard of its rights, and/or was designed to deprive it of property, legal rights or otherwise cause it injury. Such conduct therefore constitutes malice, oppression or fraud under California Civil Code § 3294, thereby entitling Plaintiff to punitive damages in an amount sufficient to deter and punish defendants.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

### (Against Washington Mutual and Does 1 through 10)

49. Plaintiff incorporates the allegations of paragraphs 1 through 23, above, as though set forth in full herein.

50. Plaintiff is the rightful owner of the $25 million award, and entitled to control, at a minimum, that portion which exceeds the amount of the Loan balance of approximately $8.4 less the value of Washington Mutual's security interest in the Property.

51. By placing the entire $25 million award in its deposit accounts, Washington Mutual

has been unjustly enriched at Plaintiff's expense and detriment.

52. By reason of the foregoing, Washington Mutual has become and should be adjudged trustee for Plaintiff; and should be required to account for and deemed to be holding in trust for Plaintiff all profits Washington Mutual has received from the wrongful conversion of Plaintiff's specific funds.

### SIXTH CAUSE OF ACTION

**For Fraud and Deceit**

**(Against Washington Mutual, St. Pierre and Does 1 through 10)**

53. Plaintiff incorporates the allegations of paragraph 1 through 23, above, as though set forth in full herein.

54. Defendants promised Plaintiff that Washington Mutual would not control all of the funds and would permit Granum the right to direct how a portion of the funds should be invested, as alleged in Paragraph 13 above.

55. Defendants' promises were important because Plaintiff's potential recovery greatly exceeded its indebtedness to Washington Mutual.  Therefore, if Plaintiff were going to agree to pledge the total amount of its yet unknown recovery to Washington Mutual as additional security for the Loan, Plaintiff wanted assurances that it would have the ability to direct how Washington Mutual directed at least a portion of such funds.

56. Despite referring Granum to WMFS, defendants never intended to honor the promises as alleged in paragraph 13 above.

57. Defendants have not performed or kept any of the promises as alleged in paragraph 13 above.

58. At all times material hereto, Plaintiff believed defendants' promises.  Plaintiff justifiably relied on defendants' promises as alleged herein by entering into the Agreement.

59. If Plaintiff had known that defendants never intended to perform any of their promises as alleged herein, Plaintiff would not have entered into the Agreement.

60. As a proximate result of defendants' fraud and deceit, Plaintiff has suffered

-8-
FIRST AMENDED COMPLAINT

1 damages in an amount to be proven at trial in excess of $5 million.

2       61.    The foregoing conduct of defendants was intended to cause injury to Plaintiff, subject it to cruel and unjust hardship in conscious disregard of its rights, and/or was designed to deprive it of property, legal rights or otherwise cause it injury. Such conduct therefore constitutes malice, oppression or fraud under California Civil Code § 3294, thereby entitling Plaintiff to punitive damages in an amount sufficient to deter and punish defendants.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against defendants as follows:

1. For compensatory damages according to proof at trial;
2. For punitive damages pursuant to California Civil Code § 3294;
3. An award of attorneys' fees, costs and other expenses of suit incurred herein according to proof;
4. Such other and further relief as the Court deems just and proper under the circumstances.

DATED: January 3, 2008        HURON LAW GROUP

By: /s/ *Jeffrey Huron*
    JEFFREY HURON
    Attorneys for NMSBPCSLDHB

Huron law group

-9-
FIRST AMENDED COMPLAINT