# *EXHIBIT A*

071219WashingtonMutualPJHF.txt

Pages 1 - 26

United States District Court

Northern District of California

Before The Honorable Phyllis J. Hamilton

Washington Mutual Bank,

        Plaintiff,

  vs.

NMSBPCSLDHB,
et al.,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)

No. C07- 280 PJH

San Francisco, California
Wednesday, December 19, 2007

Reporter's Transcript Of Proceedings

Appearances:

| | |
|---|---|
| For Plaintiff: | Heller, Ehrman, White & McAuliffe<br>275 Middlefield Road<br>Menlo Park, California  94025-3506<br>By:  Anna McLean, Esquire<br>Peter Hecker, Esquire |
| For Defendant: | Huron Law Group<br>1875 Century Park East, Suite 1000<br>Los Angeles, CA  90067<br>By:  Jeffrey Huron, Esquire |
| Reported By: | Sahar McVickar, RPR, CSR No. 12963<br>Official Reporter, U.S. District Court<br>For the Northern District of California |

(Computerized Transcription By Eclipse)

2

1  Wednesday, December 19, 2007      9:00 a.m.

2               P R O C E E D I N G S

3        THE CLERK:  Calling civil case 07-280, Washington

071219WashingtonMutualPJHF.txt

4    Mutual Bank, NMSBPCSLDHB, et al.

5                Counsel, please state your appearances for the

6    record.

7                MS. MCLEAN:  Anna McLean and Peter Hecker for the

8    plaintiff, Washington Mutual Bank.

9                MR. HECKER:  Good morning.  I'm Peter Hecker.  I'm

10   with her.

11               THE COURT:  Oh, okay.

12               MR. HURON:  Good morning, Your Honor.

13               Jeff Huron for the defendants and moving parties.

14               THE COURT:  All right.

15               And can we just refer to the defendants as defendant

16   today instead of -- is this an acronym?

17               MR. HURON:  I believe it is, but I don't know what

18   it stands for.

19               THE COURT:  Okay.

20               MR. HURON:  I've been asked that already this

21   morning.

22               THE COURT:  All right.

23               This matter is on for a hearing on the defendant's

24   motion to dismiss or alternative motion to stay the action.

25   The action is a declaratory judgment action filed by the        3

1    insurer.  This is over contract claims in this action, as well

2    as in the State action that was recently removed.  They are

3    essentially the same.  They arise out of this contractual

4    agreement, the additional security agreement entered into by

5    the parties.

6                Just as an aside before we get into it, I don't

7    quite understand; the agreement was that all or part of the

8    award from the ITEX litigation would be assigned to the bank.

071219WashingtonMutualPJHF.txt

9    The ITEX litigation resulted in $25 million being awarded to

10   the defendant?  Why did they have to assign more than the loan

11   they took out to the bank?  They only borrowed $9 million, why

12   did they have to give you the rest?  I know that doesn't have

13   anything to do with these issues, but I'm just curious.

14          MS. MCLEAN:  That was the deal they wanted, Your

15   Honor.  They struck that deal a year before they got the award,

16   and that was the deal they wanted, that the entire award would

17   be assigned to the bank.

18          THE COURT:  For what period of time?

19          MS. MCLEAN:  Until the underlying lease would have

20   expired, so it's until 2011, I believe.

21          THE COURT:  So what's the purpose of the excess

22   amount being with the bank?

23          MS. MCLEAN:  I don't know, Your Honor.  I think that

24   question would be better directed to the --

25          THE COURT:  What does the contract say?                    4


1           MS. MCLEAN:  The additional security agreement says

2    that all of the award that was to be determined in the

3    litigation between defendants and I-Tex, which was the tenant,

4    was to be assigned to the bank as additional security for the

5    loan.  So at that point the award had not been determined.  A

6    year later the bank got the money.

7           THE COURT:  Is there some kind of a prepayment

8    penalty?

9           MS. MCLEAN:  I believe there is, Your Honor.

10          MR. HURON:  I think that is correct.

11          THE COURT:  At that time you obviously didn't know

12   you were getting the $25 million.

13          MR. HURON:  Well, that's correct, because the

Page 3

071219WashingtonMutualPJHF.txt

14  defendants had lost in the bankruptcy court, and then they lost

15  at the District Court and then they won at the Court of Appeals

16  level.  So I think they were pleasantly surprised with the

17  outcome.

18          It's unfortunate, but, yeah, there is a lot of

19  excess collateral with Washington Mutual.

20          THE COURT:  Does the bank get to keep that?

21          MR. HURON:  No.

22          THE COURT:  What is the determinative event for the

23  excess to revert back to your client?

24          MR. HURON:  Well, it would be either the end of the

25  loan, the maturity of the loan, or a prepayment with a

5

1  prepayment penalty or the expiration of the original lease,

2  whichever would occur first.

3          THE COURT:  Um-hmm.  Sounds like a bad deal for your

4  client.

5          MR. HURON:  Extremely bad deal.

6          THE COURT:  All right, with that said let's turn to

7  the merits of the motion.  The defense has moved to stay or

8  dismiss.  You are claiming a basis for stay under Brillhart, a

9  common abstention doctrine that's applied in Federal Court.

10          As I understand it, the State, parallel State case

11  is no longer a parallel State case, it's now been removed, so

12  we have two Federal cases.  That is not determinative.  The

13  Ninth Circuit has held that while it's a factor to be

14  considered, it's not determinative as to whether or not there

15  is actually a State case going on.

16          The defense wishes to dismiss the State case,

17  correct, the State case that has now been removed, and reallege

18  it, not as a negligent misrepresentation but as a fraud claim.

Page 4

071219WashingtonMutualPJHF.txt

19      MR. HURON:  That's correct, either that or ask this

20  Court for leave to amend to state a fraud claim.  Either or.

21      THE COURT:  All right, meaning you would like to

22  move to amend here if the case --

23      MR. HURON:  What I'm saying is that the defendants

24  could do one of two things with respect to the removal of the

25  State case that we filed.  One thing is we filed a motion for

                                                                6

1  remand, and if that's granted, then in the State Court we could

2  ask the State Court for leave to amend to include a fraud claim

3  against the individual defendant who would defeat diversity.

4      Alternatively, if we brought a motion to remand and

5  this Court denied that motion to remand, Washington Mutual has

6  already filed a motion to dismiss; in connection with that

7  motion to dismiss we could ask this Court for leave to amend to

8  include an additional claim for fraud.

9      THE COURT:  Does the motion to amend that is on for

10  January 30, on for hearing, that is the plaintiff's motion to

11  dismiss your claim for negligent misrepresentation?

12      MR. HURON:  It's two things.  It's to dismiss the

13  State claim for negligent misrepresentation on the grounds that

14  it's barred by the Statute of Limitations, but Washington

15  Mutual is also attempting to dismiss all of the claims on the

16  grounds that the State claims were compulsory counter-claims in

17  this Court and therefore were somehow -- the defendants have

18  waived those claims by not bringing them against this

19  declaratory relief action which my understanding is not the law

20  in the Ninth Circuit.  There are no obligations to bring those

21  claims.

22      THE COURT:  I haven't actually looked at the motion,

23  I just noticed that it was on.  Actually, I have a flurry of

Page 5

071219WashingtonMutualPJHF.txt

24   motions from you all.  I think we have a summary judgment
25   motion that I vacated pending the outcome of this hearing.          7

1          And I'm interested in consolidating all of this, I
2    don't need to have three pending motions on this case another
3    case pending at the same time.  So we can talk about that after
4    I resolve this motion.
5          For purposes of the abstention or your asking the
6    Court to stay or dismiss, your intent, then, is to -- well,
7    first of all, does the fact that you are interested in having
8    this matter remanded to State Court so that you can dismiss it
9    and reallege or to allege a fraud claim, does that suggest some
10   concession on the defense part that the negligent
11   misrepresentation claim is not a viable one?
12          MR. HURON:  No, I think it's -- the allegations that
13   support the negligent misrepresentation claim are valid.  And
14   we originally drafted the complainant to contain a fraud cause
15   of action but the client did not want to bring a fraud claim
16   because he thought it was harsh, and he didn't want to see
17   punitive damages, so we brought it as a negligent
18   misrepresentation claim.  And Washington Mutual raised a
19   Statute of Limitations defense, which may be a valid defense;
20   however, a fraud claim has an additional year so we could bring
21   it as a fraud claim.
22          To answer the Court's question, there is no
23   concession because I think in the Ninth Circuit there doesn't
24   even need to be a parallel State action for the Court to
25   abstain or -- from a declaratory relief action, that is number          8

1    one.
2          Number two --

071219WashingtonMutualPJHF.txt

3        THE COURT:  There would be no basis for me to

4    abstain unless there were some other action going on.

5        MR. HURON:  Well, there would be a basis for the

6    Court to abstain, and that is really the main Brillhart factor,

7    which is that in declaratory relief actions the courts are

8    supposed to avoid unnecessarily litigating State Court claims.

9    This action --

10        THE COURT:  But I would have to be assured that

11    there was a State Court claim being litigated somewhere before

12    making that decision.

13        MR. HURON:  Well, certainly.  What I would expect

14    would happen procedurally is if the Court grants this motion it

15    could stay the action until the other State Court action that

16    is pending is remanded or a new State Court action is filed.

17    Or, it could simply dismiss this action and order the State

18    Court case remanded, in which case we would be litigating in

19    State Court.

20        THE COURT:  Dismiss this and then remand it; I'm not

21    so sure I can do that.

22        MR. HURON:  This motion is in front of the Court

23    now, the Court certainly can grant this motion, dismiss this

24    declaratory relief action.  On the hearing on the motion to

25    remand, the Court can remand the case back to State Court.

                                                                9


1        THE COURT:  And there is a motion to remand on --

2    that's been filed already?

3        MR. HURON:  Not yet.  We are waiting for the outcome

4    of this motion first because we didn't want to incur needless

5    attorney fees.

6        THE COURT:  Okay.

7        Well, I'll just tell you that it's not likely I'm

                              Page 7

071219WashingtonMutualPJHF.txt

8   going to dismiss this action until whatever State action that

9   is supposed to take the place of litigating the State claims

10  is -- is pending.  But I might, I might grant a stay of the

11  action until all of that is resolved.  But it is not likely

12  that I would dismiss it.

13       MR. HURON:  I mean, I understand the Court's

14  perspective on that, but again, in the Huth case that we cited,

15  there was a very similar procedural posture in the case where

16  the Court had, essentially, a State case that had been removed

17  to Federal Court and a Federal case that had been filed and

18  they had been consolidated.

19       So the plaintiff there, as the plaintiff here,

20  argued that, ah-hah, there is no parallel State case,

21  therefore, the Court cannot abstain because the case -- there

22  is no State case.  The Court of Appeals in the Ninth Circuit in

23  that case, again, that is Huth, said, no, that is not the end

24  all be all of the analysis, that the Court still has to look at

25  what issues are involved in this dispute.                      10

1        Here there are all State case issues involved.  And

2   therefore, the cases, and the Ninth Circuit is pretty clear, is

3   when there are only State Court issues involved and it's here

4   on a declaratory relief action, the Court really does need to

5   look at the Brillhart factors.

6        In the case of Huth and some other cases where you

7   look at those three factors, there have been cases where they

8   have said that the forum shopping issue didn't favor either

9   party.  There are cases where it also came to the conclusion

10  that the duplicate of litigation didn't favor either party;

11  but, nevertheless, the Court held that because it involved the

12  cases, involved State law issues, the Court should abstain

071219WashingtonMutualPJHF.txt

13    regardless of those other two factors being a draw.

14            So here, indisputably, we have all State Court

15    issues.  The declaratory relief action is all State law.  The

16    State case that's been filed and now removed to Federal Court

17    are State issues.  So what we are left with is a State case

18    that is in Federal Court because the plaintiff filed a

19    declaratory relief action under the Federal Declaratory Relief

20    Act.

21            The law is that unless there are exceptional

22    circumstances to make it come outside of the general rule that

23    declaratory relief actions that are based in State law should

24    be litigated in State Court rather than Federal Court, the

25    Court should abstain.  Here, Washington Mutual hadn't, in our                11

1     opinion, cited any exceptional circumstances that warrant this

2     Court not declining to exercise jurisdiction.

3             The only thing they really cited were two things

4     that I would like to talk about briefly.  One was that they

5     cited this case, Beacon Hill, for the proposition that there

6     had to be novel or complex State law issues.  I don't believe

7     that is a fair reading of the case.  The Ninth Circuit cases do

8     not refer to a novel or complex issue being a requirement for

9     abstention.  The Beacon One case actually held that the reason

10    they were not going to abstain in that case was because the

11    declaratory relief action was not contingent on the State

12    claims and that the issue in the declaratory relief action,

13    which had to do with insurance coverage, was not something that

14    was part of the State action.  And therefore, in that

15    situation, the Court in Beacon 1 felt that it was proper for

16    the Court to hear.

17            That issue is not here.  The State Court can

071219WashingtonMutualPJHF.txt

18  certainly hear this declaratory relief action and can certainly

19  decide the other issues involving the breach of contract and

20  the fraud and negligent misrepresentation.

21      The other argument they make is that there has been

22  a fair amount of litigation in the case; however, there have

23  been several cases, one in particular, Golden Eagle, that said

24  even if the Court has already ruled on a motion for summary

25  judgment, that would still not require the Court to decline

                                                                12

1   jurisdiction because that is comparatively minimal.

2       The standard is whether there has been a judgment --

3   I'm sorry, whether there has been a trial or there has been --

4   the argument -- closing arguments have been made to the jury.

5   So there is already case decision that says that this Court,

6   which hasn't ruled on any motions for summary judgment, can

7   abstain regardless of the fact that there has been some

8   litigation that has occurred.

9       Therefore, I don't really think Washington Mutual

10  has carried its burden to show that there are exceptional

11  circumstances to warrant this Court continuing to exercise

12  jurisdiction in this case.

13      THE COURT:  Response?

14      MS. MCLEAN:  Thank you, Your Honor.

15      I think it's important that we step back and look at

16  the procedural context of this motion, which counsel has not

17  addressed.

18      Washington Mutual filed the declaratory relief

19  action almost a year ago.  The defendants answered in April.

20  They filed two answers and asserted no counterclaims.  They

21  appeared before Your Honor in May at the initial case

22  management conference and agreed to an accelerated pre-trial

Page 10

071219WashingtonMutualPJHF.txt

23  schedule for the purpose of teeing up Washington Mutual's

24  motion for summary judgment on the contract interpretation

25  issues.                                                                    13

1        That pre-trial schedule, which the Court set after

2  the initial case management conference, set a discovery cutoff

3  of the end of September, a motion -- dispositive motion filing

4  date of the end of October and a dispositive motion hearing

5  date of the end of November, November 28th.

6        The parties went through discovery, completed their

7  discovery by the discovery cutoff.  Washington Mutual filed its

8  motion on the agreed on date and noticed it for the agreed on

9  date.

10        Then what happened?  The defendants, on the day

11  their opposition was due, filed this State Court case and the

12  next day filed this motion.  It seems plain, Your Honor, that

13  this is nothing more than an effort to avoid a ruling on

14  Washington Mutual's summary judgment motion, which they agreed

15  to schedule and as to which discovery and briefing are now

16  complete.

17        Counsel never responds to Washington Mutual's

18  arguments in its papers as to the timing of this motion, their

19  failure to bring the State Court claims as counter-claims in

20  this case, which we believe was required.  And that is, as Your

21  Honor says, before it on the motion to dismiss, their failure

22  to meet the Court's deadline for dispositive motions.

23        This is a dispositive motion, the deadline for

24  filing it was in October.  And their decision to file an

25  entirely duplicative lawsuit, and they agree that it arises out    14

071219WashingtonMutualPJHF.txt

1  of the same contract and the same transaction, they agreed to

2  stipulate that it be related to this case; they have no

3  explanation for any of that conduct.

4        Indeed, in Counsel's reply brief he attaches a

5  declaration saying that they intend to file a motion for

6  remand, and if the Court denies remand they are going to

7  attempt to circumvent that ruling as well and file the case

8  again in State Court.  So we have to start all over again.

9        Washington Mutual submits that its motion for

10  summary judgment ought to be recalendared promptly since the

11  Court took it off calendar and agreed to reschedule it at the

12  conclusion of this hearing.

13        Now, as to the Brillhart factors, we believe that

14  under the applicable law the Court should decline abstention

15  here.  Defendants cite the wrong standard.  The exceptional

16  circumstance standard was overruled.  In fact, they didn't cite

17  it in their briefing, and now they bring it up in oral

18  argument.

19        It is discretionary.  There is no requirement of

20  exceptional circumstances.  And the Court can look at the Ninth

21  Circuit cases that are cited in our papers, the more recent

22  ones in which the Courts reemphasize that it is entirely

23  discretionary with the District Court, and there is no

24  requirement of a finding of exceptional circumstances.

25        I think it's important to focus on also, in terms of

                                                            15

1  the law, the issue of the pendency of the State Court case and

2  having been removed to this Court.  There are two different

3  lines of authority, and we need to focus on those two lines of

4  authority.  The Huth case and the Golden Eagle case that

5  counsel relies on involved situations where there was a

071219WashingtonMutualPJHF.txt

6   declaratory judgment action pending in State Court that was

7   then removed to Federal Court.  The courts there said it's not

8   required that there be a pending case in State Court in order

9   to abstain when the removed case is a declaratory judgment

10  action because, of course, that falls under the Brillhart

11  analysis.

12          But where the State Court action is -- involves

13  claims for monetary relief, as is the case here, there is an

14  entirely different line of authority that applies.  The R & D

15  Latex case that we cite in our papers analyzes those two

16  competing lines of authority and comes with the conclusion that

17  where there is mandatory jurisdiction over monetary claims for

18  relief, as there is here because of diversity jurisdiction,

19  then the Court should not abstain because if the Court

20  abstained, there would, of course, then be duplicative

21  litigation if the declaratory relief claim were remanded and

22  the monetary relief claims stayed in this court.

23          The Dizole case, the R & D Latex case, the Snodgrass

24  case and the Chamberlain case all make that clear; the Court

25  should not abstain when there is mandatory jurisdiction over

                                                              16


1   additional claims.

2           As to the other factors, Counsel never mentions the

3   fact that Washington Mutual's lawsuit was filed ten months

4   earlier, that the case has been well developed.  Discovery is

5   complete.  There is a pending and fully briefed summary

6   judgment motion.  This is no possible reason to start all over.

7           THE COURT:  Well, it's not fully briefed.  You have

8   brought your motion, but no opposition or reply brief has been

9   filed.

10          MR. HALL:  Oh, yes, it's fully briefed.

071219WashingtonMutualPJHF.txt

11          THE COURT:  You filed the opposition to that?

12          MR. HURON:  To the summary judgment motion?  Yes,

13 Your Honor.

14          THE COURT:  Okay.

15          Go ahead.

16          MS. MCLEAN:  So it certainly would be a tremendous

17 waste of resources to remand the case at this point.

18          The only case I was able to find, Maryland Casualty,

19 in which there was a State Court action filed many months after

20 the Federal action, the Ninth Circuit held that the -- the

21 State action was plainly filed in reaction to the Federal

22 action and not the other way around.  So the Court held that

23 retention of jurisdiction was proper.  And that is absolutely

24 the case here.

25          The defendants argue in their papers that we are
♀                                                               17


1  forum shopping; I don't think they really made that argument

2  here, so I won't respond to it.  Obviously, the decision to

3  invoke the Federal Court's diversity jurisdiction cannot be

4  deemed to be forum shopping, it's an Article 3 right.

5          Finally, as to the State law issues factor, the

6  defendants argue that it doesn't have to involve novel or

7  complex State Court issues in order for the Court to abstain.

8  There are some cases that don't address that issue, that is

9  true, but they don't dispute that it's an important factor in

10 the cases that do address it, including the Brillhart case

11 itself, which weighed that factor most heavily because the

12 purposes is, of course, that the Federal Court should not

13 determine issues of State law in the first instance when that

14 is avoidable.  Obviously, that is not the case here, and

15 defendants don't argue that it is.  This involves

                            Page 14

071219WashingtonMutualPJHF.txt

16 straightforward contract interpretation issues, all of which

17 have been fully briefed before Your Honor.  There is no complex

18 or technical issue that has been identified.

19          As to -- Counsel mentioned that they would like to

20 seek remand and then refile these claims in State Court; I

21 would like to -- I mean, this obviously isn't before Your

22 Honor, but, of course, Washington Mutual would object to that.

23 We believe that these claims were all compulsory counter-claims

24 in this case, and that issue is now before Your Honor on a

25 motion to dismiss.  We don't believe that remand would be

                                                              18

1 proper, especially since the Court has mandatory diversity

2 jurisdiction over the claims that are in the complaint that was

3 removed.  And removal is, of course, determined as of the state

4 of the pleadings when they are removed, so speculation about

5 additional or future claims they might try to bring is really

6 irrelevant to the remand issue.

7          I have nothing further.

8          THE COURT:  Has the time for filing the -- when was

9 the case removed?

10          MR. HURON:  The time hadn't expired.  I believe we

11 have until the middle part of January.

12          THE COURT:  And what's the basis of the request for

13 remand?

14          MR. HURON:  Well, the basis would be, Your Honor,

15 that, again, the Court should abstain.  It's all State law

16 issues.  And there would be a fraud claim, and the fraud claim

17 would include a party that is a resident of California, so

18 there would not be diversity.

19          THE COURT:  Wait, I'm not sure.

20          There would be a fraud claim?  There is not

Page 15

071219WashingtonMutualPJHF.txt

21  currently a fraud claim, is there?

22      MR. HURON:  There a fraud type of claim.  There is a

23  negligent misrepresentation --

24      THE COURT:  For which the Statute of Limitations has

25  probably run.                                                    19

1       MR. HURON:  Right, but not for the fraud claim.  The

2   Statute of Limitations for negligent misrepresentation is two

3   years, and the Statute of Limitations fraud is three years.

4   The facts that we have alleged will support either a negligent

5   misrepresentation claim or a fraud claim.  And my understanding

6   is that the law should be that --

7       THE COURT:  You haven't -- you have not yet

8   dismissed the negligent misrepresentation claim.

9       MR. HURON:  That's correct.

10      THE COURT:  Okay, so why is that?  Why is that that

11  you haven't dismissed it yet?

12      MR. HURON:  Well, there are a number of reasons, but

13  the most obvious reasons for us is that if the case is

14  remanded, we want to amend.  So if we dismiss that claim we

15  dismiss that defendant.  And we want to be able to ask the

16  Court for leave to amend, whether it's this Court or the State

17  Court, to state an additional claim against the defendant.

18      That additional claim would be fraud; therefore,

19  since we feel that leave to amend should be granted under these

20  circumstances because the same facts support two different

21  theories and one would be barred and one wouldn't be barred, it

22  does make sense to dismiss that claim now because we want to

23  request that it be amended.

24      All we have to do, Your Honor, literally, is change

25  the title that says first cause of action for negligent

20

071219WashingtonMutualPJHF.txt

1  misrepresentation to first cause of action for fraudulent

2  misrepresentation, that's it.

3          MS. MCLEAN:  Of course, we would disagree with that,

4  Your Honor.  There are no allegations of intentional conduct.

5          In any event, the removability of the complaint is,

6  of course, determined as of the existing complaint, not some

7  hypothetical future complaint.

8          THE COURT:  There are so many contingencies.  I'm a

9  little confused as to what your strategy appears to be.

10         MR. HURON:  Well --

11         THE COURT:  But there are so many contingencies.

12 I'm not even sure that you have a basis for remand.

13         First of all, let me just say that of the Brillhart

14 factors, I don't find that there is any improper forum

15 shopping.  It seems to me if anybody has shopped for a forum,

16 it's the defense.  You filed a State Court action ten months

17 after the Federal action was already pending.  I don't have any

18 problem with you shopping among state courts, that is not

19 prohibited, shopping among Federal Court is prohibited.

20         MR. HURON:  If I may?  I do think that --

21         THE COURT:  I'm not persuaded, so please let me

22 finish.

23         MR. HURON:  Sure.

24         THE COURT:  There are two remaining Brillhart

25 factors that are critical here.  One is the avoidance of

                                                              21

1  needless determinations of State law.  That is a very strong

2  factor.  I have a very strong interest, given the number of

3  Federal cases I have on my docket, I have a very strong

4  interest in not deciding unnecessarily State Court issues.

071219WashingtonMutualPJHF.txt

5       Secondly, the third Brillhart factor, the avoidance

6  of duplicative litigation, is critical.  I'm not sure there is

7  any duplicative litigation at this point.  Not only am I not

8  sure, I'm sure there isn't any duplicative litigation because

9  both cases are not only in federal court, they are both on my

10  docket.  And there is no way that I'm going to allow you all to

11  handle those two cases in any way other than a consolidated

12  fashion.  So we would not be duplicating anything.  So the

13  third Brillhart factor does not exist today.

14       So the question in my mind is whether or not, given

15  that there are obviously options available to the defendants to

16  get that State Court -- the second case back into State Court,

17  the only question is whether or not I should give you

18  opportunity to attempt to do so before making a final decision.

19  I'm not persuaded today that you are going to be able to do so.

20       You still have to file a motion to remand.  They

21  have grounds for arguing against that motion to remand.  So the

22  question for me is whether or not I grant some kind of a

23  temporary stay to permit you to attempt to have this case

24  remanded back to State Court.

25       If you are successful in remand and successful in                22

1  stating a claim that actually sticks in State Court, then we

2  would be in a situation where there is duplicative or a

3  parallel State Court action.  So that's what I would like you

4  to address, that's the question that I'm facing.

5       Keep in mind, I have a very strong interest in not

6  hearing State Court cases, okay?  Both of you can respond.

7       MR. HURON:  All right.

8       Firstly, again, I point to the Huth versus Hartford

9  Insurance Company, where in that decision the Court did exactly

Page 18

071219WashingtonMutualPJHF.txt

10   what this Court just indicated, which is they didn't find there

11   was any evidence of forum shopping, and there wasn't any

12   evidence of duplicative litigation.  Nevertheless, the District

13   Court and then the Court of Appeals for the Ninth Circuit

14   affirmed the trial court's decision to abstain and dismiss the

15   case because it involved purely State law issues.

16          With respect to can we --

17          THE COURT:  Okay, but it's purely discretionary.

18   And I've just described to you that the two factors that are

19   most important to me, avoiding the having to make unnecessary

20   decisions on state cases is very, very important.  Nonetheless,

21   I would like to give due consideration to the second factor as

22   well, particularly given that you have made representations

23   this morning that you want to put to this case in a posture of

24   there being a parallel State action.

25          MR. HURON:  Well --

                                                                    23

1          THE COURT:  You've opened the door to that, so I

2    want responses from both of you as to whether or not I should

3    somehow wait to give you an opportunity to do so.

4          MR. HURON:  I absolutely would request the Court to

5    wait.  And I think that is in the interest of justice and in

6    the interest of the parties because there is no reason to plod

7    ahead.  There is no prejudice to Washington Mutual.  They have

8    our money.

9          If the Court would allow us to have some additional

10   time to get the case procedurally untangled, if you will, I

11   think that would be in everyone's interests, especially if

12   there is a pending or parallel court action.  I think a

13   temporary stay would be the right thing to do under the

14   circumstances.

                              Page 19

071219WashingtonMutualPJHF.txt

15        THE COURT:  All right.

16        Ms. McClain?

17        MS. MCLEAN:  Of course, we would disagree with that.

18   We have already had our motion for summary judgment put off now

19   for almost a month.  That was the schedule that was agreed to

20   by the parties.  We have another stay for a motion to remand

21   and a motion to amend, apparently.  Who knows how long this is

22   going to go on.  There is prejudice to Washington Mutual.

23        THE COURT:  What if the summary judgment motion

24   isn't granted?  Don't I still have to deal with all these

25   issues?
                                                               24

1         MS. MCLEAN:  Presumably.

2         THE COURT:  Have you thought of the possibility that

3    I might not grant your motion?  I haven't looked at it, often

4    summary judgment motions are granted.  I grant quite a few.

5         MS. MCLEAN:  Of course we considered that

6    possibility.  But if the Court is able to reach the merits and

7    determine these issues on the merits that would then be res

8    judicata as to any efforts to file duplicative claims in the

9    State Court.  So we would like the Court to rule on the summary

10   judgment motion either way because it will bring an end to the

11   this endless procedural maneuvering.

12        As Your Honor has already indicated, we don't

13   believe a remand motion would be well taken here.  The

14   defendants have essentially conceded that the negligent

15   misrepresentation claim is time barred.  And our other basis

16   for the motion to dismiss is that all these claims are

17   compulsory counter-claims, so there should be no basis for

18   remand.

19        Finally, as to Your Honor's concern about the
                              Page 20

071219WashingtonMutualPJHF.txt

20  unnecessary ruling on State Court issues, I would again point

21  out that the Huth case that counsel relies on extensively is

22  distinguishable from the situation here.  Here, we have

23  monetary claims for relief that are properly before Your Honor

24  on a -- it's diversity claims, so the Court does not have the

25  discretion to abstain from ruling on those claims.  The Ninth

25

1  Circuit has held in the Diazole cause and the R & D Latex case

2  that in such circumstances, the Court should not abstain and

3  should rule on all of the issues at the same time.  That would

4  be our position, Your Honor.

5           THE COURT:  Okay.  Anything else before I rule?

6           MR. HURON:  No.  Thank you.

7           THE COURT:  All right.  I was fully prepared to

8  grant some kind of a temporary stay, but I've been persuaded,

9  by listening to the argument, that what I would like to do is

10  hear the motion that is most likely to give me some finality

11  here.  And I'm going to rule on the motion for summary

12  judgment.  I don't want to hear three or four other motions so

13  that you can get the posture of the case such that there is a

14  parallel action.  Today there is no parallel action.

15  Notwithstanding the fact that the Court still could exercise

16  its discretion to do so, given the effect that your lawsuit in

17  my view was purely strategic, it was filed ten months after

18  this claimed claim was pending.

19           I don't know without looking at it obviously it

20  should have been brought as a compulsory counter-claim, but I

21  want to end this now.  I want it off my docket.  And I don't

22  wanted to hear three or four motions, a motion to remand

23  followed by a motion to dismiss followed by yet another

24  substantive motion.  I'm going to hear the motion that was

Page 21

071219WashingtonMutualPJHF.txt

25   vacated that was removed from the calendar, and then I'll
♀
                                                        26

1   decide.  If there is something left, there is something left.

2   If it's not, it's gone.

3           In terms of when I am going to hear the motion, I'm

4   fully booked in January.  We do have the January 30th motion to

5   dismiss, which I'm not going to read until I have resolved the

6   motion for summary judgment, so we could substitute those

7   motions.  You have brought both of them, haven't you?

8           MS. MCLEAN:  Yes, Your Honor.

9           The motion to dismiss has not been fully briefed,

10  but if Your Honor is not going to consider it, we could

11  substitute --

12          THE COURT:  The date we'll hear the summary judgment

13  motion, January 30th, and hold off on briefing the motion to

14  dismiss until after I've at least had a chance to review the

15  motion for summary judgment.

16          Therefore, motion to stay or dismiss denied.  All

17  right.

18          MS. MCLEAN:  Thank you, Your Honor.

19          MR. HECKER:  Thank you, Your Honor.

20          (Proceedings adjourned at 9:23 a.m.)

21

22

23          ---o0o---

24

25
♀

CERTIFICATE OF REPORTER

Page 22

071219WashingtonMutualPJHF.txt

I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.  The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

Sahar McVickar, RPR, CSR No. 12963
December 21, 2007

# EXHIBIT B

1  PETER S. HECKER (No. 66159)
   ANNA S. McLEAN (No. 142233)
2  CASEY K. SMITH (No. 241882)
   HELLER EHRMAN LLP
3  333 Bush Street
   San Francisco, California  94104-2878
4  Telephone (415) 772-6000

5  Attorneys for Plaintiff
   WASHINGTON MUTUAL BANK
6

**ORIGINAL**
**F I L E D**

JAN 1 6 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7              UNITED STATES DISTRICT COURT

**MHP**

8             NORTHERN DISTRICT OF CALIFORNIA
9

10  WASHINGTON MUTUAL BANK,           Case No. **07    0280**
11                    Plaintiff,
                                      **COMPLAINT FOR**
12       v.                           **DECLARATORY RELIEF**

13  NMSBPCSLDHB, a California limited
14  partnership; the Granum Family Trust, as
    General Partner of NMSBPCSLDHB; and
15  Robert M. Granum, II, as trustee of the Granum
16  Family Trust,
                      Defendants.
17

18       WASHINGTON MUTUAL BANK ("Washington Mutual" or "plaintiff") alleges as

19  follows:

20                    **JURISDICTION AND VENUE**

21       1.      Original jurisdiction of this matter is based upon 28 U.S.C. section

22  1332 and is premised upon diversity of citizenship.  The amount in controversy, exclusive

23  of interest and costs, exceeds the sum or value of $75,000.

24       2.      Venue in this district is proper under 28 U.S.C. section 1391(a)(1) and

25  (c); all defendants reside in California, at least one defendant resides in this judicial

26  district, and all defendants are subject to personal jurisdiction in this judicial district.

27

28

COMPLAINT FOR DECLARATORY RELIEF /DECLARATORY JUDGMENT

1         3.     This is a civil action for declaratory relief.  As is more fully set forth

2    below, plaintiff requests that the Court declare and adjudge the rights and duties of the

3    parties under a contractual agreement entered into between plaintiff and defendants.

4                      **THE PARTIES**

5         4.     Plaintiff Washington Mutual is a federal association duly organized

6    under 12 U.S.C.S § 1464, has its home office in Henderson, Nevada, and is for diversity

7    purposes a citizen of Nevada.

8         5.     Defendant NMSBPCSLDHB is a California limited partnership with

9    its principal place of business in Saratoga, California.

10        6.     Defendant the Granum Family Trust is the general partner of

11   Defendant NMSBPCSLDHB, and is located in California.

12        7.     Defendant Robert M. Granum, II is the trustee of the Granum Family

13   Trust, and is otherwise authorized to transact business on behalf of the Granum Family

14   Trust as general partner for NMSBPCSLDHB.  Robert M. Granum, II is an individual and

15   resident of California.

16           **FACTUAL BACKGROUND AND NATURE OF THE ACTION**

17        8.     Plaintiff brings this action to determine its rights and obligations

18   under the Additional Security Agreement ("ASA") (attached hereto as Exhibit A and

19   incorporated by reference herein), which was entered into between Washington Mutual

20   and defendant NMSBPCSLDHB (by and through defendant Robert M. Granum, II) as of

21   September 14, 2004.

22        9.     In June 2001, defendant Robert M. Granum, II, as trustee of the

23   Granum Family Trust, the general partner of defendant NMSBPCSLDHB, executed a

24   promissory note ("Promissory Note") for a $9 million loan from Washington Mutual.  The

25   Promissory Note was secured by, among other things, a deed of trust to property in San

26   Jose, California (the "Property") and an Assignment of Leases and Rents for the Property.

27   At the time the parties executed the Promissory Note, Integrated Telecom Express, Inc.

28   ("ITEX") held a 10-year lease to the Property.

1      10.    In October 2002, ITEX sought and received federal bankruptcy

2   protection; litigation then ensued between ITEX and NMSBPCSLDHB concerning

3   amounts due under the existing lease (the "ITEX Litigation").

4      11.    In September 2004, while the ITEX Litigation was still pending,

5   Washington Mutual and NMSBPCSLDHB entered into the ASA. Paragraph 1 of the ASA

6   provides that "all or any part of" any award arising out of the ITEX Litigation would be

7   assigned to Washington Mutual as additional security for the original $9 million loan.

8   Paragraph 2 of the ASA establishes certain requirements about how any award arising out

9   of the ITEX Litigation is to be invested and distributed by Washington Mutual to

10  defendants, including that the funds are to be held in certificates of deposit and

11  Washington Mutual's best available passbook account.

12     12.    In August 2005, Washington Mutual was wired approximately $25

13  million, the final award granted to NMSBPCSLDHB in the ITEX Litigation (the

14  "Award"). Washington Mutual initially deposited the funds into certain passbook

15  accounts, and opened a dialogue with NMSBPCSLDHB, by and through Robert M.

16  Granum, II and his agents, about the term and amount of certificates of deposit and/or

17  passbook accounts in which the funds were to be invested, per its understanding of the

18  terms of the ASA.

19     13.    NMSBPCSLDHB, by and through Robert M. Granum, II and his

20  agents, has refused to agree to any of the proposals advanced by Washington Mutual as to

21  the term and amount of such investments, and has refused to amend the ASA to permit

22  other types of investments.

23     14.    A dispute has now arisen concerning the terms of the ASA;

24  specifically, plaintiff contends that the ASA mandates that the award be placed in only two

25  types of accounts: certificates of deposit and passbook accounts. Defendants

26  NMSBPCSLDHB and Robert M. Granum, II claim the ASA allows other investments.

27  Therefore, plaintiff seeks declaratory relief defining its rights and obligations under the

28  ASA.

-3-

## CLAIM FOR DECLARATORY RELIEF

15.     Plaintiff repeats and realleges paragraphs 1 through 14 of this Complaint and incorporates the same by reference as if fully set forth herein.

16.     An actual controversy has arisen and now exists between plaintiff and defendants concerning plaintiff's investment and distribution of the ITEX Litigation Award under the ASA.  This controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

17.     The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

18.     Plaintiff contends that it is contractually obligated under the ASA to hold the disputed funds in only two types of accounts:  certificates of deposit and passbook accounts.  Defendants NMSBPCSLDHB and Robert M. Granum, II claim the ASA allows for other investments and have insisted that the funds be invested in types of investments other than certificates of deposit and passbook accounts.

19.     A judicial declaration as to plaintiff's investment obligations under the ASA is necessary and proper at this time and under the present circumstances.

20.     Plaintiff desires a judicial determination of its rights and duties, and defendants' rights and duties, under the ASA.

21.     Under the terms of the ASA, plaintiff is entitled to recover its reasonable costs and attorneys' fees, as awarded by the Court.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays for judgment against defendants, as follows:

1.     For an order declaring that plaintiff Washington Mutual has no duty to invest any part of the Award in accounts other than certificates of deposit and passbook accounts, per the terms of the ASA.

1        2.     For all reasonable costs and attorneys' fees incurred by plaintiff and

2  as allowed by law, and per the terms of the ASA; and

3        3.     For such other relief as the Court deems just and proper.

4

5  DATED: January 16, 2007

6                HELLER EHRMAN LLP

7

8                By                                

9                             ANNA S. McLEAN

10               Attorneys for Plaintiff

11               WASHINGTON MUTUAL BANK

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY RELIEF /DECLARATORY JUDGMENT

# EXHIBIT A

## ADDITIONAL SECURITY AGREEMENT

This ADDITIONAL SECURITY AGREEMENT is made this 14th day of September 2004, by and between NMSBPCSLDHB, a California Limited Partnership, by and through its general partner, Robert M. Granum II ("NMSBPCSLDHB", "Assignor") and Washington Mutual Bank, F.A. ("WAMU", "Assignee") (collectively, "parties"), with reference to the following facts:

A.  WHEREAS, NMSBPCSLDHB is the owner of that certain real property commonly known as 400 Race Street, San Jose, California ("Property").

B.  WHEREAS, Integrated Telecom Express, Inc. was a tenant of NMSBPCSLDHB and leased the Property for a term of 10 years pursuant to that certain lease dated September 21, 2000 ("Lease"), a copy of which is attached hereto as Exhibit A.

C.  WHEREAS, WAMU provided NMSBPCSLDHB with a loan in the amount of $9,000,000.00 in connection with the purchase of the Property pursuant to that certain Promissory Note dated June 5, 2001 ("Loan"), a copy of which is attached hereto as Exhibit B.

D.  WHEREAS, WAMU substantially relied upon certain factors in agreeing to make the Loan, including but not limited to: 1) Integrated

Telecom Express, Inc.'s commitment to the Lease; 2) the rental payments and other fees that would be generated as a result of the Lease; 3) Integrated Telecom Express, Inc.'s prior receipt of $150 million in public funding as a result of the sale of securities through an Initial Public Offering; and 4) WAMU's belief that Integrated Telecom Express, Inc. was, at the time WAMU made the Loan, about to become a profitable company.

E.    WHEREAS, Integrated Telecom Express, Inc. sought federal bankruptcy protection in a petition dated October 8, 2002, and received such protection by order of the United States Bankruptcy Court for the District of Delaware on October 31, 2002.

F.    WHEREAS, there has been ongoing litigation between Integrated Telecom Express, Inc. and NMSBPCSLDHB.

G.    WHEREAS, NMSBPCSLDHB's motion to dismiss Integrated Telecom Express, Inc.'s bankruptcy was denied at the United States Bankruptcy Court and United States District Court levels.

H.    WHEREAS, most recently, NMSBPCSLDHB prevailed before a panel of the United States Court of Appeals for the Third Circuit in its motion to dismiss the bankruptcy.

I.   WHEREAS, Integrated Telecom Express, Inc. has indicated that it

     intends to appeal the ruling of the United States Court of Appeals for

     the Third Circuit or request an <u>en banc</u> review of the ruling before the

     entire the United States Court of Appeals for the Third Circuit.

J.   WHEREAS, NMSBPCSLDHB's ultimate award for the Lease is

     between $2.3 million and $25 million, exclusive of recovery of legal fees,

     interest, deposits by NMSBPCSLDHB, recovery of costs associated with

     the retenanting of the building due to Integrated Telecom Express, Inc.'s

     breach of the Lease, and punitive awards (collectively, "Award"). The

     Award shall not include the $2,200,000 (approximately) Letter of

     Credit, the proceeds of which WAMU has previously sought and

     received from the issuing bank.


     NOW THEREFORE, in consideration of the mutual covenants of the

parties herein, and for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the parties agree as follows:

1.   Subject to all of the conditions and provisions stated herein,

     Assignor hereby transfers and assigns to Assignee to hold on

     Assignor's behalf and in Assignor's name and hereby pledges to

     Lender to grant to Lender a security interest in additional

security for repayment of the Loan all or any part of the Award made to Assignor, whether a) awarded to Assignor in any action initiated in state or federal court arising from Assignor's claims against Integrated Telecom Express, Inc. for breach of the Lease (or related claims), or b) paid to Assignor as a result of a settlement of Assignor's claims against Integrated Telecom Express, Inc. either before or after the initiation of such litigation in state or federal court.

2.    Upon receipt of all or any part of the Award, Assignee will place a portion of the funds received into Assignee's certificates of deposit, to be held in the name of NMSBPCSLDHB, in amounts and for terms as mutually agreed upon by Assignee and Assignor. Since Assignee is unable to make monthly withdrawals from certificates of deposit accounts, an amount sufficient to cover the monthly draw requirements of this agreement, will be withdrawn from the certificate of deposit accounts and placed into Assignee's best available passbook account from time to time. Assignee shall not unreasonably withhold its consent as to amounts and terms for the respective certificates of deposit. In the event that there is no mutual

agreement, then the decision as to the term and the amount shall be made by Assignee in its sole and absolute discretion. In addition, the rates offered to Assignor shall be the equivalent of the best rates offered to Assignee's best customers. Furthermore, the rates shall be predicated upon the amount of the certificates of deposit and their respective terms.

i.  Such accrued interest is to be disbursed to Assignor annually on February 1 of each year, beginning on February 1, 2005.

ii. In addition to the disbursement of the accrued interest as described above, Assignee shall disburse monthly the sum of whatever portion of the Proceeds have been transferred and assigned by Assignor to Assignee up to that date, divided by the number of months remaining on the original Integrated Telecom Express, Inc. Lease. For example, if the Award is $7,200,000 and there are 72 months remaining up to and including February 28, 2011 (the date of the expiration of the Lease), the payment by WAMU to NMSBPCSLDHB would be $100,000 per month. Such disbursement shall be made on the first of each month beginning on the first of the month following 1) either a negotiated final settlement agreement

between NMSBPCSLDHB and Integrated Telecom Express, Inc. or the award by a court of competent and final jurisdiction of the ultimate Award determined by such a court, and 2) the receipt by WAMU of such Award.

3) If Assignor defaults on (i) any payment due under the Loan or (ii) under any material covenant to be performed by Assignor under the deed of trust or any of the documents that evidence or secure the Loan ("Loan Documents"), or any term or provision of this Agreement, Assignee in its sole and absolute discretion, may (i) apply the funds in the account or any portion of such funds to payment of the obligations secured hereby (provided, however, that such application of funds shall not cure or be deemed to cure any default); (ii) apply the funds in the Account to reimburse Assignee for any losses or expenses (including, without limitation, legal fees) suffered or incurred by Lender as a result of such default, and (iii) apply the funds in the Account in connection with exercising and exercise of all rights and remedies available to Assignee at Law or in Equity or under this Additional Security Agreement or any of the Loan Documents.  Nothing in this Additional Security Agreement shall obligate Assignee to apply all or any portion of the funds in the Account on

account of any default by Assignor or to repayment of the indebtedness of the Loan.

Assignor further agrees, and expressly acknowledges the reliance of Assignee hereon, that any and all applications of the funds in the Account to or upon any of the obligations secured hereby shall be, and shall be irrevocably deemed to be, a realization upon and foreclosure of the security interests and liens granted Assignee in such funds and shall not be, or deemed to be, the exercise of a right of set-off. Neither the execution and delivery of this Additional Security Agreement, the transfer by Assignor of any funds from the Account, whether in accordance with a request therefor by Assignor or otherwise, nor the application by Assignee of any funds in the Account to or upon the obligations secured hereby shall be or be deemed to be a violation of the "security-first" doctrine embodied in California Code of Civil Procedure section 726, nor effect a reinstatement of Assignor's obligations pursuant to California Civil Code sections 2924c or 2924d, it being expressly and irrevocably acknowledged and agreed by Assignor that the funds in the Account, the Account, and any and all sums deposited in and/or transferred from the Account pursuant to this Agreement constitute collateral security securing Assignor's obligations under the Loan Documents.

4)    Assignor agrees to indemnify and hold Assignee and its agents, directors,

officers, employees, attorneys, successors, and assigns (collectively,

"Indemnified Parties") harmless from all liability and damage of any kind

incurred by the Indemnified Parties" (including any attorney's fees of the

Indemnified Parties incurred defending any claim), in connection with any

of the parties' performance under the terms of this Additional Security

Agreement.

GOVERNING LAW.              This Additional Security Agreement is
made and entered into in the State of California and shall be interpreted, construed,
and enforced in accordance with the laws of the State of California.

BINDING EFFECT.          This Additional Security Agreement shall apply
to, bind, and inure to the benefit of Assignor and Assignee, and their respective heirs,
legal representatives, successors, and assigns.

COUNTERPARTS.          This Additional Security Agreement may be
executed in one or more counterparts, each of which shall be an original, but all of
which together shall constitute one instrument.

ATTORNEY'S FEES.          In the event that a dispute arises between the
parties over the terms, interpretation, or enforcement of this ADDITIONAL
SECURITY AGREEMENT, whether such dispute is initiated through a judicial
action or any alternative form of dispute resolution, and whether such dispute is

resolved through judgment, settlement, or otherwise, the prevailing party shall be

entitled to reasonable attorney's fees and costs and shall be deemed to have accrued

upon the commencement of such action or alternative form of dispute resolution.

IN WITNESS WHEREOF, this Additional Security Agreement has been
executed as of the date first written above.

**ASSIGNOR**

_____
NMSBPCSLDHB, a California
Limited Partnership, by and
through Robert M. Granum II

**ASSIGNEE**

_____
Washington Mutual Bank, F.A.,
by and through MARK ST. PIERRE
its _____VICE PRESIDENT_____

# EXHIBIT C

1

2

3                   UNITED STATES DISTRICT COURT

4                  NORTHERN DISTRICT OF CALIFORNIA

5

6

7    WASHINGTON MUTUAL BANK,

8              Plaintiff,                          No. C 07-0280 PJH

9         v.                                       **ORDER DENYING MOTION TO
                                                   DISMISS OR IN THE ALTERNATIVE,**
10   NMSBPCSLDHB, et al.,                          **TO STAY**

11             Defendants.
     _____/

12

13        Defendant's motion to dismiss plaintiff's complaint or in the alternative, to stay the

14   action on <u>Brillhart</u> abstention grounds, came on for hearing before this court on December

15   19, 2007.  Plaintiff, Washington Mutual Bank ("plaintiff"), appeared through its counsel,

16   Anna S. McLean and Peter S. Hecker.  Defendant NMSBPCSLDHB ("defendant"),

17   appeared through its counsel, Jeffrey G. Huron.  Having read the parties' papers and

18   carefully considered their arguments and the relevant legal authority, and good cause

19   appearing, the court hereby DENIES defendant's motion, for the reasons stated at the

20   hearing, and summarized as follows.

21        In view of plaintiff's removal of defendants' state court complaint on diversity

22   grounds, and its subsequent relation to the instant declaratory judgment action, no parallel

23   state court action is actually pending at this juncture.  Defendants argue that,

24   notwithstanding an absence of a parallel proceeding currently pending, such a proceeding

25   *will* be pending in future.  Specifically, defendants propose either dismissing the related

26   action and re-filing it in state court with a proper claim against a California defendant

27   (defendants concede that diversity jurisdiction over the related complaint is established on

28   fraudulent joinder grounds), or seeking remand of the related action in the event the court

**United States District Court**
For the Northern District of California

1   were to dismiss the instant action. Defendants have also proposed seeking leave of court

2   to amend the related action in order to re-state a valid claim against the California

3   defendant first, at which point defendants could *then* seek remand to state court.

4   Regardless whether any of these actions would ultimately destroy diversity jurisdiction and

5   require a pending state court proceeding, however, *all* of these options are speculative at

6   this point. Moreover, the parties have been diligently prosecuting the instant action before

7   the court, and dispositive motion briefing is complete. In essence, then, defendants are

8   seeking dismissal or a stay of an action that is ready for consideration on the merits, based

9   on no more than their promise that future parallel state court proceedings are forthcoming,

10  which *might* properly avoid federal subject matter jurisdiction.

11          Under this scenario, the court is unpersuaded that Brillhart abstention is either

12  warranted or advisable. See, e.g., Gov't Employees Ins. Co. v. Dizol, et al., 133 F.3d 1220,

13  1225 (9th Cir. 1998)(Brillhart abstention depends on consideration of three factors: first, the

14  "needless determination of state law issues;" second, whether a declaratory action has

15  been filed as a means of forum shopping; third, the need to avoid duplicative litigation).

16  First, it is unclear that the court will be avoiding the needless consideration of state law

17  issues by abstaining from judgment in the instant action, since the pending related action

18  currently states a proper basis for subject matter jurisdiction on diversity grounds, and

19  therefore requires this court's consideration. Second, the court finds no basis for

20  concluding that plaintiff has engaged in impermissible forum shopping by virtue of filing the

21  instant declaratory judgment action. Indeed, the court finds *defendants*' state court action,

22  filed more than 10 months after the present action was filed, more worthy of suspicion in

23  this regard. Finally, the court will not avoid duplicative litigation at this juncture, by

24  abstaining from judgment in the present case. For as already stated, the court's jurisdiction

25  over both the present action and the related action is currently proper. And since the cases

26  are related, the court is in a position to consolidate and/or streamline the litigation of both.

27          In sum, and for all the above reasons, the court DENIES defendants' motion to

28

2

1  dismiss the instant declaratory judgment action or in the alternative, to stay it.  Rather, the

2  court will proceed to hear and determine the pending dispositive motion.  Accordingly, the

3  parties are hereby notified that plaintiff's motion for summary judgment will be heard on

4  **January 30, 2008**, during the court's regular law and motion calendar.  The motion to

5  dismiss currently scheduled for that same date, is hereby VACATED.

6

7  **IT IS SO ORDERED.**

8  Dated: December 21, 2007

9                                                    PHYLLIS J. HAMILTON
                                                     United States District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

3

# EXHIBIT D

1  Jeffrey Huron, State Bar No. 136585
   jhuron@huronlaw.com
2  HURON LAW GROUP
   1875 Century Park East, Suite 1000
3  Los Angeles, California 90067
   Telephone: 310.284.3400
4  Facsimile: 310.772.0037

5  Attorneys for Defendants NMSBPCSLDHB,
   GRANUM FAMILY TRUST, and ROBERT
6  M. GRANUM, II

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10 WASHINGTON MUTUAL BANK,            CASE NO.  C 07 00280 PJH

11                   Plaintiff,       REPLY BRIEF IN SUPPORT OF
                                      MOTION TO DISMISS OR STAY
12         v.                         ACTION IN FAVOR OF PARALLEL
                                      STATE COURT ACTION
13 NMSBPCSLDHB, a California limited
14 partnership; the Granum Family Trust, as   Date:    December 19, 2007
   General Partner of NMSBPCSLDHB; and        Time:    9:00 a.m.
15 Robert M. Granum, II, as trustee of the    Crtrm:   3
   Granum Family Trust,
16
                     Defendants.
17

18

19        REPLY MEMORANDUM OF POINTS AND AUTHORITIES

20

21 I.    INTRODUCTION

22        This action arises out of the refusal of plaintiff Washington Mutual Bank ("WAMU") to

23 invest the $25 million awarded to defendant NMSBPCSLDHB in the ITEX litigation, including

24 over $16 million in excess collateral, in anything other than low interest WAMU deposit accounts

25 in violation of the parties' written agreement and to the severe financial detriment of Defendants.

26 As WAMU anticipated when it commenced this declaratory judgment action, NMSBPCSLDHB

27 has filed a state court action against WAMU and one of its vice presidents, Mark St. Pierre ("St.

28 Pierre") alleging causes of action for negligent misrepresentation (against St. Pierre only) and for

*Huron law group*

1  breach of contract, breach of implied covenant, conversion, and unjust enrichment.[1]  Like this

2  action, the state action asserts exclusively state law claims.  Moreover, the state law questions

3  raised by WAMU in its federal declaratory action can and will be addressed in the pending state

4  action given that the judicial declaration WAMU seeks in this case is obviously a defense to the

5  causes of action alleged against it in the state action.  Accordingly, Defendants have filed this

6  motion to dismiss or stay this action in favor of the state court action under <u>Brillhart v. Excess Ins.</u>

7  <u>Co. of America</u>, 316 U.S. 491, 62 S. Ct. 1173, 1175-76, 86 L. Ed. 1620 (1942).  As explained in

8  Defendants' moving papers, application of the <u>Brillhart</u> factors to this case strongly weigh in favor

9  of granting this motion.  As explained below, none of WAMU's arguments in opposition to this

10  motion have any merit, and therefore this motion should be granted.

11

12  **II.      <u>THIS ACTION SHOULD BE DISMISSED OR STAYED UNDER *BRILLHART*</u>**

13           **A.      <u>The *Brillhart* Abstention Doctrine Does Not Require A Reactive Lawsuit</u>**

14           As a preliminary matter, WAMU argues, without citing any supporting authority, that the

15  Ninth Circuit interprets <u>Brillhart</u> as creating a presumption against retaining jurisdiction <u>**only**</u> with

16  respect to declaratory judgment actions filed <u>**reactively**</u>, either after or shortly before the filing of

17  a parallel state court action.  Therefore, WAMU asserts, the <u>Brillhart</u> abstention doctrine does not

18  apply here because WAMU did not file this action reactively as purportedly evidenced by the fact

19  that the state action was not filed until 10 months after WAMU commenced this action.  There is

20  no merit to this argument.  While it is beyond dispute that the Ninth Circuit has found <u>Brillhart</u>

21  abstention to be particularly appropriate when presented with a reactive declaratory judgment suit,

22  it is clear that the Ninth Circuit holds <u>Brillhart</u> abstention equally, if not more, appropriate where

23  there is duplicative state litigation pending.

24  _____

25  [1]  As discussed more fully below at pages 7 and 8, the facts alleged against St. Pierre in support of
     the claim for negligent misrepresentation also support a claim for fraud, which is not time barred.

26  Therefore, NMSBPCSLDHB is entitled to file a new state court action which would allege the
     same causes of action currently alleged with the exception that St. Pierre would be sued for fraud

27  rather than negligent misrepresentation.

28

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS ACTION IN FAVOR OF STATE COURT ACTION

Huron law group

**Huron law group**

1   As the Ninth Circuit has explained, "[t]he **primary** instance in which a district court
2   should exercise its discretion to dismiss a case is presented when **there exists a parallel**
3   **proceeding in state court**. ... We have similarly indicated that a district court should exercise its
4   discretion to decline jurisdiction when the federal action has simply been filed in anticipation of an
5   impending state court suit." Maryland Casualty Co. v. Knight, 96 F. 3d 1284, 1288-1289 (1996)
6   (emphasis added). The Ninth Circuit concluded in Knight that the district court was under no
7   obligation to exercise its discretion to decline jurisdiction over the declaratory judgment action in
8   part because such action was "distinct from either of the above types of cases. ... [it was] neither
9   'reactive' to, nor duplicative of, any parallel state proceeding." Id. at 1289. In other words,
10  contrary to WAMU's assertion, the Ninth Circuit has **not** limited application of the Brillhart
11  abstention doctrine to declaratory judgment actions filed in reaction to state actions filed shortly
12  before or after the declaratory judgment action.
13         At any rate, WAMU's declaratory judgment action **was** filed reactively because, as fully
14  explained in Defendants' moving papers, WAMU has come to this Court seeking an anticipatory
15  defense to the breach of contract and related claims it knew NMSBPCSLDHB would bring against
16  it in a lawsuit. Over Defendants' strident objections, WAMU is exercising exclusive control over
17  the **$25 million** awarded to NMSBPCSLDHB in the ITEX litigation, including excess collateral
18  totaling **over $16 million**, and has deposited such money into low interest deposit accounts. The
19  appropriateness of this conduct is at the heart of the dispute between the parties. In its complaint,
20  WAMU asks the Court for a judgment that it "has no duty to invest any part of the [$25 million]
21  Award in accounts other than certificates of deposit and passbook accounts, per the terms of the
22  ASA." Complaint, Prayer ¶ 1. In other words, WAMU filed this declaratory judgment action for
23  one reason only—i.e., to obtain a defense that it could assert against the breach of contract and
24  related claims it knew NMSBPCSLDHB inevitably would file against it. In short, there is no
25  merit to WAMU's argument that this motion must be denied because Defendants failed to show
26  this declaratory judgment action was filed reactively.
27         Nor is there any merit to WAMU's argument that the Ninth Circuit cases upholding a
28  district court's abstention under Brillhart are somehow distinguishable from this case because they

-3-

Case 3:07-cv-00280-PJH    Document 46    Filed 12/05/2007    Page 4 of 11

1   involve insurance coverage issues. As the Ninth Circuit has explained: "In this circuit we have

2   held that federal courts should:  [¶] 'decline to assert jurisdiction in insurance **and other**

3   **declaratory relief actions** presenting only issues of state law during the pendency of parallel

4   proceedings in state court unless there are circumstances present to warrant an exception to that

5   rule. [Citations omitted]." Maryland Casualty, supra, 96 F. 3d at 1288. Therefore, the Brillhart

6   abstention doctrine is not limited to insurance coverage cases as WAMU implies.

7

8        **B.**    **Abstention Would Avoid Needless Determination Of State Law Issues**

9       WAMU argues that the Brillhart factor of "avoiding needless determination of state law

10  issues" is not satisfied here because Defendants did not identify any unsettled or complex state law

11  issues to be resolved in either the federal or state action. While, as WAMU points out, district

12  courts may and often do take into consideration whether the state law issues presented are novel or

13  complex when balancing the Brillhart factors, neither Brillhart itself nor the Ninth Circuit's cases

14  interpreting Brillhart require that the state law issues be novel or complex before a district court

15  may exercise its discretion to decline jurisdiction over a declaratory judgments action.

16  In fact, the motion to abstain in Brillhart rested solely on the claim that "since another proceeding

17  was pending in a state court in which all matters in controversy between the parties could be fully

18  adjudicated, a declaratory judgment in the federal court was unwarranted." Brillhart, supra, 316

19  U.S. at 494-495, 62 S. Ct. at 1175. While the Supreme Court identified several issues into which a

20  district court should inquire when determining whether the questions in controversy between the

21  parties to the federal action can better be settled in the pending state action[2], it did **not** include

22  whether the state law issues are novel or complex as one of those factors. Id. at 494-497, 62 S. Ct.

23  at 1175-1177. In short, WAMU's assertion that "[t]here is no legal basis to abstain from deciding

24  _____

25  [2] Specifically, the Supreme Court stated: "This may entail inquiry into the scope of the pending
    state court proceeding and the nature of defenses open there. The federal court may have to
26  consider whether the claims of all parties in interest can satisfactorily be adjudicated in that
    proceeding, whether necessary parties have been joined, whether such parties are amenable to
27  process in that proceeding, etc." Brillhart, supra, 316 U.S. at 495, 62 S. Ct. at 1176.

28

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS ACTION IN FAVOR OF STATE COURT ACTION

Huron law group

1   state law issues that are neither unique nor complex" (Opp. 2:20-21) is wrong.

2          Moreover, when applying the <u>Brillhart</u> factors, the Ninth Circuit has repeatedly stated quite

3   succinctly that "[t]he district court should avoid needless determination of state law issues"

4   **period**, without using any "novel or complex" qualifying language. <u>See e.g.</u>, <u>Huth v. Hartford</u>

5   <u>Ins. Co. of the Midwest</u>, 298 F. 3d 800, 803 (9th Cir. 2002), <u>American Casualty Co. v. Krieger</u>,

6   181 F.3d 1113, 1118 (9th Cir. 1999); <u>Government Employees Ins. Co. v. Dizol</u>, 133 F.3d 1220,

7   1225 (9th Cir. 1998)[3], <u>Continental Casualty Co. v. Robsac Industries</u>, 974 F. 2d 1367, 1371 (9th

8   Cir.1991), *overruled on other grounds* in <u>Dizol</u>, <u>supra</u>, 133 F.3d at 1226. Indeed, in <u>Huth</u>, <u>supra</u>,

9   the Ninth Circuit held that the district court had not abused its discretion by declining to exercise

10  jurisdiction over a declaratory judgment action based solely on its finding that the state court

11  would be the preferable forum where the federal and state actions involved the same purely state

12  law issue. <u>Huth</u>, <u>supra</u>, 298 F. 3d at 803-804. As the Ninth Circuit explained: "Admittedly, there

13  is no great need for state court resolution of an open question of state law in this case. Yet,

14  without a presumption in favor of retaining jurisdiction, we cannot find that the district court

15  abused its discretion by declining jurisdiction." <u>Id.</u> at 804.

16         In <u>One Beacon Ins. Co. v. Prometheus Real Estate Group, Inc.</u>, 2007 WL 2318925 at *3

17  (N.D. Cal. 2007), relied upon by WAMU, the district court did note that the state law issues were

18  not particularly complex or novel: however, it also found that the federal action was not contingent

19  on any further state court proceedings and that state action did not address the coverage issue

20  raised in the federal action. Here, in contrast, NMSBPCSLDHB's state action **does** address the

21  same issues as those raised in this action, and consequently the Court will needlessly be

22  determining state law issues that the state court will also be determining.

23

24

25

[3] In <u>Dizol</u>, <u>supra</u>, 133 F.3d at 1225 fn. 5, the Ninth Circuit identified several additional factors that
26  a district court may consider when deciding whether to decline jurisdiction over an action under
    the Federal Declaratory Judgments Act, but none of the factors included whether the state law
27  issues presented are novel or complex.

28

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS ACTION IN FAVOR OF STATE COURT ACTION

Huron law group

**B.    Abstention Would Discourage Forum Shopping**

WAMU argues that it is Defendants who are forum shopping because NMSBPCSLDHB filed the state action on the same day that Defendants' opposition to WAMU's summary judgment motion was due. This argument is spurious. This is not a situation where Defendants filed a state action and are now seeking to have this action dismissed in favor of it because the Court has already ruled against them, or because they anticipate that the Court will do so. The summary judgment motion has yet to be ruled on, and Defendants filed a well taken opposition to such motion. Rather, as shown in Section II.A above and in Defendants' moving papers, it is WAMU who has engaged in forum shopping, filing this action reactively in the hopes of obtaining a judgment it could use to defend against the claims it knew Defendants inevitably would file against it.

WAMU also faults Defendants for not arguing that San Jose is a more convenient forum than San Francisco. Whether San Francisco or San Jose is the more convenient forum, however, is not the issue here. The issue is whether the parties' state law claims against each other should be dealt with in a federal or state court forum. As explained in Defendants' moving papers and herein, that issue must be resolved in the state court's favor. In short, the "discouraging forum shopping factor" weighs in favor of granting this motion.

**C.    Granting This Motion Would Avoid Duplicative Litigation**

WAMU argues that the third Brillhart factor, avoiding duplicative litigation, weighs in favor of retaining jurisdiction over this action because the state action has been removed to this Court, and therefore this motion is moot. WAMU is wrong. The Ninth Circuit specifically addressed this issue in Huth v. Hartford Ins. Co. of the Midwest, 298 F. 3d 800 (9th Cir. 2002). Like WAMU in this case, the state action defendant in Huth (Hartford) had removed the state court action to federal court based on diversity jurisdiction (where such action was then consolidated with Hartford's federal declaratory judgment action) and then argued that "the absence of a pending state action precludes a district court from declining discretionary jurisdiction" under 28 U.S.C. § 2201. Huth, supra, 298 F. 3d at 802, 803. The Ninth Circuit

Huron law group

1    **rejected** this argument, pointing out that "there are other balancing factors the district court must

2    weigh," and expressing that lack of a pending state action does **not** create a presumption in favor

3    of retaining jurisdiction. Id. at 802-803. The Ninth Circuit went on to hold that the district court

4    did **not** abuse its discretion by remanding the state action and by declining jurisdiction over the

5    federal declaratory judgment action based solely on the district court's finding that the state court

6    would be the preferable forum given that "both the federal and state actions involve the same

7    purely state law issue." Id. at 804 (the district court had found that the other two Brillhart factors,

8    "avoiding duplicative litigation" and "avoid forum shopping" favored neither party: Id. at 802-

9    803).

10    Likewise, in Golden Eagle Ins. Co. v. Travelers Companies, 103 F. 3d 750 (9th Cir. 1996),

11    *overruled on other grounds* in Dizol, supra, 133 F.3d at 1226, the Ninth Circuit held that a district

12    court may exercise its discretion to abstain from hearing a declaratory judgment action based upon

13    "practicality and wise judicial administration" even in those cases in which a parallel state court

14    proceeding does not exist. Golden Eagle, 103 F. 3d at 754. As the Ninth Circuit explained:

15    "[a]lthough our case law has applied the *Brillhart* doctrine only in cases where a parallel

16    proceeding exists in state court, nothing in the Declaratory Judgment Act requires a parallel state

17    proceeding in order for the district court to exercise its discretion to decline to entertain the action.

18    Clearly, the existence of a parallel state proceeding would be a major factor in the district court's

19    consideration of 'practicality and wise judicial administration,' but the absence of a parallel state

20    proceeding is not necessarily dispositive; the **potential for such a proceeding may suffice**." Id.

21    (*citing* to Wilton, supra, 515 U.S. at 290, 115 S. Ct. at 2144) (emphasis added). Here, all of the

22    facts giving rise to the negligent misrepresentation claim against St. Pierre will also support a

23    claim for fraud—a claim that is not yet time barred—and a new state action alleging such a claim

24    will be filed if the state court action currently removed to this Court is not remanded pursuant to

25    NMSBPCSLDHB's motion. Declaration of Jeffrey Huron, ¶ 2.

26    In other words, the mere fact that WAMU removed NMSBPCSLDHB's state action to this

27    Court does not render this motion moot, nor does that fact of removal by itself compel the denial

28    of this motion. Rather, the Court must weigh the other balancing factors identified in Brillhart.

-7-

1    supra, and in Ninth Circuit cases interpreting <u>Brillhart</u> in determining whether to dismiss or stay

2    this action in favor of the state court action. As demonstrated above and in Defendants' moving

3    papers, those factors weigh heavily in favor of dismissing or staying this action in favor of

4    NMSBPCSLDHB's state action particularly given the facts that both the state and federal actions

5    present only questions of state law and jurisdiction in this Court is based solely on diversity. <u>See</u>

6    <u>Huth, supra</u>, at 802-804.

7         Denying this motion will result in duplicative litigation. NMSBPCSLDHB is entitled to

8    dismiss its state action now that it has been removed to this court, and to file a new state court

9    action which would allege the same causes of action currently alleged with the exception that St.

10   Pierre would be sued for fraud (for which there is a 3-year statute of limitations pursuant to

11   California Code of Civil Procedure §338) rather than for negligent misrepresentation. St. Pierre's

12   presence in that new action will preclude WAMU from removing such action to federal court.

13   Moreover, WAMU would be powerless to prevent the state court from going forward with that

14   action, and the very same factual and legal issues involved here will be subject to litigation there.

15   <u>Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League</u>, 652 F. 2d 852, 855 fn. 5 (9th Cir.

16   1981) ("a federal court [cannot] enjoin [] a party from proceeding in state court on a claim that

17   should have been pleaded as a compulsory counterclaim in a prior federal suit" [*citing* the Federal

18   Anti-Injunction Act, 28 U.S.C. § 2283].).

19

20   **D.    <u>Granting This Motion Will Not Result In The Waste Of Judicial Resources</u>**

21        WAMU additionally argues that this motion must be denied because abstention will waste

22   rather than conserve judicial resources given that discovery is complete in this case and WAMU's

23   motion for summary judgment has been fully briefed and is ripe for decision. This argument is

24   without merit. The facts and documents discovered in this case can be used in the state action, and

25   the parties can stipulate that written discovery responses and deposition testimony in this case may

26   be used in the state action as if such discovery had been conducted there rather than in this case. It

27   is a far greater waste of judicial and party resources to have the parties litigating the same state law

28   issues in two different forums. Moreover, the cases cited by WAMU do not support its "waste"

Huron law group

1  argument as those cases were significantly further along in the litigation process when the issue of

2  dismissal under Brillhart was addressed than is this action.

3      Specifically, in Maryland Casualty Co. v. Knight, 96 F. 3d 1284, 1290 (9th Cir. 1996), the

4  case had proceeded to a judgment on the complaint and jury verdict on the counterclaim.  In

5  American Casualty Co. v. Krieger, 181 F. 3d 1113, 1118-1119, by the time defendants filed their

6  motion to dismiss, the district court had already worked up, considered and ruled against such

7  defendants on the plaintiff's motion for summary judgment, their motion for reconsideration, and

8  their own summary judgment motion. Here, in contrast, the Court has not yet ruled on WAMU's

9  motion for summary judgment, the hearing on that motion has been vacated pending resolution of

10 this motion, and no other dispositive motions have been made or ruled upon.  And Golden Eagle

11 Ins. Co. v. Travelers Companies, 103 F. 3d 750, 756 (9th Cir. 1996), actually supports the granting

12 of this motion.  In that case, the Ninth Circuit found that a "waste of judicial resources" argument

13 would fail there because the case before it "was decided on summary judgment and the

14 expenditure of judicial resources was thus comparatively minimal."

15

16 **III.    CONCLUSION**

17     For all of the above reasons and those set forth in Defendants' moving papers, the Brillhart

18 factors clearly weigh in favor of the Court abstaining from exercising jurisdiction over WAMU's

19 declaratory judgment action.  Accordingly, Defendants respectfully urge that this case should be

20 dismissed or stayed under the Brillhart doctrine, and the state action remanded back to state court.

21

22 DATED: December 5, 2007                    HURON LAW GROUP

23

24                      By: _____

25                      JEFFREY HURON
                          Attorneys for Defendants NMSBPCSLDHB,

26                      GRANUM FAMILY TRUST, and ROBERT M.
                          GRANUM, II

27

28

Huron law group

## DECLARATION OF JEFFREY HURON

I, Jeffrey Huron, declare as follows:

1.     I am an attorney at law duly licensed to practice law in the State of California and before all of its Courts. I am a partner in the law firm of the Huron Law group, attorneys of record herein for defendants NMSBPCSLDHB, Granum Family Trust, and Robert M. Granum, II (collectively, "Defendants"). I have personal knowledge of the following facts and, if called upon to do so, could and would competently testify thereto.

2.     Defendants intend to file a motion to remand the state action. Moreover, if that motion is denied, then Defendants will dismiss the state action as currently removed to this Court, and file a new action in state court. The new action will name the same defendants and allege the same causes of action with the exception that defendant Mark St. Pierre will be sued for fraud as opposed to negligent misrepresentation. The facts giving rise to the negligent misrepresentation claim also support a cause of action for fraud. Because the statute of limitations for fraud is three years under California law, the new state court action will not be time-barred.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 5th day of December 2007 in Los Angeles, California.

_____
Jeffrey Huron

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS ACTION IN FAVOR OF STATE COURT ACTION

Huron law group

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1875 Century Park East, Suite 1000, Los Angeles, California 90067.

On December 5, 2007, I served the following document(s) described as **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OR STAY ACTION IN FAVOR OF PARALLEL STATE COURT ACTION** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Gregory N. Dolton, Esq.
Gregory N. Dolton, Attorney at Law
708 Blossom Hill Road, No. 208
Los Gatos, CA 95032

Peter S. Hecker, Esq.
Anna S. McLean, Esq.
Casey K. Smith, Esq.
HELLER EHRMAN LLP
333 Bush Street
San Francisco, Ca 94104-2878

**BY MAIL:** I am "readily familiar" with Huron law group's practice for collecting and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

**BY FACSIMILE:** I caused said document(s) to be transmitted by facsimile. The telephone number of the sending facsimile machine was 310.772.0037. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 5, 2007, at Los Angeles, California.

_____
Ivana Lauro

# *EXHIBIT E*

Gregory N. Dolton, State Bar No. 159451
Gregory N. Dolton, Attorney at Law
708 Blossom Hill Road, No. 208
Los Gatos, California 95032
Telephone: (408) 399-7540
Fax: (408) 399-7542

Attorney for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WASHINGTON MUTUAL BANK,<br><br>        Plaintiffs,<br><br>        vs.<br><br>NMSBPCSLDHB, a California Limited Partnership; the Granum Family Trust, as General Partner of NMSBPCSLDHB; and Robert M. Granum II, as trustee of the Granum Family Trust,<br><br>        Defendants. | Case No.: C 07 00280 PJH<br><br>DECLARATION OF ROBERT M. GRANUM II IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Date:     November 28, 2007<br>Time:    9:00 AM<br>Courtroom:  Courtroom 3 |

I, Robert M. Granum II, do hereby declare as follows:

1. I am a general partner of NMSBPCSLDHB, a California Limited Partnership ("NMSBPCSLDHB"). In my capacity as a trustee of the Granum Family Trust, I am a party in the above-captioned action. I offer this declaration in support of Defendants' opposition to Plaintiff's motion for summary judgment.

DECLARATION OF ROBERT M. GRANUM II IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT —Case No.: C 07 00280 PJH

1

2.  NMSBPCSLDHB is the owner of a building located at 400 Race Street, San Jose, California ("Property"). Pursuant to a lease for a term of 10 years dated September 21, 2000, NMSBPCSLDHB leased the property to a company called Integrated Telecom Express, Inc. ("ITEX").

3.  The building located at 400 Race Street had been constructed with funding provided in a construction loan. In order to repay the construction loan, NMSBPCSLDHB borrowed $9 million from plaintiff Washington Mutual Bank ("WAMU") pursuant to a promissory note and related documents dated June 5, 2001. The promissory note was secured in part by a deed of trust and a pledge of the rents from ITEX.

4.  Soon thereafter, ITEX terminated the lease and vacated the Property. Upon information and belief, on October 8, 2002, ITEX petitioned for bankruptcy under Chapter 11. Upon information and belief, on October 28, 2002, NMSBPCSLDHB moved the bankruptcy court for an order dismissing the bankruptcy on the grounds that the filing was made in bad faith. Upon information and belief, on October 31, 2002, the United States Bankruptcy Court for the District of Delaware issued an order providing ITEX with federal bankruptcy protection. Upon information and belief, in ruling on NMSBPCSLDHB's motion, the bankruptcy court held as a matter of law that the filing of a Chapter 11 petition for the sole purpose of capping a landlord's claim did not constitute bad faith. Upon information and belief, the order was affirmed by the United States District Court but reversed by the Court of Appeals for the Third Circuit on September 20, 2004. ITEX's petition for a panel rehearing and rehearing en banc was subsequently denied.

---

DECLARATION OF ROBERT M. GRANUM II IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT —Case No.: C 07 00280 PJH

2

5.  In or about September 2004, while the ITEX litigation was still pending, as a gesture of good faith, I approached WAMU, proposing to enter into an agreement that came to be called the Additional Security Agreement. My purpose in doing so was to put WAMU in the same position it had been in when ITEX was still the tenant, having the availability of future rent as security. In good faith, I sought to provide WAMU with additional security in view of the fact that there were no longer rents being received from ITEX.

6.  I negotiated the terms of the Additional Security Agreement with a representative of WAMU named Mark St. Pierre. During these discussions, Mr. St. Pierre and I discussed the funds being placed in a floating money market fund, certificates of deposit, passbook accounts, and alternative investments. Initially, we were discussing placing all of the funds in WAMU certificates of deposit. However, late in the negotiations, we discussed and ultimately agreed upon a structure in which WAMU was to place a portion of the award funds, if any, in WAMU certificates of deposit, with a withdrawal from the certificates of deposit from time to time of an amount sufficient to cover the draw requirements of the agreement, with that amount being placed in WAMU's best available passbook. We agreed that the remaining portion of the award funds was to be placed in alternative investments, with it being implicit in the agreement that good faith and fair dealing would be exercised by both parties.

7.  As detailed below, once WAMU had received the funds, Mark St. Pierre initially took substantive steps to comply with these requirements of the Additional Security Agreement by referring me to an investment company called Washington Mutual Financial Services, Inc. Attached hereto as Exhibit A is a true and correct copy of a letter dated August 26, 2005 from Mr. St. Pierre in which he states, " . . . I'm working with the

DECLARATION OF ROBERT M. GRANUM II IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT —Case No.: C 07
00280 PJH

1    Financial Services area of WAMU to transfer the funds into higher earning accounts. It

2    is WAMU's intention to transfer these funds as soon as possible but either Dan Needler

3    or I will need to communicate directly with you, to affect [sic] the transfer."

4    8. At the time NMSBPCSLDHB and WAMU entered into the Additional Security

5    Agreement in November 2004, the outcome of the ITEX litigation remained completely

6    uncertain.

7    9. Upon information and belief, in early June 2005, the United States Supreme Court denied

8    ITEX's Writ of Certiorari. Upon information and belief, ITEX caused wire deposits of

9    $20,213,108 and $4,814,000 to be made to WAMU on August 8, 2005 and August 23,

10    2005, respectively.

11    10. After WAMU had actually received the funds, Mr. St. Pierre put me in touch with Dan

12    Needler of Washington Mutual Financial Services, Inc. to select and agree upon the other

13    investments. I spoke with Mr. Needler on several occasions in late August and early

14    September 2005. Mr. Needler and I discussed various types of investments and

15    investment accounts. Mr. Needler asked me to complete certain forms and return them to

16    him, which I did.

17    11. Attached as Exhibit B hereto is a true and correct copy of a document that, upon

18    information and belief, was produced to my attorney by WAMU after my deposition and

19    just before Mr. St. Pierre's deposition. This document appears to be a memorandum

20    from Mr. Needler concerning the funding of the alternative investments in accordance

21    with my discussions with Mr. Needler and the terms of the Additional Security

22    Agreement. On the second page of the document, Mr. Needler lists various investments

23    that we discussed.

24

25

DECLARATION OF ROBERT M. GRANUM II IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT —Case No.: C 07
00280 PJH

12. In the first half of September 2005, however, WAMU reneged on complying with the terms of the Additional Security Agreement. WAMU refused to allow any investments to be made through Washington Mutual Financial Services, Inc., and informed me that the entire $25 million that WAMU was holding could be invested <u>only</u> in WAMU certificates of deposit and WAMU's best available passbook account, thereby depriving NMSBPCSLDHB of the benefits of investing a portion of the funds in alternative investments as Mark St. Pierre and I had agreed when we entered into the Additional Security Agreement. Instead, WAMU secured the benefits of the cash deposits to itself alone.

13. I later learned that WAMU had not placed any of the award funds as agreed and contemplated in the Additional Security Agreement. Without consulting with me, WAMU initially placed all of the funds in an interest-bearing checking account. I was advised in late December 2006 that WAMU had finally placed a portion of the funds in WAMU certificates of deposit in mid December of last year. From approximately October 2005 to this day, WAMU has never proceeded to consult with me in good faith about placing a portion of the funds into alternative investments and has never placed the remaining portion of the funds into alternative investments. In fact, since reneging on the terms of the Additional Security Agreement, WAMU has opposed every effort I have made to comply with the terms of the Additional Security Agreement: WAMU has unilaterally made all investment decisions and treated the funds as its own and used them for its own benefit, to the detriment of NMSBPCSLDHB.

DECLARATION OF ROBERT M. GRANUM II IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT —Case No.: C 07 00280 PJH

5

1        I declare under penalty of perjury that the foregoing is true and correct, and that if called

2    as a witness, I could and would competently testify to the matters stated herein, and that this

3    declaration is executed this Wednesday, November 7, 2007.

4

5                                By: _____

6                                     Robert M. Granum II

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DECLARATION OF ROBERT M. GRANUM II IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT —Case No.: C 07
00280 PJH

6

Case 3:07-cv-06020-PJH    Document 25-2    Filed 01/16/2008    Page 64 of 71

Received Fax :    Nov 07 2007 14:38    Fax Station : GREGORY DOLTON
Case 3:07-cv-00280-PJH    Document 30    Filed 11/07/2007    Page 7 of 14

Nov 07 07 02:39p    Bob Granum    8088740030    p.1
Nov 07 2007 14:34    GREGORY DOLTON

1    I declare under penalty of perjury that the foregoing is true and correct, and that if called

2    as a witness, I could and would competently testify to the matters stated herein, and that this

3    declaration is executed this Wednesday, November 7, 2007.

4

5                                        By:

6                                                Robert M. Granum II

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DECLARATION OF ROBERT M. GRANUM II IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT —Case No.: C 07
00280 PJH

6

# EXHIBIT A

August 26, 2005                                          **Washington Mutual**

**VIA FACSIMILE**
**408-741-1976**

NMSBPCSLDHB
Robert Granum, Trustee
P.O. Box 2460
Saratoga, California 95070

Re:    Loan No. 0042913234 (the "Loan")
       400 Race Street, San Jose, Ca. 95126 (the "Property")
       Wired Funds:    $20,213,108 received 8/8/2005
                       and $4,814,010 received 8/23/025 (the "Funds")

Dear Mr. Bob:

This letter is in response to your undated letter forwarded to me at 8:30 PM last night.

I have to take issue with your comment that I have not been responsive to your inquiries
about the investment of Funds received by Washington Mutual Bank ("WAMU") this
month. As an officer of Washington Mutual Bank ("WAMU"), this Loan and the Funds
received by WAMU in connection with the resolution of the ITEX bankruptcy have been
top priority for me since they were received.

Contrary to your assertion that I have been non-responsive, it has been extremely difficult
to reach you. The only method available for contacting you has been by facsimile, page
or by leaving a message at your office. Several messages left at your office by Dan
Needler and I have not been returned. Since these funds were received by WAMU, I have
provided my office phone, an Email address, and my personal cell phone so that you
could reach me directly and immediately. I do respond and page you as requested but for
reasons unknown to me you are unable to immediately respond.

When the Funds were initially received, I was on vacation but was able to contact my
office and have the funds directed to a safe, interest bearing account as is WAMU's
obligation under the Additional Security Agreement ("ASA"). As I communicated to you
earlier this month, this account is a WAMU Platinum Business Savings Account
(#037100006573949) and earns interest at approximately 2.6%. In order to earn higher
rates, I have been working with Dan Needler of our Financial Services Department.
Because I had to leave the office on business last week, I had Dan contact your office in
Saratoga to affect some paperwork WAMU needs to transfer the funds. Dan's calls were
not returned. When I returned to the office this past Wednesday, I called your office and
left a message for you to call regarding the transfer of these funds. My call was not
returned. Instead I received a page, which I returned, and subsequently your fax which
stated that I was not being responsive.

                                                    400 E. Main St.
                                                    Stockton, CA 95290

WMB 00598

At this point I have received the application which you faxed to me this morning. I am processing that fax and I'm working with the Financial Services area of WAMU to transfer the funds into higher earning accounts. It is WAMU's intention to transfer these funds as soon as possible but either Dan Needler or I will need to communicate directly with you, to affect the transfer. This is not normally a long process, but because of the ASA, will take a little time so it is important that you communicate directly with Dan Needler to make sure the paper work is in order.

In your letter you state that you "will expect competitive rates" on the investment of the funds received by WAMU. Let me remind you that Paragraph 2 of the ASA states that "in the event there is no mutual agreement, then the decision as to the term and the amount shall be made by the Assignee in its sole and absolute discretion." Once again, WAMU has every intention of directing these funds as quickly and expeditiously as possible into its best earning accounts. However, WAMU will require appropriate documentation to affect the transfer. As an alternative, if you remain dissatisfied with the accounts WAMU is offering or the time and process it takes to affect the transfer into higher earning accounts, WAMU would be willing to utilize a portion of the funds to pay off the Loan per its terms, and refund the remainder of the funds directly to the Borrower of Record.

Please contact Dan Needler of WM Financial Services at 209-321-1939 so that we can expedite the transfer of the funds. He is anticipating your call. Please call me if you have any questions. All my numbers are listed below.

Regards,

Washington Mutual Bank, FA

Mark St. Pierre
Vice President
400 E. Main Street, Mail Stop STA3MLM
Stockton, California 95290
Phone:        209-460-2333
Cell Phone:   209-915-6920
Email:        mark.stpierre@wamu.net

WMB 00599

# EXHIBIT B

Rationale for account N17-157341:

Robert Grannum is the General Partner for a Limited Partnership that entered into a security agreement with the commercial lending department of Washington Mutual Bank. The LP that Grannum represents recently won a lawsuit for about 28 million against Integrated Telecom Express (ITE). Grannum's LP still has a balance of roughly 8 million on the commercial loan at WaMu. According to Mark St. Pierre in WaMu's Commercial Lending Dept, the settlement agreement entered into by Grannum's LP and WaMu requires that Grannum keep 4.8 million in the bank as collateral against the outstanding loan balance. In addition, 2.5 million of the settlement must be kept in a liquid account to pay estimated legal costs. As per the settlement agreement, Grannum is entitled to monthly distributions of $373,539 until the loan is paid off, at the lease expiration date of 2/28/2011. The remainder of the settlement, roughly 20 million can be invested in non FDIC insured vehicles. While Grannum has authority over the investment direction of the settlement, the brokerage account and the bank accounts are restricted and he cannot withdraw any funds in excess of the monthly draw of $373,539.

My first conversation with Robert Grannum was a conference call set up with Mark St. Pierre. During our discussion we talked about the viability of investing money above the amount owed to WaMu's commercial lending dept. although Grannum had not yet received the settlement at that time. The proceeds from the settlement were wired into WaMu about one month ago. Since then, Grannum and I have had three conversations, August 29, August 31 and September 2. During the course of our discussions we discussed the paperwork necessary to establish a brokerage account.

Grannum is an extremely experienced investor. Although he indicated that his primary investment objectives are capital preservation and income he is also adamant about having the ability to invest in higher interest earning vehicles. His extensive experience with investing in stocks, bonds, mutual funds, variable contracts, LPs, and options proves that he is familiar with the risks of investing, including but not limited to fluctuation and possible loss of principal. The risk tolerance of "all" (conservative, moderate and aggressive) that Grannum indicated on the brokerage account application proves a willingness to and insistence upon being able to invest in a wide range of products. The conservative portion of the settlement is required to be in WaMu but a significant portion should be invested in other alternatives.

Grannum indicated that he has a short time horizon (0-5 years) on the brokerage account application. However, this is more indicative of the fact that the monthly payments and underlying lease agreement will terminate Feb. 2011. The LP agreement provides that the term of the LP shall continue until 12/31/2025 so there is clearly a need to have assets invested in longer term, greater yielding and more tax efficient investment vehicles.

I discussed the merits of a structured settlement with Grannum on September 2, 2005. However, Grannum did not like the idea of sacrificing a portion of principal in exchange for income (despite a favorable tax exclusion ratio on the income). Additionally, I did not research whether LPs that have entered into security agreements can be owners of



WMB 00936

contracts in a structured settlement. Therefore, I have formulated the following strategy to invest the 28 million:

$4.8 million in a 13 month WaMu CD @ a yield of 4% (or higher with Regional Bank Manager discretion)

$2.5 million in a WaMu Platinum account currently yielding 2.8 but subject to rate fluctuation

$5 million in the First Trust California Municipal Income Trust

$5 million in the First Trust Strategic Income Closed End Portfolio

$5 million in the WM Group of Funds Strategic Growth Portfolio A

$5 million in the Hartford Tax Free California Fund A

Any additional money should be added to the platinum account to provide a head start on the income withdrawals that Grannumn is entitled to.

Both First Trust Portfolios will work well from a yield and trust term standpoint. The estimated yield on the Cal Muni is 5.425 first year and 5.278 in subsequent years (based upon a $10 unit price). The maturity for this trust is 7/26/2010 so the principal will be returned prior to the final payment due Grannum via the settlement agreement. Although this and the Hartford funds are federal, state and local tax free I did suggest to Grannum that he check with his CPA or a tax attorney to confirm that the LP he is GP of is not subject to Alternative minimum tax (AMT) as that would obviously negate a portion of the tax advantages on the settlement.

Because Grannum did indicate that he is willing to consider taxable investments if he can get greater potential returns and that he acknowledged that he will be earning taxable interest on the WaMu bank deposits, the First Trust Strategic Income and WM Strategic Growth Portfolio are suitable recommendations. Like the Cal Muni UIT the Strategic Income Portfolio will terminate in 7/2010. The yield is taxable and based upon a $10 unit price would produce an estimated 7.382 first year and 7.204 second and subsequent year income stream. This portfolio achieves diversification by investing in multiple sectors of closed end funds. Since the First Trust Portfolios are closed end funds they will be far more tax efficient than mutual funds and minimize potential capital gains on portfolio shuffling.

The WM Group of Funds Strategic Growth Portfolio will provide Grannum a necessary equity component in the overall portfolio. This infusion of equities will move Grannum's risk tolerance closer to the ideal point on the efficient frontier. The equity funds within the portfolio will be reallocated quarterly or more often if needed yet will not create additional tax implications as this portfolio is treated as one fund for tax purposes. In

WMB 00937

fact, the different funds within the portfolio should provide the greater returns that Grannum is seeking without risk of overexposure in any one asset class.

Finally, the Hartford Tax Free California fund will provide Grannum additional tax free income. The fact that the fund has an inception date of 12/02 and is relatively small should reduce potential tax consequences as it is not bloated with undeclared capital gains. One advantage of owning Hartford and WM Funds is the flexibility to change within the fund family as the needs for the money and or market conditions change.

Based upon the above rationale the proposed investment recommendations are suitable for Robert Grannum and adhere to the requirements stipulated in the settlement agreement between Grannum's LP and WaMu bank's commercial lending department.


Dan Needler

WMB 00938